IMPORTANT NOTICE TO PLAYER

Before signing this contract you should carefully examine it to be sure that all terms and conditions agreed upon have been incorporated herein, and if any has been omitted, you should insist upon having it inserted in the contract before you sign.

NATIONAL HOCKEY LEAGUE
STANDARD PLAYER'S CONTRACT
(1995 FORM)

BETWEEN  **LINCOLN HOCKEY LIMITED LIABILITY COMPANY**
(**dba Washington Capitals**)
hereinafter called the "Club," a member of the National Hockey League, hereinafter called the "League"

AND  **Alexander Semin**
hereinafter called the "Player"

NHL CENTRAL REGISTRY

AUG 28'03 =12:55

of  Krasnoyarsk  in the country of  Russia

In consideration of the respective obligations herein and hereby assumed, the parties to this contract severally agree as follows:

1. The Club hereby employs the Player as a skilled Hockey Player for the term of  three  years commencing October 1, 2003 and agrees, subject to the terms and conditions hereof, to pay the Player a salary of:

2003-04, Five Hundred Ninety Two Thousand Five Hundred Dollars ($592,500) US
2004-05, Five Hundred Ninety Two Thousand Five Hundred Dollars ($592,500) US
2005-06, One Million One Hundred Eighty Five Thousand Dollars ($1,185,000) US

Payment of such salary shall be in consecutive semi-monthly installments following the commencement of the regular League Championship Schedule of games or following the dates of reporting, whichever is later; provided, however, that if the Player is not in the employ of the Club for the whole period of the Club's games in the National Hockey League Championship Schedule, than he shall receive only part of the salary in the ratio of the number of days of actual employment to the number of days of the League Championship Schedule of Games.

And it is further mutually agreed that if the Contract and rights to the services of the Player are assigned, exchanged, loaned or otherwise transferred to a Club in another League, the Player shall only be paid at an annual salary rate of

2003-04, Eighty Thousand Dollars ($80,000) US  in the  AHL/ECHL  League with a guaranteed minimum of Ninety Thousand Dollars ($90,000) US.
2004-05, Eighty Thousand Dollars ($80,000) US  in the  AHL/ECHL  League with a guaranteed minimum of Ninety Two Thousand Five Hundred Dollars ($92,500) US.
2005-06, Ninety Two Thousand Five Hundred Dollars ($92,500) US  in the  AHL/ECHL  League.

FILED
OCT 26 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

05 2094

2. The Player agrees to give his services and to play hockey in all League Championship, All Star, International, Exhibition, Play-Off and Stanley Cup games to the best of his ability under the direction and control of the Club in accordance with the provisions hereof.

The Player further agrees,

(a) to report to the Club training camp at the time and place fixed by the Club, in good physical condition,

(b) to keep himself in good physical condition at all times during the season,

(c) to give his best services to the Club and to play hockey only for the Club unless his contract is released, assigned, exchanged or loaned by the Club,

(d) to co-operate with the Club and participate in any and all reasonable promotional activities of the Club which will in the opinion of the Club promote the welfare of the Club and to cooperate in the promotion of the League and professional hockey generally,

(e) to conduct himself on and off the rink according to the highest standards of honesty, morality, fair play and sportsmanship, and to refrain from conduct detrimental to the best interest of the Club, the League or professional hockey generally.

The Club agrees that in exhibition games played after the start of the regular schedule (except where the proceeds are to go to charity, or where the player has agreed otherwise) the player shall receive his pro rata share of the gate receipts after deduction of legitimate expenses of such game. This provision re exhibition games is applicable in the National Hockey League only.

3. In order that the Player shall be fit in proper condition for the performance of his duties as required by this contract, the Player agrees to report for practice at such time and place as the Club may reasonably designate and participate in such exhibition games as may be arranged by the Club.

4. The Club may from time to time during the continuance of this contract establish reasonable rules governing the conduct and conditioning of the Player, and such reasonable rules shall form part of this contract as fully as if herein written. For violation of any such rules or for any conduct impairing the thorough and faithful discharge of the duties incumbent upon the Player, the Club may impose a reasonable fine upon the Player and deduct the amount thereof from any money due or to become due to the Player. The Club may also suspend the Player for violation of any such rules. When the Player is fined or suspended, he shall be given notice in writing stating the amount of the fine and/or the duration of the suspension and the reason therefor. Copies of the rules referred to herein shall be filed at the main offices of the League and the National Hockey League Players' Association ("NHLPA").

5. (a) Should the Player be disabled or unable to perform his duties under this contract he shall submit himself for medical examination and treatment by a physician selected by the Club, and such examination and treatment, when made at the request of the Club, shall be at its expense unless made necessary by some act or conduct of the Player contrary to the terms and provisions of this contract or the rules established under Section 4.

(b) If the Player, in the judgement of the Club's physician, is disabled or is not in good physical condition at the commencement of the season or at any subsequent time during the season (unless such condition is the direct result of any injury sustained during the course of his employment as a hockey player with the Club, including travel with his team or on business

Page 2

requested by the Club) so as to render him unfit to play skilled hockey, then it is mutually agreed that the Club shall have the right to suspend the Player for such period of disability or unfitness, and no compensation shall be payable for that period under this contract. If upon joint consultation between the Player, the Club's physician and the Club General Manager, they are unable to agree upon the Player's disability or physical condition, the Player agrees to submit himself for examination by an independent medical specialist and the Parties hereto agree to be bound by his decision.

(c) If the Player is injured during the course of his employment as a hockey player with the Club, including travel with his team or on business requested by the Club, the Club will pay the Player's reasonable hospitalization until discharged from the hospital, and his medical expenses and doctor's bills, provided that the hospital and doctor are approved by the Club. This approval will not be unreasonably withheld.

(d) It is also agreed that if the Player, in the sole judgment of the Club's physician, is disabled and unable to perform his duties as a hockey player by reason of an injury sustained during the course of his employment as a hockey player, including travel with his team or on business requested by the Club, he shall be entitled to receive his remaining salary due in accordance with the terms of this contract for the remaining stated term of this contract as long as the said disability and inability to perform continue but in no event beyond the expiration date of the fixed term of this contract, which fixed term shall in no event be deemed to include any option period related to a playing season after the playing season in which the injury occurred. In consideration of payment of such salary, as well as payments made by the Club to fund the Major Medical Plan pursuant to Article 23 of the Collective Bargaining Agreement between the Member Clubs of League and the NHLPA, payments made by the Club to provide Career Ending Disability Insurance pursuant to Article 23 of such Agreement and other consideration, the Player does hereby covenant that in the event he files a claim under such Career Ending Disability Insurance (unless such claim is not paid), he personally releases and will release the Club, the NHL, NHLPA, all other NHL clubs, and the servants, employees, officers and agents of each of the above from any and every additional obligation, liability, claim or demand whatsoever for such salary or arising out of such injury or the treatment thereof, including without limitation liability in tort, and extending to all damages, whenever arising. Any disagreement as to disability or inability to perform shall be determined conclusively by doctors of the Club and of the Player and, in the event said doctors are unable to agree, by an independent doctor selected by said doctors. If the Player is declared to be unfit for play, he shall continue to receive the full benefits of this Agreement. If the Player is declared to be physically able to play and refuses to do so, he shall be liable to immediate suspension without pay.

(e) In connection with a disability which is not caused by an injury sustained during the course of his employment as a hockey player including travel with his team or on business requested by his Club, if upon joint consultation between the Player, the Club's physician and the Club General Manager, they are unable to agree upon the Player's physical fitness to return to play, the Player agrees to submit himself for examination by an independent medical specialist and the parties hereto agree to be bound by his decision. If the Player is declared to be fit for play, he must perform his duties hereunder and shall be entitled to receive the full benefits of this Agreement. If he is declared to be not physically able to play, he shall not be entitled to the benefits of this Agreement until he has been declared to be physically fit to play by the independent medical specialist.

6. The Player represents and agrees that he has exceptional and unique knowledge, skill and ability as a hockey player, the loss of which cannot be estimated with certainty and cannot be fairly or adequately compensated by damages. The Player therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate


injunctive proceedings without first exhausting any other remedy which may be available to the Club, from playing hockey for any other team and/or for any breach of any of the other provisions of this contract.

7. The Player and the Club recognize and agree that the Player's participation in other sports may impair or destroy his ability and skill as a hockey player. Accordingly the Player agrees that he will not during the period of this Contract or during any period when he is obligated under this Contract to enter into a further contract with the Club engage or participate in football, baseball, softball, hockey, lacrosse, boxing, wrestling or other athletic sport without the written consent of the Club, which consent will not be unreasonably withheld.

8. (a) The Club recognizes that the Player owns exclusive rights to his individual personality, including his likeness. The Player recognizes that the Club owns exclusive rights to its name, emblems and uniform which the Player wears as a hockey player for the Club.

The Player hereby irrevocably grants to the Club during the period of this Contract and during any period when he is obligated under this Contract to enter into a further contract with the Club the right to permit or authorize any firm, person or corporation to take and make use of any still photographs, motion pictures or electronic (including television) images of himself in uniform and agrees that thereafter all rights in such photographs, pictures and images (including the right to identify him by name) shall belong to the Club exclusively for the purposes of telecasts, film or video documentaries or features, advertisements and promotions of the Club's games, use by the media for reportorial purposes, game programs, yearbooks, magazines and the like, and purposes in which the focus is on the Club or game and not the individual Player.

The Club hereby irrevocably grants to the Player during the period of this Contract and thereafter the right to use the name of the Club (but not the emblem or uniform unless otherwise agreed) to identify himself, truthfully, as a player of the Club, past or present.

All obligations and rights set forth in this Section 8(a) shall be subject to modification from time to time by the provisions of the Collective Bargaining Agreement.

(b) The Player further agrees that during the period of this Contract and during any period when he is obligated under this Contract to enter into a further contract with the Club he will not make public appearances, participate in radio or television programs, or permit his picture to be taken, or write or sponsor newspaper or magazine articles, or sponsor commercial products without the written consent of the Club which consent shall not be unreasonably withheld.

9. It is mutually agreed that the Club will not pay, and the Player will not accept from any person, any bonus or anything of value for winning or otherwise attempting to affect the outcome of any particular game or series of games except as authorized by the League By-laws.

10. The Player agrees during the period of this Contract and during any period when he is obligated under this Contract to enter into a further contract with the Club he will not tamper with or enter into negotiations with any player under contract or reservation to any Club of the League for or regarding such player's current or future services, without the written consent of the Club with which such player is connected under penalty of a fine to be imposed by the Commissioner of the League.

11. It is mutually agreed that the Club shall have the right to sell, assign, exchange and transfer this contract, and to loan the Player's services to any other professional hockey club, and the Player agrees to accept and be bound by such sale, exchange, assignment, transfer or loan, and will faithfully perform and carry out this contract with the same purpose and effect as if it had

been entered into by the Player and such other Club.

It is further mutually agreed that in the event that this Contract assigned, or the Player's services are loaned, to another Club, the Club shall by notice in writing delivered personally to the Player or by mail to the address set out below his signature hereto advise the Player of the name and address of the Club to which he has been assigned or loaned, and specifying the time and place of reporting to such club. If the player fails to report to such other Club, he may be suspended by such other Club and no salary shall be payable to him during the period of such suspension.

12. The parties agree that if the Club shall default in the payments to the Player provided for in Section 1 hereof or shall fail to perform any other obligation agreed by the Club hereunder, the Player may, by notice in writing to the Club and to the League and the NHLPA, specify the nature of any and all defaults and thereafter:

(a) if the Club shall fail to remedy the default within fourteen (14) days from receipt of such notice, except as hereinafter provided in subsections (b) (c) and (d) of this Section 12, this Contract shall be terminated, and upon the date of such termination all obligations of both parties shall cease, except the obligation of the Club to pay the Player's compensation to that date, provided however, that;

(b) the Player hereby irrevocably offers to the League an option, to cure said default within the seven (7) days next succeeding the fourteen (14) days within which the Club may cure the default upon the condition that, in the event the League may accept this offer, the League would then guarantee payment of that portion of the Player's salary, as set forth in Section 1 hereof, as may become due for a period of twenty-one (21) days from receipt by said League of any notice of default. The League may accept this offer by notification to the Player and the NHLPA in writing of such acceptance and of its guarantee of said twenty-one (21) day salary period as soon as possible following receipt of notice of default from Player but in no event later than fourteen (14) days following receipt of such notice. This offer will be deemed rejected if not accepted as set forth above;

(c) said option may be assigned by the League to any other member club and, upon such assignment, the assignee club shall inure to all of the rights of and assume all obligations of the League under this Section 12; and

(d) the Player further agrees that, if the League has given due notice as set forth in subsection (b), he will continue to perform all of his obligations under this Contract for the full twenty-one (21) day period and, in the event the Club does not cure the default within the fourteen (14) day period, as set forth in subsection (a), the League, or any member club to which its option has been assigned, may cure the default within the seven (7) days following the first fourteen (14) days next succeeding receipt of notice of default; and

(e) the Club agrees if it does not cure the default within the fourteen (14) day period, as set forth in subsection (a) above, and the League, or an assignee member club, cures said default in accordance with subsections (b), (c) and (d) of this Section 12 then, in such event, all rights and obligations of the Club under this Contract shall be transferred to the League, or such assignee club, provided, however, that no obligation with respect to a default or defaults claimed to exist at the time of notice of default, as provided above, but not specifically included and set forth in said notice, shall be assumed by the League or such assignee club and the League or such assignee club shall have no liability with respect thereto.

13. The Club, in addition to other rights hereunder, at its option, by written notice delivered to

the Player in person or by mailing by certified mail to the Player's address set forth herein, may terminate this Contract on the following conditions:

(a) The Club shall offer the Player on waivers, without right of recall, at a waiver price not in excess of one hundred dollars ($100), either before or promptly after the notice of intention to exercise Buy-Out option (herein called "notice of termination") is given.

(b) Termination pursuant to this Section 13 shall be effective upon receipt by the Player of the notice of termination.

(c) The notice of termination must have been given after the end of the regular playing season and prior to the next following July 2nd (deadline shall be July 1), and is to be sent to Player by certified mail or hand delivery. Fax notice received by NHL Central Registry or NHLPA office within deadline shall meet deadline requirement.

(d) If the Club elects to terminate this Contract pursuant to this Section 13, it shall be obligated to pay to the Player, in equal monthly installments, beginning on the October 1st next following the date on which the termination is effective, at a minimum annual amount (if owed) of no less than $50,000, to be paid in full during a period of twice the remaining years of the contract, including the option year:

(i) if the Player is under 26 years of age at the time the termination is affective, an amount equal to 1/3 of, or

(ii) if the Player is 26 years of age or older at the time the termination is effective, an amount equal to 2/3 of the total fixed amount of the Player's league salary, as set forth in Section 1, for the unexpired fixed-term and option year of this Contract, reduced by any advance payment of salary received by the Player prior to the date the termination is effective.

(e) The Player may, within 10 days after the receipt of the notice of termination elect in writing to be paid a lump sum equal to the present value of the amount payable pursuant the subsection (d) above on the date of termination in lieu of receiving monthly installments. Written notice of such election shall be delivered to the Club or mailed by registered mail within the said 10-day period at its address set forth below. The present value of the amount payable pursuant to subsection (d) shall be computed on the basis of an interest rate equal to the prime rate of interest of the Chase Manhattan Bank, New York City, on the date of termination.

(f) Upon receipt of the notice of termination the Player shall immediately be a free agent not subject to equalization and shall no longer be obligated to perform under this Contract.

(g) Waiver claim of Player by another Club shall pre-empt and relinquish Club's Buy-Out obligation, due to failure to clear waivers.

14. The Club may also terminate this Contract upon written notice to the Player (but only after obtaining waivers from all other League clubs) if the Player shall at any time:

(a) fail, refuse, or neglect to obey the Club's rules governing training and conduct of players, if such failure, refusal or neglect should constitute a material breach of this Contract.

(b) fail, refuse or neglect to render his services hereunder or in any other manner materially breach this Contract.

In the event of termination under subsection (a) or (b) the Player shall only be entitled to compensation due to him to the earlier of the date such notice is delivered to him or the date of the mailing of such notice to his address as set out below his signature hereto.

In the event this Contract is terminated by the Club while the Player is "away" with the Club for the purpose of playing games the installment then falling due shall be paid on the first week-day after the return "home" of the Club.

15. The Player further agrees that the Club may carry out and put into effect any order or ruling of the League or its Commissioner for his suspension or expulsion and that in the event of suspension his salary shall cease for the duration thereof and that in the event of expulsion this Contract shall terminate forthwith.

16. The Player further agrees that, in the event of his suspension without pay pursuant to any of the provisions of this Contract there shall be deducted from the salary stipulated in Section 1 hereof an amount equal to the exact proportion of such salary as the number of days' suspension bears to the total number of days of the League Championship Schedule of games.

17. If because of any condition arising from a state of war or other cause beyond the control of the League or of the Club, it shall be deemed advisable by the League or the Club to suspend or cease or reduce operations, then:

   (a) in the event of suspension of operations, the Player shall be entitled only to the proportion of salary due at the date of suspension.

   (b) in the event of cessation of operations, the salary stipulated in Section 1 hereof shall be automatically canceled on the date of cessation, and

   (c) in the event of reduction of operations, the salary stipulated in Section 1 hereof shall be replaced by that mutually agreed upon between the Club and the player, or, in the absence of mutual agreement, by that determined by neutral arbitration.

18. The Club and the Player severally and mutually promise and agree to be legally bound by the Constitution and By-Laws of the League and by any Collective Bargaining Agreement that has been or may be entered into between the member clubs of the League and the NHLPA, and by all of the terms and provisions thereof, copies of which shall be open and available for inspection by Club, its directors and officers, and the Player, at the main office of the League, the main office of the Club and the main office of the NHLPA. This Contract is entered into subject to the Collective Bargaining Agreement between the NHL and the NHLPA and any provisions of this Contract inconsistent with such Collective Bargaining Agreement are superseded by the provisions of the Collective Bargaining Agreement.

The Club and the Player further agree that in case of dispute between them, except as to the compensation to be paid to the Player on a new contract, the dispute shall be referred within one year from the date it arose to the Commissioner of the League, as an arbitrator and his decision shall be accepted as final by both parties, unless, and to extent that other arbitration procedures are provided in any Collective Bargaining Agreement between the member clubs of the League and the NHLPA to cover such dispute.

The Club and the Player further agree that all fines imposed upon the Player under the Playing Rules, or under the provisions of the League By-Laws, shall be deducted from the salary of the Player and be remitted by the Club to the NHL Players' Emergency Fund.

19. The parties agree that the rights provided herein and in the Collective Bargaining Agreement and in any Addendum hereto and the promise of the Player to play hockey only with the Club, or such other club as provided in Sections 2, 11 and 12, and the Club's right to take pictures of and to televise the Player as provided in Section 8 have all been taken into consideration in determining the salary payable to the Player under Section 1 hereof.

20. It is severally and mutually agreed that this Agreement contains the entire agreement between the Parties and there are no oral or written inducements, promises or agreements except as provided herein.

In Witness Whereof, the parties have signed this __15th__ day of __JULY__ A.D. 20_03_.

Witnesses:

LINCOLN HOCKEY LIMITED LIABILITY COMPANY
(dba Washington Capitals)
Club

401 9th St., N.W., Suite 750, Washington, D.C. 20004
Address of Club

By: _____
George A. McPhee, V.P./G.M.

_____
Alexander Semin, Player

Voronova 18d #155
Krasnoyarsk
Russia 660131

Player Address

I hereby certify that I have, at this date, received, examined and noted of record the within Contract, and that it is in regular form.

Dated JUL 2 4 2003

_____
for the National Hockey League

Les parties ont par présentes exprimé leur volonté expresse que ce contrat soit rédigé en anglais.
Parties hereby state their expressed wish that this contract be drafted in English language.

NHL CENTRAL REGISTER

AUG 29'03 PM 12:55

## ADDENDUM

This Addendum shall be part of the attached National Hockey League Standard Player's Contract (1995 Form), dated __JULY 15, 2003__ between Lincoln Hockey Limited Liability Company (dba Washington Capitals/the Club) and Alexander Semin (Player). The Club and Player agree as follows:

### I. SIGNING BONUS

In consideration of the Player entering into this Contract, Player shall receive a signing bonus in the amount of $1,185,000 Dollars US payable as follows:

   a. $296,250 US payable upon execution
   b. $296,250 US payable 12/31/2003
   c. $296,250 US payable 9/1/2004
   d. $296,250 US payable 1/15/2005

### II. INDIVIDUAL "A" PERFORMANCE BONUSES

The Club and Player agree that Player may not earn more than $6,300,000 in total individual "A" Performance Bonuses during the term of this Contract.

1. **2003/2004 Individual "A" Performance Bonuses**

   A. Calder Trophy Voting
   | | |
   |---|---|
   | First in voting | $400,000 |
   | Second in voting | $400,000 |
   | Third in voting | $400,000 |
   | Fourth in voting | $250,000 |
   | Fifth in voting | $200,000 |

   | | | |
   |---|---|---|
   | B. | 20 or more goals | $400,000 |
   | C. | 35 or more assists | $400,000 |
   | D. | 60 or more points | $300,000 |
   | E. | Plus/Minus (+/-) | $300,000 |

   (Player must achieve a minimum plus/minus rating of +10 and must have participated in a minimum of forty two (42) NHL regular season games. In the event the Club fails to qualify for the playoffs, then Player must be ranked amongst the top three forwards on the Club (who have played in a minimum of forty two (42) NHL regular season games) in plus/minus)

   F. Points per Game        $300,000
   (Player must score at a minimum rate of 0.73 points per game and must also play in a minimum of forty two (42) NHL games during the 2003/2004 NHL regular season)

2. **2003/2004 "A" Bonus Conditions**

   a. Player may individually earn each of the six "A" performance bonuses.
   b. If Player achieves two or more of the six Individual "A" Performance Bonuses, he will receive the amounts earned for each bonus. In addition, Player shall receive the difference between the "A" Performance Bonuses earned and a bonus pool amount of $2,600,000.

A-1

NHL CENTRAL REGISTRY

AUG 29'03 PM12:55

c. If Player achieves less than two of the above "A" Performance Bonuses, he shall earn only those bonus amounts, if any.
d. If Player achieves two or more of the six individual "A" Performance Bonuses, the "A" bonus pool amounts Player can earn in the subsequent two seasons shall each be increased by $200,000.

3. **2004/2005 Individual "A" Performance Bonuses**

   A. Calder Trophy Voting
   |  |  |
   |---|---|
   | First in voting | $400,000 |
   | Second in voting | $400,000 |
   | Third in voting | $400,000 |
   | Fourth in voting | $250,000 |
   | Fifth in voting | $200,000 |

   **Note:** In the event Player is no longer eligible for the Calder Trophy, the Calder Trophy Voting bonus as listed above shall be replaced by a Specialty Goals Bonus of $400,000, which shall be earned if Player achieves two of the following three Specialty Goal levels during the 2004/2005 season:
   5 or more Power Play goals
   3 or more Shorthanded goals
   4 or more Game Winning goals

   B. 20 or more goals              $400,000
   C. 35 or more assists            $400,000
   D. 60 or more points             $300,000
   E. Plus/Minus (+/-)              $300,000
   (Player must achieve a minimum plus/minus rating of +10 and must have participated in a minimum of forty two (42) NHL regular season games. In the event the Club fails to qualify for the playoffs, then Player must be ranked amongst the top three forwards on the Club (who have played in a minimum of forty two (42) NHL regular season games) in plus/minus)
   F. Points per Game               $300,000
   (Player must score at a minimum rate of 0.73 points per game and must also play in a minimum of forty two (42) NHL games during the 2004/2005 NHL regular season)

4. **2004/2005 "A" Bonus Conditions**

   a. Player may individually earn each of the six "A" performance bonuses.
   b. If Player achieves three or more of the six Individual "A" Performance Bonuses, he will receive the amounts earned for each bonus. In addition, Player shall receive the difference between the "A" Performance Bonuses earned and a bonus pool amount of $2,600,000.
   c. If Player achieves less than three of the above "A" Performance Bonuses, he shall earn only those bonus amounts, if any.
   d. If Player achieves three or more of the six individual "A" Performance Bonuses, the "A" bonus pool amount Player can earn in the subsequent season shall be increased by $300,000 (in addition to the $200,000 increase for the final season Player may have earned in the first season of "A" Performance Bonuses as specified in Section 2d).

NHL CENTRAL REGISTRY

A - 2

AUG 28'03 PM12:55

5.  **2005/2006 Individual "A" Performance Bonuses**

    A.  Calder Trophy Voting
    
    | | |
    |---|---|
    | First in voting | $400,000 |
    | Second in voting | $400,000 |
    | Third in voting | $400,000 |
    | Fourth in voting | $250,000 |
    | Fifth in voting | $200,000 |

    **Note:** In the event Player is no longer eligible for the Calder Trophy, the Calder Trophy Voting bonus as listed above shall be replaced by a Specialty Goals Bonus of $400,000, which shall be earned if Player achieves two of the following three Specialty Goal levels during the 2005/2006 season:
    - 5 or more Power Play goals
    - 3 or more Shorthanded goals
    - 4 or more Game Winning goals

    | | |
    |---|---|
    | B. 20 or more goals | $400,000 |
    | C. 35 or more assists | $400,000 |
    | D. 60 or more points | $300,000 |
    | E. Plus/Minus (+/-) | $300,000 |

    (Player must achieve a minimum plus/minus rating of +10 and must have participated in a minimum of forty two (42) NHL regular season games. In the event the Club fails to qualify for the playoffs, then Player must be ranked amongst the top three forwards on the Club (who have played in a minimum of forty two (42) NHL regular season games) in plus/minus)

    F.  Points per Game                 $300,000
    (Player must score at a minimum rate of 0.73 points per game and must also play in a minimum of forty two (42) games during the 2005/2006 NHL regular season)

6.  **2005/2006 "A" Bonus Conditions**

    a. Player may individually earn each of the six "A" performance bonuses.
    b. If Player achieves three or more of the six Individual "A" Performance Bonuses, he will receive the amounts earned for each bonus. In addition, Player shall receive the difference between the "A" Performance Bonuses earned and a bonus pool amount of $2,600,000.
    c. If Player achieves less than three of the above "A" Performance Bonuses, he shall earn only those bonus amounts, if any.

A-3

NHL CENTRAL REGISTRY

AUG 28'03 PM12:55

### III. INDIVIDUAL "B" PERFORMANCE BONUSES

**1.  Ice Time**

If, during any NHL regular season covered by this Contract, Player achieves the average total ice time ranking levels amongst forwards on the Club as defined below, Player to receive the corresponding bonus amount(s) specified opposite such ice time ranking level(s):

| Average Total Ice Time Ranking | Bonus |
|---|---|
| Top 9 forwards on Club | $300,000 US |
| Top 7 forwards on Club | $200,000 US additional |

Notes: Player must play in a minimum of forty two (42) NHL regular season games in a given season in order to be eligible to receive the ice time bonus as defined above.
Player shall be ranked amongst forwards who have played in a minimum of forty two (42) NHL regular season games for the Club in that same season.
In the event Club fails to qualify for the playoffs in any season in which Player earns the Ice Time bonus as defined above, such bonus shall be reduced by fifty percent (50%).

**2.  Special Teams**

If, during any NHL regular season covered by this Contract, the Club is achieves the Special Teams rankings as defined below, Player to receive the corresponding bonus amount(s) specified:

A.  Power Play Efficiency: Player shall receive $37,500 US in the event Player is ranked amongst the top six (6) forwards on the Club in average power play ice time and Club is ranked tenth (10th) or better overall in official NHL Year-End Power Play rankings. Player must play in a minimum of forty two (42) games in a given season in order to be eligible to receive such bonus.

B.  Penalty Killing Efficiency: Player shall receive $37,500 US in the event Player is ranked amongst the top six (6) forwards on the Club in average shorthanded ice time and Club is ranked tenth (10th) or better overall in official NHL Year-End Penalty Killing rankings. Player must play in a minimum of forty two (42) games in a given season in order to be eligible to receive such bonus.

**3.  Major Awards**

a.  If Player finishes first in voting for the Hart, Ross, Selke, Smythe, or Richard award at any time during the term of this Contract, he shall receive $400,000 US payable within two weeks of the conclusion of the season.

b.  If Player finishes second in voting for the Hart, Ross, Selke, or Richard award at any time during the term of this Contract, he shall receive $350,000 US payable within two weeks of the conclusion of the season.

c.  If Player finishes third in voting for the Hart, Ross, Selke, or Richard award at any time during the term of this Contract, he shall receive $300,000 US payable within two weeks of the conclusion of the season.

NHL CENTRAL REGISTRY

AUG 28'03 PM12:55

4. **All-Star Team**

   A. If at the end of any season during the term of this Contract, Player is named to the Official NHL First All-Star Team, Player shall receive $300,000 US.

   B. If at the end of any season during the term of this Contract, Player is named to the Official NHL Second All-Star Team, Player shall receive $200,000 US.

5. **All-Rookie Team**

   If at the end of any season during the term of this Contract, Player is named to the Official NHL All-Rookie Team, Player shall receive $50,000 US.

## IV. MISCELLANEOUS

1. **European Assignment**

   Subject to the terms of any agreement between the IIHF and the NHL, the Club agrees as soon as practicable, to loan the player to a European Hockey Club of the player's choice in a European league instead of loaning the player to a team in the AHL/ECHL for the 2003/2004 season. Provided the Club so loans the player to a European Hockey Club, the Club shall have no salary obligation to the player, notwithstanding anything in Section 1 of the SPC to the contrary, and the Club shall have no obligation towards the player with respect to expenses, for the 2003/2004 season, after said loan to such European Club. Additionally, it shall be a condition of any such loan that the Club shall have no obligation, nor incur any cost, of any nature whatsoever to any such European Hockey Club. This loan provision applies solely to the Washington Capitals (i.e. it shall be deemed deleted in the event the player is traded to another club).

2. **Severability**

   If any term or provision of this Contract shall be found to be void or contrary to law or to the National Hockey League Constitution, By-Laws, Resolutions, Collective Bargaining Agreement or other similar regulations (collectively, the "NHL Rules"), such term or provision shall, to the extent necessary to bring this Contract within the requirements of law or the NHL Rules, automatically be and be deemed to be severed from the Contract and the remainder of this Contract shall remain in full force and effect as if the parties had not included the severed terms herein.

3. **Currency**

   All salaries and bonuses under this Agreement shall be payable in US Dollars unless otherwise noted.

NHL CENTRAL REGISTRY

AUG 28'03 PM12:56

IN WITNESS WHEREOF, the parties hereto have set their hands and seals on this 15th day of ___JULY___, 2003.

WITNESS:

*[signature: Kathy A. Hedman]*
Witness

_____
Witness

LINCOLN HOCKEY LIMITED LIABILITY COMPANY
(dba Washington Capitals)

By: *[signature]*
George A. McPhee, V. P./G. M.

*[signature]*
Alexander Semin

NHL CENTRAL REGISTRY

A-6

AUG 28'03 PM12:56