# Exhibit H



October 18, 2004

**By Fax and By Mail**

Terence B. Prince, Esq.
Vice President and Director Of Legal Affairs
IMG Team Sports
825 Seventh Avenue, 9th Floor
New York, NY 10019

Re:   Alexander Semin

Dear Mr. Prince:

We are in receipt of your letter of October 8. We are willing to accept at face value for present purposes your insistence that IMG is working in good faith to free Mr. Semin from his "conscription" obligations so that he might return to Portland to fulfill his contractual obligations. In that spirit, we want to provide you with certain information of which you may not be aware. Upon your review of this information, we are confident that you will agree that the alleged "conscription" of Mr. Semin into the Russian military is not only something that IMG should not be involved with, but in fact is something to which IMG should be actively opposed. Our hope is that IMG will act immediately and affirmatively to ensure that Mr. Semin stops playing for LADA and returns to the United States to fulfill his contractual obligations.

As IMG is likely aware, the steps that are being taken with respect to Mr. Semin are identical in type to past improper efforts by Russian clubs to circumvent the contractual rights of NHL teams by arranging to have their hockey players "conscripted" into the Russian military, and then have them perform "military service" by playing for private, commercial hockey teams. These "arrangements" are plainly contrary to Russian law.

Page 2
October 18, 2004

It is apparent from the information provided by IMG's Mr. Goryachkin that the alleged "conscription" of Mr. Semin is not in accordance with Russian law. For example, on September 30, Mr. Goryachkin wrote to inform us that LADA Togliyatti had resolved the matter and that Mr. Semin would be allowed to perform "military service" in Russia while playing hockey for that organization. Mr. Goryachkin's letter of October 7 states that "LADA would be the only team for which Alexander could play during his military service (due to the existence of that certain four year contract he signed with LADA in 2002)."

In fact, if true, these statements prove that the alleged "conscription" of Mr. Semin is not being conducted in accordance with Russian law. We are informed that upon Mr. Semin's conscription, any employment contract he had with LADA would be automatically terminated under article 83 of the Labour Code of the Russian Federation. Article 83 provides that "[a]n employment agreement is subject to termination in the following circumstances that are beyond the control of the parties: . . . (1) conscription of the employee for military service, or his assignment to alternative service."

In addition, we are informed that Russian law makes no provision for a Russian citizen to perform "military service" by making arrangements to play for a private, commercial hockey team. Russian law is explicit on the subject of permissible assignments for military conscripts:

- Clause 3, article 36 of the Federal Law On Military Duty and Military Service provides that Russian citizens may perform military service as conscripts at the Armed Forces of the Russian Federation, Border Troops or Border Agencies, Internal Security Forces of the Ministry of Interior of the Russian Federation or in the Military Railway Forces of the Russian Federation.

- Clause 1, article 44 of the of the Federal Law On Military Duty and Military Service provides that a serviceman may be attached to a federal government body or other state bodies or institutions, state authorities of the constituent regions of the Russian Federation, international organizations in accordance with international treaties to which the Russian Federation is a party, state unitary enterprises whose property is owned by the state or open joint stock companies wholly owned by the federal government and carrying out defence or national security activities.

As you can see, there is no provision in Russian law for a Russian citizen to perform "military service" by playing hockey for a privately owned commercial enterprise.

Page 3
October 18, 2004

In addition, contrary to the implication in Mr. Goryachkin's letter of October 7, if Mr. Semin is conscripted, he is barred by Russian law from engaging in paid activities for parties other than the Russian government. In addition, there is a reference in Mr. Goryachkin's letter of September 30 to the possibility that Mr. Semin's term of military service may be reduced from the mandatory two years. We are advised that there is no provision in Russian law for a conscript legally to "negotiate" a reduced term of service.

In other words, Russian law makes the arrangements that Mr. Goryachkin describes impossible as a legal matter. As I said above, we will, for present purposes, take you at your word that IMG has not participated in Mr. Semin's efforts to breach his contractual obligations and that IMG is acting in good faith. Now that you have this additional information, IMG has the opportunity to demonstrate its good faith with concrete actions. We look forward to your assistance in securing Mr. Semin's commitment to honor his contractual obligation to report immediately to Portland.

Furthermore, as a sign of IMG's good faith, we ask that you further clarify the facts by sending to us by tomorrow (i) the documentation purporting to be a "military conscription notice," as described by Mr. Goryachkin, as well as any other documentation that was received by Mr. Semin relating to that alleged notice, (ii) a copy of his purported contract with LADA, and (iii) updated information regarding what (if anything) took place on October 15. You should know that we ask you for these documents and information primarily because, despite our repeated efforts to contact Mr. Semin through our Russian scout, the player has not responded, and indeed the only information we have received regarding any possible conscription has come from IMG.

We look forward to hearing from you.

Very truly yours,

George McPhee
Vice President/General Manager