# Exhibit O



# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## NATIONAL HOCKEY LEAGUE

## AND

## NATIONAL HOCKEY LEAGUE PLAYERS' ASSOCIATION

## JULY 22, 2005 – SEPTEMBER 15, 2011

## COLLECTIVE BARGAINING AGREEMENT INDEX

PREAMBLE

ARTICLE 1 — DEFINITIONS

ARTICLE 2 — RECOGNITION

ARTICLE 3 — DURATION OF AGREEMENT

ARTICLE 4 — UNION SECURITY AND CHECK-OFF

ARTICLE 5 — MANAGEMENT RIGHTS

ARTICLE 6 — NHLPA AGENT CERTIFICATION

ARTICLE 7 — NO STRIKE, NO DISCRIMINATION AND OTHER UNDERTAKINGS

ARTICLE 8 — ENTRY DRAFT

ARTICLE 9 — ENTRY LEVEL COMPENSATION

ARTICLE 10 — FREE AGENCY

ARTICLE 11 — RULES AND PROCEDURES GOVERNING STANDARD PLAYER'S CONTRACT

ARTICLE 12 — SALARY ARBITRATION

ARTICLE 13 — WAIVERS AND LOANS OF PLAYERS TO MINOR LEAGUE CLUBS

ARTICLE 14 — PLAYER ASSIGNMENTS

ARTICLE 15 — TRAINING CAMP; TRAVEL EXPENSES

ARTICLE 16 — LEAGUE SCHEDULE; PLAYING ROSTERS; RESERVE LISTS; PRACTICE SESSIONS

ARTICLE 17 — GRIEVANCES, ARBITRATION, IMPARTIAL ARBITRATOR

ARTICLE 18 — COMMISSIONER DISCIPLINE

ARTICLE 19 — PER DIEM ALLOWANCE

ARTICLE 20 — GAME TICKETS

ARTICLE 21 — PENSION PLAN

ARTICLE 22 — COMPETITION COMMITTEE

ARTICLE 23 — INSURANCE COVERAGES

ARTICLE 24 — INTERNATIONAL HOCKEY GAMES

ARTICLE 25 — ENDORSEMENTS; SPONSORSHIPS; LICENSING

ARTICLE 26 — NO CIRCUMVENTION

ARTICLE 27 — RELEASES

ARTICLE 28 — PLAYER FUND

ARTICLE 29 — CONTINUING EDUCATION AND CAREER COUNSELING

ARTICLE 30 — NHL CONSTITUTION AND BYLAWS, LEAGUE AND CLUB RULES

ARTICLE 31 — MISCELLANEOUS

ARTICLE 32 — JOINT OWNER-PLAYER BROADCASTING/MARKETING COMMITTEE

ARTICLE 33 — INTEGRATION

ARTICLES 34 TO 46 — **INTENTIONALLY OMITTED**

ARTICLE 47 — PERFORMANCE ENHANCING SUBSTANCES PROGRAM

ARTICLE 48 — SYSTEM ARBITRATION

ARTICLE 49 — PLAYER COMPENSATION COST REDISTRIBUTION SYSTEM

ARTICLE 50 — TEAM PAYROLL RANGE SYSTEM

| | |
|---|---|
| EXHIBIT 1 | STANDARD PLAYER'S CONTRACT |
| EXHIBIT 2 | NHLPA DUES OR FEE AUTHORIZATION |
| EXHIBIT 3 | CBA NOTICES |
| EXHIBIT 4 | ENTRY DRAFT SELECTION |
| EXHIBIT 5 | PERFORMANCE BONUSES |
| EXHIBIT 6 | FORM OF OFFER SHEET |
| EXHIBIT 7 | FORM OF FIRST REFUSAL EXERCISE NOTICE |
| EXHIBIT 8 | PROCEDURES RELATING TO COMMISSIONER DISCIPLINE |
| EXHIBIT 9 | DISABILITY RELEASE – NHLPA |
| EXHIBIT 10 | DISABILITY RELEASE – HOUSTON CASUALTY COMPANY |
| EXHIBIT 11 | NHL RELEASE |
| EXHIBIT 12 | NATIONAL HOCKEY LEAGUE PLAYERS' ASSOCIATION RELEASE |
| EXHIBIT 13 | UNDERTAKING |
| EXHIBIT 14 | FORM OF STANDARD CLUB RULES |
| EXHIBIT 15 | CRITICAL DATE CALENDAR |
| EXHIBIT 16 | COMPLIANCE RULES |
| EXHIBIT 17 | NHL REGULAR SEASON – AMATEUR TRY-OUT AGREEMENT |
| EXHIBIT 18 | FORM OF BONA FIDE OFFER |
| EXHIBIT 19 | FORM OF QUALIFYING OFFER SHEET |
| EXHIBIT 20 | FORM OF BUY-OUT NOTICE |
| EXHIBIT 21 | FORM OF BUY-OUT AGREEMENT |
| EXHIBIT 22 | FORM OF SALARY ARBITRATION FILING NOTICE – CLUB ELECTION |
| EXHIBIT 23 | FORM OF SALARY ARBITRATION FILING NOTICE – PLAYER ELECTION |
| EXHIBIT 24 | INJURY GRIEVANCE PROCEDURES |
| EXHIBIT 25 | FITNESS TO PLAY DETERMINATION FORM |
| EXHIBIT 26 | NHL PLAYER TRANSFER TO/FROM MINORS FORM |
| EXHIBIT 27 | 23-MAN ROSTER LIMIT – GOALTENDER EXEMPTION FORM |
| EXHIBIT 28 | INJURED RESERVE FORM |
| EXHIBIT 29 | NHL CLUB ADDRESS INFORMATION |
| EXHIBIT 30 | **INTENTIONALLY OMITTED** |
| EXHIBIT 31 | CERTIFIED AGENT ANNUAL CERTIFICATION |
| EXHIBIT 32 | GM, CFO, CLUB PRESIDENT ANNUAL CERTIFICATION |
| EXHIBIT 33 | CLUB ANNUAL CERTIFICATION |
| EXHIBIT 34 | EXHIBITS TO SECTION 50.12 ACCOUNTING PROCEDURES |
| EXHIBIT 35 | FORM OF INDEPENDENT ACCOUNTANTS' NOTICE OF SHORTFALL/OVERAGE TO THE NHL AND NHL PLAYERS' ASSOCIATION |

## PREAMBLE

This Collective Bargaining Agreement, together with all Exhibits hereto ("CBA" or "Agreement"), which is the product of bona fide, arm's length collective bargaining, is entered into the __ day of July, 2005, by and between the National Hockey League, a joint venture organized as a not-for-profit unincorporated association ("NHL" or "League"), which is recognized as the sole and exclusive bargaining representative of the present and future Clubs of the NHL, and the National Hockey League Players' Association ("NHLPA" or "Association"), which is recognized as the sole and exclusive bargaining representative of present and future Players in the NHL. The NHL and the NHLPA hereafter shall be referred to collectively as "the parties". This CBA supersedes and replaces all prior collective bargaining agreements between the parties.

1

# ARTICLE 11
## RULES AND PROCEDURES GOVERNING STANDARD PLAYER'S CONTRACT

**11.1    *Standard Player's Contract.*** The standard form SPC annexed hereto as Exhibit 1 will be the sole form of employment contract used for all Player signings after the execution of this Agreement.  The standard form SPC may not be amended or modified in any manner whatsoever.  Filed form 1995 SPCs will be considered valid and effective until their expiration, as deemed modified by this Agreement and the Compliance Rules attached as Exhibit 16 hereto, provided, however, that notwithstanding anything to the contrary contained herein, any previously, and still outstanding, rejected SPC shall not be deemed to be registered or approved pursuant to this provision or otherwise, and such rejected SPC shall be grieved in accordance with Article 17 of this Agreement.

**11.2    *Impartial Arbitrator/System Arbitrator.*** A Grievance pursuant to this Article shall be heard by, and the term Arbitrator as used in this Article shall mean, the Impartial Arbitrator or the System Arbitrator, as the case may be, as required by the terms of Article 17 and Article 48 of this Agreement.

**11.3    *Validity and Enforceability.*** Except as expressly set forth in Section 11.5 below, no SPC shall be valid or enforceable in any manner whatsoever unless and until it has been filed with Central Registry and approved by the League or the Arbitrator. Except as expressly set forth in Section 11.6 below, no Player will be permitted to play in an NHL Game or be entitled to receive his Paragraph 1 Salary or any other rights or benefits pursuant to an SPC unless and until he has executed an SPC with a Club, and such SPC has been approved and registered by the League or approved by the Arbitrator. Notwithstanding anything to the contrary contained herein, a Club may, simultaneously with filing an SPC with Central Registry, request Waivers on the Player whose SPC is being filed.

**11.4    *Signing Deadline for Group 2 Free Agent.*** An SPC for a Group 2 Free Agent will be rejected and will be null and void ab initio (i.e., the Player's Free Agency and contractual status shall revert to the status he held prior to signing his SPC), if it is not signed and filed with Central Registry by 5:00 p.m. New York time on December 1 in the then current NHL Season.

**11.5    *Filing and Approval Process.***

(a)    An SPC or an Offer Sheet will be deemed to be filed with Central Registry only when it is actually received by Central Registry.  A Club shall file an executed SPC or an Offer Sheet with Central Registry by hand, facsimile or electronically, in accordance with Exhibit 3 hereto (provided that any electronic version of the executed SPC must have the optically-scanned signatures affixed thereon).

(b)    Central Registry's records regarding all aspects of its receipt of an SPC or an Offer Sheet, including, without limitation, the date and time such SPC or Offer Sheet has been received by Central Registry, shall be final and conclusive for all purposes

under this Agreement absent written or other recorded evidence to the contrary. In the event there exists such written or other recorded evidence contrary to Central Registry's records, the NHLPA may challenge Central Registry's records pursuant to the provisions of this Agreement.

(c)     A Club must file an executed SPC or Offer Sheet with Central Registry by no later than 5:00 p.m. New York time on the day following the day the Club has received the executed SPC or Offer Sheet from the Player. The Club must also file with Central Registry, within seven (7) days thereafter, three (3) originally executed counterparts of the SPC, and shall also deliver one (1) originally executed counterpart to each of the Player and the NHLPA.

(d)     From the date which is seven (7) days prior to the commencement of the Regular Season, through the end of the League Year, the League shall approve and register, or reject, an SPC by no later than 5:00 p.m. New York time on the day following Central Registry's receipt of such SPC (provided it was received by Central Registry by 5:00 p.m. New York time; SPCs received by Central Registry after 5:00 p.m. New York time will be deemed to have been received on the following day for purposes of this provision); at all other times the League shall have five (5) days from the day following Central Registry's receipt of an SPC (provided it was received by Central Registry by 5:00 p.m. New York time; SPCs received by Central Registry after 5:00 p.m. New York time will be deemed to have been received on the following day for purposes of this provision) to take such action. If no action is taken by the League, either to approve and register, or to reject, an SPC during the applicable time period set forth in the prior sentence, such SPC shall be deemed to be approved and registered.

(e)     Upon rejection of an SPC or an Offer Sheet, or a subsequent challenge and de-registration by the League of a previously approved and registered SPC, the League shall send a written notice as to the specific reasons therefor to the Club (both the Prior Club and the signing Club in the case of an Offer Sheet), the Player and his Certified Agent, if any, and the NHLPA, via facsimile and e-mail. In the event that the League sends written notice of the rejection, or the challenge and/or de-registration, as the case may be, of an SPC or an Offer Sheet during the period commencing after 5:00 p.m. New York time on a Friday and ending 9:00 a.m. New York time on a Monday or on any Canadian national holiday, the League shall also so inform the NHLPA by message left on a telephonic hotline established and maintained by the NHLPA.

(f)     Central Registry shall provide electronically to the Clubs and the NHLPA a daily bulletin of all SPCs that have been approved and registered, or rejected, by the League since the prior day's bulletin. Once an SPC has been approved and registered, Central Registry will provide the NHLPA with access to an electronic version of such approved and registered SPC.

(g)     In the event the League rejects an SPC or Offer Sheet pursuant to Section 11.6(a) below, or challenges and/or de-registers an SPC pursuant to Section 11.6(b) below, if the NHLPA disputes such rejection, challenge and/or de-registration, the NHLPA must notify the League, in writing via facsimile and e-mail, by no later than 5:00

41

p.m. New York time on the day following the day such notice of rejection, challenge and/or de-registration is received by the NHLPA (provided that a notice sent by the League after 5:00 p.m. New York time shall be deemed to have been sent on the following day for purposes of this provision), except that the NHLPA may provide such notice by no later than five (5) days from the day such notice is sent by the League if the League's notice is sent between July 1 and the date which is seven (7) days prior to the commencement of the Regular Season (provided that a notice sent by the League after 5:00 p.m. New York time shall be deemed to have been sent on the following day for purposes of this provision). Such notice from the NHLPA shall set forth the specific reasons that are the basis for such NHLPA dispute. In the event that the NHLPA provides any such notice after 5:00 p.m. New York time on a Friday and before 9:00 a.m. New York time on a Monday or on any United States or Canadian national holiday, the NHLPA shall also so inform the NHL by message left on a telephonic hotline established and maintained by the League. If the NHLPA sends such a notice, then the NHLPA may also refer such dispute to the Arbitrator within twenty-four (24) hours of sending such notice.

**11.6    Rejection of SPCs and/or Offer Sheets; Subsequent Challenge and/or De-Registration of SPCs and/or Offer Sheets.**

(a)    **Rejection of SPCs and/or Offer Sheets.** In the case of an SPC or an Offer Sheet, as the case may be, that is filed and rejected by the League, the following rules and procedures shall apply:

(i)    If an SPC or an Offer Sheet is rejected: (A) because it results in the signing Club exceeding the Upper Limit, or (B) because it does not comply with the Maximum Player Salary or (C) because it is or involves a Circumvention of either the Club's Upper Limit or the Maximum Player Salary, and:

(x) if the NHLPA does not timely dispute and refer to the Arbitrator such rejection in the manner set forth in Section 11.5(g) above, then immediately upon the expiration of the time period within which the NHLPA may dispute and refer to the Arbitrator such rejection, the SPC or Offer Sheet, as the case may be, will be deemed null and void ab initio (i.e., the Player's Free Agency and/or contractual status shall revert to the status he held prior to signing his SPC or Offer Sheet, as the case may be), and the Player shall not be entitled to any of the rights or benefits provided for under the rejected SPC or Offer Sheet, as the case may be; or

(y) if the NHLPA does timely dispute and refer to the Arbitrator such rejection in the manner set forth in Section 11.5(g) above, then such dispute over that rejection shall be both heard and decided by the Arbitrator within forty-eight (48) hours of such referral, during which period the Player shall not be entitled to play under such SPC or Offer Sheet, as the case may be, and shall not be entitled to any of the rights and benefits provided for under such SPC or Offer

Sheet, as the case may be, pending a resolution of such grievance by the Arbitrator.

    (ii)    If an SPC or Offer Sheet, as the case may be, is rejected for reasons other than those specified in (i) above, and:

        (A)    if the NHLPA does not timely dispute and refer to the Arbitrator such rejection in the manner set forth in Section 11.5(g) above, then immediately upon the expiration of the time period within which the NHLPA may dispute and refer to the Arbitrator such rejection, the SPC or Offer Sheet, as the case may be, will be deemed null and void ab initio (i.e., the Player's Free Agency and/or contractual status shall revert to the status he held prior to signing his SPC or Offer Sheet, as the case may be), and the Player shall not be entitled to any of the rights or benefits provided for under the rejected SPC or Offer Sheet, as the case may be; or

        (B)    if the NHLPA does timely dispute and refer to the Arbitrator such rejection in the manner set forth in Section 11.5(g) above, then the Player shall be entitled to play under such SPC, but not under an Offer Sheet, and shall be entitled to all of the rights and benefits provided for under such SPC, but not under an Offer Sheet, pending a resolution of such grievance by the Arbitrator.

    (iii)    If the Arbitrator sustains the League's rejection of any such SPC or Offer Sheet, as the case may be, pursuant to subsection (i) above, then the Arbitrator shall order that the rejected SPC or Offer Sheet, as the case may be, will, immediately upon the League's receipt of the Arbitrator's decision, be deemed null and void ab initio (i.e., the Player's Free Agency and/or contractual status shall revert to the status he held prior to signing his SPC or Offer Sheet, as the case may be), and the Player shall not be entitled to any of the rights or benefits provided for under the rejected SPC or Offer Sheet, as the case may be, other than the right to be paid such Paragraph 1 Salary and Bonuses (other than Signing, Roster or Reporting Bonuses, if any) earned during the period, if any, such Player played for the Club pursuant to such SPC.

    (iv)    If the Arbitrator sustains the League's rejection of any such SPC pursuant to subsection (ii) above, then the Arbitrator shall reform the SPC such that it conforms to the requirements of this Agreement, in a manner such that the term of the SPC shall not be modified and the aggregate compensation to be paid to the Player pursuant to the SPC shall, to the extent possible, be preserved. In

such event, immediately upon the issuance of the Arbitrator's decision, the SPC shall for all purposes be deemed to be amended in accordance therewith and the Player shall be eligible to play. The Player and Club shall be free to agree on a different conforming SPC within three (3) days.

(v)    If the Arbitrator rules that the League's rejection of an SPC or Offer Sheet, as the case may be, pursuant to either subsection (i) or (ii) above was not proper, then the sole remedy the Arbitrator shall be authorized to provide shall be to direct the League promptly to approve and register such SPC and to direct the Club to pay to the Player such Paragraph 1 NHL Salary or Paragraph 1 Minor League Salary, as the case may be, and Bonuses, including such Signing, Roster or Reporting Bonuses, if any, that the Player would have earned had the SPC been registered and approved as of the deadline set forth in Section 11.4(d) above through the date that such SPC is in fact registered and approved (i.e., the period of time missed solely as a result of the League's improper rejection). Further, if the Player missed a games-played bonus by one (1) game, then the Arbitrator shall have the discretion to award the Player such bonus.  The Arbitrator shall not be authorized to award any other bonuses, payments, damages or other equitable or legal relief to the Player.

(vi)    In the event a Club files a bona fide SPC or Offer Sheet within twenty-four (24) hours prior to an applicable signing deadline (e.g., a second June 1 for Unsigned Draft Choices or December 1 for Restricted Free Agents), and such SPC or Offer Sheet is rejected by the League pursuant to subsection (i) above, and, either:  the NHLPA does not timely dispute and refer to the Arbitrator such rejection in the manner set forth in Section 11.5(g) above or, if challenged, the Arbitrator sustains such rejection, then effective upon:  (x) the expiration of the NHLPA's time to dispute and refer to the Arbitrator such rejection in the manner set forth in Section 11.5(g) above, or (y) the Arbitrator sustaining such rejection as set forth in subsection (iii) above, as the case may be, such SPC or Offer Sheet, as the case may be, will be deemed null and void ab initio (i.e., the Player's Free Agency and/or contractual status shall revert to the status he held prior to signing his SPC or Offer Sheet), for a 48-hour period only thereafter, the Player and Club (or another Club, to the extent the Player is a Free Agent) may attempt to negotiate a new or reformed SPC or Offer Sheet, which must be filed with Central Registry within such 48-hour period.

    (b)     **Subsequent Challenge and/or De-Registration of SPCs.**
Notwithstanding anything to the contrary in this Section 11.6, an approved and registered SPC may be subject to subsequent challenge and/or de-registration by the League: (i) in

the case of a Circumvention relating to either the Club Upper Limit or the Maximum Player Salary, within sixty (60) days from the date upon which the facts of the Circumvention became known or reasonably should have been known to the NHL, or (ii) in the case of a challenge pursuant to (i) or (ii) below, within fourteen (14) days from the date upon which the SPC was approved by the NHL, in each case as follows:

(i)    If an SPC is challenged solely because it resulted in the Club's Average Club Salary exceeding the Upper Limit, then the Player shall be entitled to continue to play under such SPC, and shall be entitled to all of the rights and benefits provided for under such SPC, and:

(A)    If the NHLPA does not timely dispute and refer to the Arbitrator the League's challenge to such SPC in the manner set forth in Section 11.5(g), above, then immediately upon the expiration of the time period within which the NHLPA may dispute and refer to the Arbitrator such challenge, the Club shall be obligated to take whatever action(s) may be necessary to come into compliance with Article 50 of this Agreement; or

(B)    If the NHLPA does timely dispute and refer to the Arbitrator the League's challenge to such SPC in the manner set forth in Section 11.5(g), above, such dispute shall be both heard and decided within forty-eight (48) hours of such referral; and:

(x) If the Arbitrator sustains the League's challenge, then the Arbitrator shall order that immediately upon the League's and the Club's receipt of the Arbitrator's decision, the Club shall be obligated to take whatever action(s) may be necessary to come into compliance with Article 50 of this Agreement.

(y) If the Arbitrator rules that the League's challenge of a disputed SPC was not proper, then the sole remedy the Arbitrator shall be authorized to provide shall be to direct the League promptly to drop its challenge to such disputed SPC.

(ii)    If an SPC is challenged because it does not comply with the Maximum Player Salary and said challenge does not involve, and it is not, a Circumvention, then the Player shall be entitled to continue to play under such SPC, and shall be entitled to all of the rights and benefits provided for under such SPC and:

(A)    If the NHLPA does not timely dispute and refer to the Arbitrator such challenge in the manner set forth in Section 11.5(g), above, then immediately upon the expiration of the

45

time period within which the NHLPA may dispute and refer to the Arbitrator such challenge, the Club and the Player will have forty-eight (48) hours to file a conforming SPC and, failing that, the dispute shall be referred to the Arbitrator who shall reform the SPC so as to conform it to the requirements of this Agreement, in a manner such that the term of the SPC shall not be modified and the aggregate compensation to be paid to the Player pursuant to the SPC shall, to the extent possible, be preserved. In such event, immediately upon the issuance of such decision, the SPC shall for all purposes be deemed to be amended in accordance with the Arbitrator's decision; or

(B)     if the NHLPA does timely dispute and refer to the Arbitrator such challenge in the manner set forth in Section 11.5(g), above, then such dispute shall be both heard and decided by the Arbitrator within forty-eight (48) hours of such referral, during which period the Player shall continue to be entitled to play under such SPC, and shall be entitled to all of the rights and benefits provided for under such SPC, pending a decision by the Arbitrator; and:

(x) If the Arbitrator sustains the League's challenge, then the Arbitrator shall reform the SPC so as to conform it to the requirements of Article 50, in a manner such that the term of the SPC shall not be modified and the aggregate compensation to be paid to the Player pursuant to the SPC shall, to the extent possible, be preserved. In such event, immediately upon the issuance of such decision, the SPC shall be deemed to be amended in accordance with the Arbitrator's decision and the Player shall be eligible to play. The Player and Club shall be free to agree on a different conforming SPC within three (3) days.

(y) If the Arbitrator rules that the League's challenge to a disputed SPC was improper, then the sole remedy the Arbitrator shall be authorized to provide shall be to direct the League promptly to drop its challenge to such disputed SPC.

(iii)   If an SPC is de-registered because it is or involves a Circumvention relating to either the Club's Upper Limit or Maximum Player Salary, then the Player shall be entitled to continue to play under such SPC, and shall be entitled to all of the rights and benefits provided for under such SPC to the extent provided for below; and:

(A)     If the NHLPA does not timely dispute and refer to the Arbitrator such de-registration in the manner set forth in

46

Section 11.5(g), above, then effective immediately upon the expiration of the time period within which the NHLPA may dispute and refer to the Arbitrator such de-registration, the SPC will be deemed null and void, and the Player shall thereafter not be entitled to any of the rights or benefits provided for under the rejected SPC and the Player's Free Agency and/or contractual status shall revert to the status he held prior to signing his SPC, provided that the Player shall be entitled to be paid his Paragraph 1 Salary and Bonuses (other than Signing, Roster and Reporting Bonuses, if any) earned during the period, if any, such Player played for the Club pursuant to such SPC; or

(B)    If the NHLPA does timely dispute and refer to the Arbitrator such de-registration in the manner set forth in Section 11.5(g) above, then the Arbitrator shall be directed to both hear and decide the matter within forty-eight (48) hours of such referral, absent a showing of good cause by the NHLPA as to why it requires additional time in order to adequately investigate and try such case. In such event of a showing of good cause, it is nonetheless the intention of the parties that the case be heard and decided as expeditiously as possible. The Player shall continue to be entitled to play under such SPC, and shall continue to be entitled to any of the rights and benefits provided for under such SPC, pending a decision by the Arbitrator which shall under any circumstances be expedited; and:

(x) If the Arbitrator sustains the League's de-registration, then the Arbitrator shall order that immediately upon the League's and Club's receipt of the Arbitrator's decision, the de-registered SPC will be deemed null and void, and the Player shall not thereafter be entitled to any of the rights or benefits provided for under the de-registered SPC, and the Player's Free Agency and/or contractual status shall revert to the status he held prior to signing his SPC, provided that the Player shall be entitled to be paid his Paragraph 1 Salary and Bonuses (other than Signing, Roster and Reporting Bonuses, if any) earned during the period, if any, such Player played for the Club pursuant to such SPC. If the Arbitrator determines that the Club was responsible for the Circumvention and the Player was not, the Player shall be free to sign with another Club without regard to any signing deadlines and shall be made whole by the Circumventing Club for any damages suffered by the Player as a result of the Circumvention.

(y) If the Arbitrator rules that the League's de-registration of a disputed SPC was not proper, then the sole remedy the

47

Arbitrator shall be authorized to provide shall be to direct the League promptly to approve and re-register such disputed SPC.

**11.7    Team and Performance Bonuses.** Clubs may not establish team bonus plans. An SPC entered into after the Effective Date, may only contain Bonuses as and to the extent expressly set forth in Section 50.2(b).

**11.8    Individually Negotiated Limitations on Player Movement.**

(a)      The SPC of any Player who is a Group 3 Unrestricted Free Agent under Article 10.1(a) may contain a no-Trade or a no-move clause.  SPCs containing a no-Trade or a no-move clause may be entered into prior to the time that the Player is a Group 3 Unrestricted Free Agent so long as the SPC containing the no-Trade or no-move clause extends through and does not become effective until the time that the Player qualifies for Group 3 Unrestricted Free Agency. If the Player is Traded or claimed on Waivers prior to the no-Trade or no-move clause taking effect, the clause does not bind the acquiring Club.  An acquiring Club may agree to continue to be bound by the no-Trade or no-move clause, which agreement shall be evidenced in writing to the Player, Central Registry and the NHLPA, in accordance with Exhibit 3 hereof.

(b)      A no-move clause may prevent the involuntary relocation of a Player, whether by Trade, Loan or Waiver claim.  A no-move clause, however, may not restrict the Club's buy-out and termination rights as set forth in this Agreement.  Prior to exercising its Ordinary Course Buy-Out rights pursuant to Paragraph 13 of the SPC hereof, the Club shall, in writing in accordance with the notice provisions in Exhibit 3 hereof, provide the Player with the option of electing to be placed on Waivers.  The Player will have twenty-four (24) hours from the time he receives such notice to accept or reject that option at his sole discretion, and shall so inform the Club in writing, in accordance with the notice provisions in Exhibit 3 hereof, within such twenty-four (24) hour period.  If the Player does not timely accept or reject that option, it will be deemed rejected.

**11.9    General.**

(a)      No SPC entered into after the Effective Date may provide for any payments not permitted by Article 50.

(b)      Nothing contained in this Agreement shall require or permit any Club to pay or be obligated to pay any Player (not including retired players) other than pursuant to the terms of an approved SPC.  Nothing contained in the immediately preceding sentence shall affect a Club's obligation to pay a Player Deferred Compensation earned under a prior SPC.

(c)      Nothing in this Agreement shall prevent individual negotiations between a Player and his Club with respect to compensation.  To the extent of any inconsistency between any provision of an SPC and any provision of this Agreement (other than the duration thereof), this Agreement shall govern.  There shall be no duplication or compounding of benefits to Players where both this Agreement and the Player's SPC

48

provide for similar benefits.  A Player and a Club shall at all times be free to negotiate and enter into a two-way SPC, including those Players who are eligible to receive, or have received, a One-Way Qualifying Offer.

(d)     Bonuses earned by a Player pursuant to an SPC shall be paid within the period set forth in the SPC, <u>provided</u>, if no period is set forth, then within ten (10) days of the Club's last NHL Game in the League Year in which such Bonuses are earned and payable.  Players shall receive awards earned as soon as practicable after entitlement.  In cases where the Club is to receive monies from the League to pay for such awards, the Club shall disburse such monies to the entitled Players as soon as practicable after receiving such monies from the League.

(e)     No Club shall act in bad faith to deprive a Player of rights or benefits under this Agreement or any current SPC or with respect to Deferred Compensation earned under a prior SPC.

**11.10  *No Renegotiation.*** In no event shall a Club and a Player negotiate a change in any terms of a Player SPC for the then-current season or for any remaining season of an SPC.  This provision shall not prohibit a Player and Club from negotiating an extension to an existing SPC in accordance with the terms of Section 50.5(f) hereof or from negotiating a new or reformed SPC or Offer Sheet in the limited context and time-frame expressly set forth in Section 11.6(a)(vi) above.

**11.11  *Conformity.*** All SPCs signed prior to the Effective Date and in effect during the term hereof shall be deemed amended in such a manner to require the parties to comply with the terms of this Agreement, the Compliance Rules attached as Exhibit 16 and the SPC.

**11.12  *Minimum Paragraph 1 Salary.*** Except with respect to Amateur Try-Out Agreements pursuant to Exhibit 17, no SPC entered into after the date of execution of this Agreement shall provide:

(a)     for Paragraph 1 NHL Salary of less than the following:

2005-06  -  U.S. $450,000

2006-07  -  U.S. $450,000

2007-08  -  U.S. $475,000

2008-09  -  U.S. $475,000

2009-10  -  U.S. $500,000

2010-11  -  U.S. $500,000

2011-12  -  U.S. $525,000

(b)    Paragraph 1 Minor League Salary, for each year during the term of this Agreement, in an amount less than the greater of: (i) $35,000 (Native Currency) or (ii) the minimum Minor League salary.

**11.13  *Option Clauses/Voidable Years.*** SPCs shall not contain any option clause or voidable year, whether automatic, optional or otherwise.

**11.14  *No Liability for Compensation.*** In no event shall either the League or any Club, solely by reason of membership in the League, be liable with respect to any Player's compensation, whether under a Deferred Compensation arrangement or otherwise.

**11.15  *Default.*** If a Club defaults in the payment of any compensation to the Player provided for in his SPC or fails to perform any other obligation under his SPC, the Player may, by notice in writing to the Club and to the League and the NHLPA, specify the nature of any and all defaults and thereafter:

(a)    If the Club fails to remedy the default within fourteen (14) days from receipt of such notice, except as hereinafter provided in subsections (b), (c) and (d) of this Section 11.15, the SPC shall be terminated, and, upon the date of such termination, all obligations of both parties shall cease, except the obligation of the Club to pay the Player's compensation to that date, provided, however, that;

(b)    the Player hereby irrevocably offers the League an option to cure said default within the seven (7) days next succeeding the fourteen (14) days within which the Club may cure the default upon the condition that, in the event the League may accept this offer, the League would then guarantee payment of that portion of the Player's compensation, as set forth in the Player's SPC, as may become due for a period of twenty-one (21) days from receipt by the League of any notice of default. The League may accept this offer by notification to the Player and the NHLPA in writing of such acceptance and of its guarantee of said twenty-one (21) day compensation period as soon as possible following receipt of notice of default from Player but in no event later than fourteen (14) days following receipt of such notice. This offer will be deemed rejected if not accepted as set forth above;

(c)    said option may be assigned by the League to any other Club and, upon such assignment, the assignee Club shall inure to all of the rights of and assume all obligations of the League under this Section 11.15;

(d)    the Player further agrees that, if the League has given due notice as set forth in subsection (b), he will continue to perform all of his obligations under his SPC for the full twenty-one (21) day period and, in the event the Club does not cure the default within the fourteen (14) day period, as set forth in subsection (a), the League, or any Club to which its option has been assigned, may cure the default within the seven (7) days following the first fourteen (14) days next succeeding receipt of notice of default; and

(e)    the Club agrees if it does not cure the default within the fourteen (14) day period, as set forth in subsection (a) above, and the League, or an assignee Club, cures

50

said default in accordance with subsections (b), (c) and (d) of this Section 11.15 then, in such event, all rights and obligations of the Club under this SPC shall be transferred to the League, or such assignee Club, provided, however, that no obligation with respect to a default or defaults claimed to exist at the time of notice of default, as provided above, but not specifically included and set forth in said notice shall be assumed by the League or such assignee Club and the League or such assignee Club shall have no liability with respect thereto.

(f)    The Club and/or the League may dispute the Player's assertion of a default through an expedited arbitration proceeding in which case the Arbitrator shall be directed both to hear and decide such case within fourteen (14) days of receipt of notice from the Player pursuant to this Section 11.15, absent a showing of good cause by the League and/or the Club as to why it requires additional time in order to adequately investigate and try such case. In such event, it is nonetheless the intention of the parties that the case be heard and decided as expeditiously as possible. During the pendency of the Grievance concerning the existence of a default, the Player's SPC shall remain in full force and effect.

**11.16    *Sale of SPCs.*** There shall be no cash transactions in connection with the Assignment of Players. Nor shall any Club be permitted to retain an obligation to pay or to reimburse another Club for a portion of any Player's Player Salary or Bonuses in connection with the Assignment of such Player, other than as set forth in Section 50.8(b)(ii) of this Agreement.

**11.17    *Currency.*** All SPCs must provide for compensation in U.S. Currency for Paragraph 1 NHL Salary and Bonuses. Minor League compensation may be in the Native Currency of the NHL Club.

**11.18    *Ordinary Course Buy-Outs Outside the Regular Period.*** Clubs shall have the right to exercise Ordinary Course Buy-Outs outside the regular period for Ordinary Course Buy-Outs in accordance with Paragraph 13(c)(ii) of the SPC. Each Club shall be limited to no more than three (3) such buyouts over the term of this Agreement pursuant to Paragraph 13(c)(ii) of the SPC. However, in the event that a Club has only one salary arbitration hearing pursuant to Section 12.3(a) in a given League Year, such Club shall not be entitled to exercise such a buyout outside the regular period for Ordinary Course Buy-Outs. No Club shall exercise an Ordinary Course Buy-out outside the regular period for any Player earning less than $1 million.

**EXHIBIT 1**
**STANDARD PLAYER'S CONTRACT**

IMPORTANT NOTICE TO PLAYER

Before signing this Standard Player's Contract ("SPC") you should carefully examine it to be sure that all terms and conditions agreed upon have been incorporated herein, and if any has been omitted, you should insist upon having it inserted in the SPC before you sign.

---

# NATIONAL HOCKEY LEAGUE
STANDARD PLAYER'S CONTRACT
(2005 FORM)

BETWEEN _____

Hereinafter called the "Club," a member of the National Hockey League, hereinafter called the "League"

AND _____

hereinafter called the "Player"

State/Province/Country

of _____ in _____ of _____

In consideration of the respective obligations herein and hereby assumed, the parties to this SPC severally agree as follows:

1.     The Club hereby employs the Player as a skilled hockey Player for the term of ___ League Year(s) commencing the later of July 1, 20___ or upon execution of this SPC and agrees, subject to the terms and conditions hereof, to pay the Player a salary of _____ Dollars ($_____).

Payment of such Paragraph 1 Salary shall be in consecutive semi-monthly installments on the 15th and 30th day of each month following the commencement of the NHL Regular Season or following the dates of reporting, whichever is later (provided that the pay period shall not close more than three (3) days prior to payroll dates); provided, however, that if the Player is not in the employ of the Club for the whole period of the Club's NHL Regular Season Games, then he shall receive only part of such Paragraph 1 Salary in the ratio of the number of days of actual employment to the number of days of the NHL Regular Season.

And it is further mutually agreed that if the SPC and rights to the services of the Player are Loaned or otherwise transferred to a club in another league, the Player shall only be paid at an annual salary rate of

_____ Dollars in the _____ league in the _____ League Year.
or _____ Dollars in the _____ league in the _____ League Year.
or _____ Dollars in the _____ league in the _____ League Year.

2.    The Player agrees to give his services and to play hockey in all NHL Games, All Star Games, International Hockey Games and Exhibition Games to the best of his ability under the direction and control of the Club in accordance with the provisions hereof.

The Player further agrees,

(a)    to report to his Club's Training Camp at the time and place fixed by the Club, in good physical condition,

(b)    to keep himself in good physical condition at all times during the season,

(c)    to give his best services to the Club and to play hockey only for the Club unless his SPC is Assigned, Loaned or terminated by the Club,

(d)    to co-operate with the Club and participate in any and all reasonable promotional activities of the Club which will in the opinion of the Club promote the welfare of the Club and to cooperate in the promotion of the League and professional hockey generally,

(e)    to conduct himself on and off the rink according to the highest standards of honesty, morality, fair play and sportsmanship, and to refrain from conduct detrimental to the best interest of the Club, the League or professional hockey generally.

3.    In order that the Player shall be fit and in proper condition for the performance of his duties as required by this SPC and the Agreement, the Player agrees to report for practice at such time and place as the Club may reasonably designate and participate in such Exhibition Games as may be arranged by the Club.

4.    The Club may from time to time during the continuance of this SPC establish reasonable rules governing the conduct and conditioning of the Player, and such reasonable rules shall form part of this SPC and the Agreement as fully as if herein written.  For violation of any such rules or for any conduct impairing the thorough and faithful discharge of the duties incumbent upon the Player, the Club may impose a reasonable fine upon the Player and deduct the amount thereof from any money due or to become due to the Player.  The Club may also suspend the Player for violation of any such rules.  When the Player is fined or suspended, he shall be given notice in writing stating the amount of the fine and/or the duration of the suspension and the reason therefor.  Copies of the rules referred to herein shall be filed at the main offices of the League and the National Hockey League Players' Association ("NHLPA").

5.    (a)    Should the Player be disabled or unable to perform his duties under this SPC he shall submit himself for medical examination and treatment by a physician selected by the Club, and such examination and treatment, when made at the request of the Club, shall be at its expense unless made necessary by some act or conduct of the Player contrary to the terms and provisions of this SPC or the rules established under Paragraph 4.  At any time a physician selected by a Club makes a determination as to whether or not a Player is disabled and unable to perform his duties as a hockey Player for purposes of this Paragraph 5 of the SPC, such physician shall evidence such determination by completing the form attached hereto as Exhibit 25, which shall be provided to the Player at the time of the examination and immediately provided to the Club as well.

(b)    If the Player, in the judgment of the Club's physician, is disabled or is not in good physical condition at the commencement of the season or at any subsequent time during the season (unless such condition is the direct result of any injury sustained during the course of his employment as a hockey Player with the Club, including travel with his team or on business requested by the Club) so as to render him unfit to play skilled hockey, then it is mutually agreed that the Club shall have the right to suspend the Player for such period of disability or unfitness, and no compensation shall be payable for that period under this SPC.

(c)    If the Player is injured during the course of his employment as a hockey Player with the Club, including travel with his team or on business requested by the Club, the Club will pay the Player's reasonable hospitalization until discharged from the hospital, and his medical expenses and doctor's bills, provided that the hospital and doctor are approved by the Club.  This approval will not be unreasonably withheld.

(d)    It is also agreed that if the Player, in the sole judgment of the Club's physician, is disabled and unable to perform his duties as a hockey Player by reason of an injury sustained during the course of his employment as a hockey Player, including travel with his team or on business requested by the Club, he shall be entitled to receive his remaining Paragraph 1 Salary and Signing Bonuses due in accordance with the terms of this SPC for the remaining stated term of this SPC as long as the said disability and inability to perform continue but in no event beyond the expiration date of the fixed term of this SPC, which fixed term shall in no event be deemed to include any option period related to a playing season after the playing season in which the injury occurred.  In consideration of payment of such Paragraph 1 Salary, as well as payments made by the Club to fund the Major Medical Plan pursuant to Article 23 of the Collective Bargaining Agreement between the Member Clubs of League and the NHLPA, payments made by the Club to provide Career Ending Disability Insurance pursuant to Article 23 of such Agreement and other consideration, the Player does hereby covenant that in the event he files a claim under such Career Ending Disability Insurance (unless such claim is not paid), he personally releases and will release the Club, the NHL, NHLPA, all other NHL Clubs, and the servants, employees, officers and agents of each of the above from any and every additional obligation, liability, claim or demand whatsoever for such salary or arising out of such injury or the treatment thereof, including without limitation liability in tort, and extending to all damages, whenever arising.

(e)    After the Club physician makes a determination regarding the Player's fitness or unfitness to play, within seventy-two (72) hours of receipt of the required notice from the Club physician, the Player may provide notice to the Club that he is seeking a second opinion pursuant

3

to Paragraph 5 of the SPC. The Player must obtain a second opinion within five (5) days (or later only upon a showing of good cause) of receipt of the required notice from the Club physician.

(f)      The physician consulted by the Player in accordance with subsection (e) must make a determination as to whether the Player is disabled and unable to perform his duties as a hockey Player and shall evidence such determination by completing the form attached as Exhibit 25, which shall be provided to the Player at the time of the examination and immediately provided to the Club as well. The Club physician and the physician retained by the Player must consult as expeditiously as possible and no later than seventy-two (72) hours (or later only upon a showing of good cause) after the Player receives the determination by the Player's physician.

(g)      If, after consulting as provided for in subsection (f), the Club physician and the physician retained by the Player agree that the Player is either disabled and unable to perform, or not disabled and able to perform, his duties as a hockey Player, their agreed-upon determination shall be evidenced by completing the form attached as Exhibit 25, which shall immediately be provided to the Club and the Player. Such determination shall be conclusive, final and binding upon the Club and the Player, absent a showing of improper interference with the procedures set forth in Section 17.7 of the CBA and Paragraph 5 of the SPC. However, if the Club physician and the physician retained by the Player cannot agree on whether the Player is disabled and unable to perform his duties as a hockey Player, they shall evidence such disagreement by completing the form attached as Exhibit 25, which shall immediately be provided to the Club and the Player, and shall confer and agree on an independent physician to examine the Player. The independent physician must be selected as expeditiously as possible and, in any event, within the seventy-two (72) hour period referred to in (f) above (or later only upon a showing of good cause). If the physician retained by the Player and the Club physician are unable to select the independent physician within such period, the independent physician shall be selected jointly by a medical designee appointed by the NHL and a medical designee appointed by the NHLPA. That selection shall take place as expeditiously as possible but not later than an additional forty-eight (48) hours after referral to the NHL and NHLPA medical designees.

(h)      The Player must submit himself to examination, and the independent physician selected pursuant to subsection (g) must examine the Player, within five (5) business days of his selection (or later only upon a showing of good cause).  The independent physician shall make a determination of whether the Player is disabled and unable to perform his duties as a hockey Player and evidence such determination by completing the form attached as Exhibit 25, which shall be provided to the Player at the time of the examination and immediately provided to the Club as well.

(i)      The independent physician's determination as to whether the Player is disabled and unable to perform his duties as a hockey Player shall be conclusive, final and binding upon the Club and the Player, absent a showing of improper interference with the procedures set forth in Section 17.7 of the CBA and Paragraph 5 of the SPC.

(j)      If, pursuant to Paragraphs 5(g) or (h) a Player examined in connection with Paragraph 5(d) is declared to be unfit for play by reason of an injury sustained during the course of his employment as a hockey Player, including travel with his team or on business requested by the Club, he shall continue to receive the full benefits of this Agreement in accordance with the

4

provisions of Paragraph 5(d).  If such Player is declared to be physically able to play and refuses to do so, he shall be liable to immediate suspension without pay.

(k)     If either the Club or the Player fail to timely comply with any of the requirements set forth in Paragraph 5, absent a showing of good cause, then such non-complying party shall be deemed to have acceded to the other party's position in such dispute.

(l)     The Club and Player shall cooperate, and shall cause their respective physicians to cooperate, for the purpose of making medical records available to any physician who examines the Player pursuant to this Paragraph 5.

(m)     For purposes of clarity, the Club physician, the physician retained by the Player and the independent physician shall be charged only with determining whether the Player is disabled and unable to perform his duties as a hockey Player.  Any other determinations, including whether a Player's disability is a hockey related injury, shall be within the jurisdiction of the Impartial Arbitrator.

(n)     In connection with a disability which is not caused by an injury sustained during the course of his employment as a hockey Player including travel with his team or on business requested by his Club, the procedures set forth in this Paragraph 5 shall also apply to the Club doctor's determination regarding the Player's physical fitness to return to play.  If the Player is declared to be fit for play, by the Club doctor and Player doctor, or by the independent doctor, he must perform his duties hereunder and shall be entitled to receive the full benefits of this Agreement.  If he is declared to be not physically able to play, he shall not be entitled to the benefits of this Agreement until he has been declared to be physically fit to play by the independent medical specialist.

6.     The Player represents and agrees that he has exceptional and unique knowledge, skill and ability as a hockey Player, the loss of which cannot be estimated with certainty and cannot be fairly or adequately compensated by damages.  The Player therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate injunctive proceedings without first exhausting any other remedy which may be available to the Club, from playing hockey for any other team and/or for any breach of any of the other provisions of this SPC.

7.     The Player and the Club recognize and agree that the Player's participation in other sports may impair or destroy his ability and skill as a hockey Player.  Accordingly the Player agrees that he will not during the period of this SPC or during any period when he is obligated under this SPC to enter into a further SPC with the Club engage or participate in football, baseball, softball, hockey, lacrosse, boxing, wrestling or other athletic sport without the written consent of the Club, which consent will not be unreasonably withheld.

8.     (a)     The Club recognizes that the Player owns exclusive rights to his individual personality, including his likeness.  The Player recognizes that the Club owns exclusive rights to its name, emblems and uniform, which the Player wears as a hockey Player for the Club.

The Player hereby irrevocably grants to the Club during the period of this SPC and during any period when he is obligated under this SPC to enter into a further SPC with the Club

the right to permit or authorize any firm, person or corporation to take and make use of any still photographs, motion pictures or electronic (including television) images of himself in uniform and agrees that thereafter all rights in such photographs, pictures and images (including the right to identify him by name) shall belong to the Club exclusively for the purposes of telecasts, film or video documentaries or features, advertisements and promotions of the Club's games, use by the media for reportorial purposes, game programs, yearbooks, magazines and the like, and purposes in which the focus is on the Club or game and not the individual Player.

The Club hereby irrevocably grants to the Player during the period of this SPC and thereafter the right to use the name of the Club (but not the emblem or uniform unless otherwise agreed) to identify himself, truthfully, as a Player of the Club, past or present.

All obligations and rights set forth in this Paragraph 8(a) shall be subject to modification from time to time by the provisions of the CBA.

(b)    The Player further agrees that during the period of this SPC and during any period when he is obligated under this contract to enter into a further contract with the Club, he will not make public appearances, participate in radio or television programs, or permit his picture to be taken, or write or sponsor newspaper or magazine articles, or sponsor commercial products without the written consent of the Club which consent shall not be unreasonably withheld.

9.    It is mutually agreed that the Club will not pay, and the Player will not accept from any person, any bonus or anything of value for winning or otherwise attempting to affect the outcome of any particular game or series of games except as authorized by the League By-laws.

10.    The Player agrees he will not tamper with or enter into negotiations with any Player under SPC or reservation to any Club of the League for or regarding such Player's current or future services, without the written consent of the Club with which such Player is connected under penalty of a fine to be imposed by the Commissioner of the League.

11.    It is mutually agreed that the Club shall have the right to Assign or to Loan this SPC, and the Player agrees to accept and be bound by such Assignment or Loan, and will faithfully perform and carry out this SPC with the same purpose and effect as if it had been entered into by the Player and such other club.

It is further mutually agreed that in the event that this SPC is Assigned, or the Player's services are Loaned, to another club, the club shall by notice in writing delivered personally to the Player or by mail to the address set out below his signature hereto advise the Player of the name and address of the club to which he has been Assigned or Loaned, and specify the time and place of reporting. If the Player fails to report to such other club, he may be suspended by such other club and no Paragraph 1 Salary shall be payable to him during the period of such suspension.

12.    *Default.* If a Club defaults in the payment of any compensation to the Player provided for in his SPC or fails to perform any other obligation under his SPC, the Player may, by notice in writing to the Club and to the League and the NHLPA, specify the nature of any and all defaults and thereafter:

6

(a)    If the Club fails to remedy the default within fourteen (14) days from receipt of such notice, except as hereinafter provided in subsections (b), (c) and (d) of this Paragraph 12, the SPC shall be terminated, and, upon the date of such termination, all obligations of both parties shall cease, except the obligation of the Club to pay the Player's compensation to that date, provided, however, that;

(b)    the player hereby irrevocably offers the League an option to cure said default within the seven (7) days next succeeding the fourteen (14) days within which the Club may cure the default upon the condition that, in the event the League may accept this offer, the League would then guarantee payment of that portion of the Player's compensation, as set forth in the Player's SPC, as may become due for a period of twenty-one (21) days from receipt by the League of any notice of default. The League may accept this offer by notification to the Player and the NHLPA in writing of such acceptance and of its guarantee of said twenty-one (21) day compensation period as soon as possible following receipt of notice of default from Player but in no event later than fourteen (14) days following receipt of such notice. This offer will be deemed rejected if not accepted as set forth above;

(c)    said option may be assigned by the League to any other Club and, upon such assignment, the assignee Club shall inure to all of the rights of and assume all obligations of the League under this Paragraph 12;

(d)    the Player further agrees that, if the League has given due notice as set forth in subsection (b), he will continue to perform all of his obligations under his SPC for the full twenty-one (21) day period and, in the event the Club does not cure the default within the fourteen (14) day period, as set forth in subsection (a), the League, or any Club to which its option has been assigned, may cure the default within the seven (7) days following the first fourteen (14) days next succeeding receipt of notice of default; and

(e)    the Club agrees if it does not cure the default within the fourteen (14) day period, as set forth in subsection (a) above, and the League, or an assignee Club, cures said default in accordance with subsections (b), (c) and (d) of this Paragraph 12 then, in such event, all rights and obligations of the Club under this SPC shall be transferred to the League, or such assignee Club, provided, however, that no obligation with respect to a default or defaults claimed to exist at the time of notice of default, as provided above, but not specifically included and set forth in said notice shall be assumed by the League or such assignee Club and the League or such assignee Club shall have no liability with respect thereto.

(f)    The Club and/or the League may dispute the Player's assertion of a default through an expedited arbitration proceeding in which case the Arbitrator shall be directed both to hear and decide such case within fourteen (14) days of receipt of notice from the Player pursuant to this Paragraph 12 absent a showing of good cause by the League and/or the Club as to why it requires additional time in order to adequately investigate and try such case. In such event, it is nonetheless the intention of the parties that the case be heard and decided as expeditiously as possible. During the pendency of the Grievance concerning the existence of a default, the Player's SPC shall remain in full force and effect.

7

13.    The Club, in addition to other rights hereunder, at its option, by written notice delivered to the Player in person, or by overnight mail to the Player's address set forth herein, may terminate this SPC on the following conditions:

(a)    The Club shall offer the Player on Unconditional Waivers, either before or promptly after the notice of intention to exercise the Ordinary Course Buy-Out option (herein called "notice of termination") is given.

(b)    Termination pursuant to this Paragraph shall be effective upon receipt by the Player of the notice of termination and the Player clearing Unconditional Waivers pursuant to Paragraph 13(a) above.

(c)    The notice of termination shall be effective if given in the form attached as Exhibit 20, with a copy faxed to the NHLPA and Central Registry as follows:

(i)    beginning the later of June 15 or forty-eight (48) hours after the conclusion of the Stanley Cup Finals and ending at 5:00 p.m. New York time on June 30; and

(ii)    For Clubs who have Club or Player elected Salary Arbitration filings pursuant to Article 12, within the forty-eight (48) hour period beginning on the third day following the later of: (i) the Club's receipt of its last salary arbitration award; or (ii) settlement of its last case (provided such award was received or such settlement occurred after 7:00 p.m. New York time; awards or settlements that occurred or were received after 7:00 p.m. New York time will be deemed to have occurred or received the following business day for purposes of this provision).

(d)    If the Club elects to terminate this SPC pursuant to this Paragraph 13, it shall be obligated to pay to the Player, in equal semi-monthly installments, to be paid in accordance with the payroll payment schedule applicable to the Club's Active Roster, over twice the remaining term of the SPC (the "Buy-Out Period"):

(i)    if the Player is under 26 years of age at the time the termination is effective, an amount equal to 1/3 of, or

(ii)    if the Player is 26 years of age or older at the time the termination is effective, an amount equal to 2/3 of the total fixed amount of the Player's Paragraph 1 NHL Salary, for the unexpired fixed-term of this SPC, reduced by any advance payment of Paragraph 1 Salary received by the Player prior to the date the termination is effective.

(e)    Upon termination, the Player shall immediately be an Unrestricted Free Agent and shall no longer be obligated to perform under this SPC.

(f)    Waiver claim of Player by another Club shall pre-empt and relinquish Club's Buy-Out obligation, due to failure to clear Waivers.

(g)    Clubs shall file their Buy-Out agreements, the form of which is attached hereto as Exhibit 21, with Central Registry and the NHLPA by facsimile or overnight mail within 24 hours of such agreements becoming effective.

(h)    The Club acknowledges and agrees that the Player may pledge/assign the Club's payout obligation to a third party in order to enable him to receive a lump sum buyout.

14.    The Club may also terminate this SPC upon written notice to the Player (but only after obtaining Waivers from all other Clubs) if the Player shall at anytime:

(a)    fail, refuse, or neglect to obey the Club's rules governing training and conduct of Players, if such failure, refusal or neglect should constitute a material breach of this SPC.

(b)    fail, refuse or neglect to render his services hereunder or in any other manner materially breach this SPC.

In the event of termination under subsection (a) or (b) the Player shall only be entitled to compensation due to him to the earlier of the date such notice is delivered to him or the date of the mailing of such notice to his address as set out below his signature hereto.

In the event this SPC is terminated by the Club while the Player is "away" with the Club for the purpose of playing games the installment then falling due shall be paid on the first week-day after the return "home" of the Club.

15.    The Player further agrees that the Club may carry out and put into effect any order or ruling of the League or its Commissioner for his suspension or expulsion and that in the event of suspension his Paragraph 1 Salary shall cease for the duration thereof and that in the event of expulsion this SPC shall terminate forthwith.

16.    Except as otherwise provided in Article 18, the Player agrees that, in the event of his suspension without pay pursuant to any of the provisions of this SPC, there shall be deducted from the Paragraph 1 Salary an amount equal to the exact proportion of such salary as the number of days' suspension bears to the total number of days of the Regular Season Games.

17.    If because of any condition arising from a state of war or other cause beyond the control of the League or of the Club, it shall be deemed advisable by the League or the Club to suspend or cease or reduce operations, then:

(a)    in the event of suspension of operations, the Player shall be entitled only to the proportion of Paragraph 1 Salary due at the date of suspension.

(b)    in the event of cessation of operations, the Paragraph 1 Salary shall be automatically canceled on the date of cessation, and

(c)    in the event of reduction of operations, the Paragraph 1 Salary shall be replaced by that mutually agreed upon between the Club and the Player, or, in the absence of mutual agreement, by that determined by neutral arbitration.

18.    The Club and the Player severally and mutually promise and agree to be legally bound by the League Rules and by any Collective Bargaining Agreement that has been or may be entered into between the member clubs of the League and the NHLPA, and by all of the terms and

9

provisions thereof, copies of which shall be open and available for inspection by the Club, its directors and officers, and the Player, at the main office of the League, the main office of the Club and the main office of the NHLPA. This SPC is entered into subject to the CBA between the NHL and the NHLPA and any provisions of this SPC inconsistent with such CBA are superseded by the provisions of the CBA.

The Club and the Player further agree that in case of dispute between them, except as to the compensation to be paid to the Player on a new SPC, the dispute shall be referred within one year from the date it arose to the Commissioner of the League, as an arbitrator and his decision shall be accepted as final by both parties, unless, and to extent that, other arbitration procedures are provided in any Collective Bargaining Agreement between the member Clubs of the League and the NHLPA to cover such dispute.

The Club and the Player further agree that all fines imposed upon the Player under the Playing Rules, or under the provisions of the League By-Laws, shall be deducted from the Paragraph 1 Salary of the Player and be remitted by the Club to the NHL Players' Emergency Assistance Fund.

19.     The Club and the Player represent and warrant that there are no undisclosed agreements of any kind, express or implied, oral or written and that there are no promises, undertakings, representations, commitments, inducements, assurances of intent, supplements or understandings of any kind between the Player or his Certified Agent and the Club that have not been disclosed to the NHL, with regard to: (i) any consideration of any kind to be paid, furnished or made available during the term of the SPC or thereafter; and/or (ii) and future renegotiation, extension, amendment or termination of this SPC.

20.     Capitalized terms shall have the meaning set forth in the CBA, to the extent not otherwise defined in this SPC.

21.     The parties agree that the rights provided herein and in the CBA and in any addendum hereto and the promise of the Player to play hockey only with the Club, or such other club as provided in Paragraphs 2, 11 and 12, and the Club's right to take pictures of and to televise the Player as provided in Paragraph 8 of this SPC have all been taken into consideration in determining the Paragraph 1 Salary payable to the Player.

22.     It is severally and mutually agreed that this SPC and the CBA contain the entire agreement between the parties and there are no oral or written inducements, promises or agreements except as provided herein.

**In Witness Whereof**, the parties have signed this _____ day of _____ A.D. 20___.

Witnesses:


_____
                    Club

10

_____
Address of Club


By: _____
President


_____
Player


_____
Home of Address of Player


    I hereby certify that I have, at this date, received, examined and noted of record the within SPC, and that it is in regular form.

Dated _____ 20___        _____
                                        for the National Hockey League

    Les parties ont par les présentes exprimé leur volonté expresse que ce contrat soit rédigé en anglais.

    The parties hereby state their expressed wish that this SPC be drafted in the English language.

11