IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
LINCOLN HOCKEY LIMITED LIABILITY            )
COMPANY, doing business as the              )
WASHINGTON CAPITALS,                        )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )   No. 1:05cv02094 (HHK)
                                            )
ALEXANDER SEMIN; INTERNATIONAL              )
SPORTS ADVISORS COMPANY, INC.;              )
and MARK GANDLER,                           )
                                            )
            Defendants;                     )
                                            )
NATIONAL HOCKEY LEAGUE                      )
PLAYERS' ASSOCIATION,                       )
                                            )
            Applicant for Intervention.     )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES OF
APPLICANT FOR INTERVENTION NATIONAL HOCKEY
LEAGUE PLAYERS' ASSOCIATION IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The National Hockey League Players' Association ("NHLPA"), whose motion to intervene as a defendant in this litigation is currently pending before the Court, respectfully submits the following memorandum in opposition to plaintiff's motion for a preliminary injunction. Notwithstanding that its intervention motion has not yet been decided, NHLPA respectfully requests that the Court, as it did at the temporary restraining order hearing, allow NHLPA to address the preliminary injunction motion through submission of this Memorandum and participation in the hearing scheduled for November 23.

As we show below, the dispute between the Washington Capitals and defendant Alexander Semin that the Capitals ask the Court to address is not properly before the Court: the parties to the collective bargaining agreement ("CBA") that is the basis for the Capitals' rights vis-à-vis Semin have provided for the resolution of such disputes through their contractual grievance and arbitration process, and plaintiff's request for an injunction against Semin should therefore be submitted to the arbitrator. In addition, assuming the Court were to retain jurisdiction over this matter, we point out several reasons, based largely on provisions of the CBA, why in any event the balance of harms does not favor issuance of an injunction.

## BACKGROUND

Plaintiff Washington Capitals brought this action against defendant Alexander Semin and his agent, seeking *inter alia* preliminary and permanent injunctive relief enjoining Semin from playing hockey for any team other than the Capitals during the duration of a contract with the Capitals that Semin signed in 2003.

That contract is a "Standard Player Contract" ("SPC") whose terms (except for its duration and the amount of compensation due the player) were collectively negotiated between NHLPA and the National Hockey League ("NHL") on behalf of all its member clubs, including the Washington Capitals. The SPC is an integral part of, and subject to the provisions of, the NHL/NHLPA collective bargaining agreement ("CBA").[1]

The factual basis for the Capitals' attempt to enjoin Semin is their assertion, in paragraph 43 of their Complaint, that "Semin has breached the Semin Contract [*i.e.*, his SPC] by, among other things, failing to report to the Washington Capitals and by playing hockey for [Russian

---

[1] Most of the portions of the CBA cited herein, including Articles 11, 13, 17, and the SPC, were previously furnished to the Court as Exhibit A to NHLPA's Motion to Intervene. A few additional excerpts from the CBA are attached hereto as Exhibit A to the Declaration of Ian Pulver.

team] Lada Togliatti.  This breach is continuing."  Complaint ¶ 43.  The Complaint adds that

Semin's alleged breach of his contract is causing irreparable injury to the Capitals.  *Id.*, ¶ 46.

ARGUMENT

I.      ARBITRATION IS THE EXCLUSIVE REMEDY FOR THE ALLEGED
        CONTRACTUAL VIOLATION PLAINTIFF SEEKS TO REMEDY

It is our principal submission that, under the clear mandates of both federal labor

law and the CBA, this Court is not the proper forum for litigation of plaintiff's claim that

Semin has breached his contract and that he should be enjoined from continuing to do so.

Our showing that the remedy plaintiff seeks must be pursued through the

contractual grievance and arbitration procedure rather than in this Court proceeds in four

parts – all grounded on decisions of the Supreme Court:  (a) it is federal law, not state

law, that governs plaintiff's claim that defendant Semin has breached his contract;

(b) under well-settled principles of federal labor law, where – as is normally the case – a

collective bargaining agreement provides for resolution of disputes through grievance and

arbitration procedures, claims for violation of the agreement that are within the scope of

the arbitration clause may not be pursued in court; (c) federal labor law requires all

doubts about the scope of an arbitration clause to be resolved in favor of arbitrability; and

(d) especially in light of that presumption of arbitrability, the CBA's broad arbitration

clause must be held to encompass all claims that a player has breached his contract,

including claims for injunctive relief under paragraph 6 of the SPC (quoted *infra* p. 9).

      A.      **Because What Is At Issue Is The Alleged Violation Of A Collective Bargaining Agreement, Plaintiff's State-Law Breach Of Contract Claim Is Preempted By Federal Law And Is Governed By § 301 of the Labor Management Relations Act**

Plaintiff's claim for injunctive relief against defendant Semin in its First Cause of Action is based on his alleged violation of what plaintiff refers to as the "Semin Contract." *See* Complaint ¶ 43 ("Semin has breached the Semin Contract by, among other things, failing to report to the Washington Capitals and by playing hockey for Lada Togliatti."); Statement of Points & Authorities in Support of Motion for Preliminary Injunction ("P.I. Mtn.") at 9 ("Semin is plainly and unambiguously in violation of the exclusivity provision of the Semin Contract."). In its pleadings, plaintiff does its best to portray this "Semin Contract" as simply an individual personal services contract. If that were what it was, plaintiff would certainly be entitled to seek enforcement of that contract through appropriate proceedings in this Court.

But the so-called Semin Contract is, in point of fact, a collectively bargained Standard Player Contract ("SPC"), which is an integral part of the collective bargaining agreement between NHLPA and the National Hockey League ("NHL"). Article 11.1 of the CBA provides that "[t]he standard form SPC annexed hereto as Exhibit 1 will be the sole form of employment contract used for all Player signings . . . ." Thus, except for the individualized financial and durational terms that the player and the team negotiate, all of the provisions of the SPC are the direct product of an arm's-length collective bargaining agreement. These standard terms "may not be amended or modified in any manner whatsoever." CBA Art. 11.1. The preeminent role the CBA was intended to play vis-à-vis the SPC is clearly stated in paragraph 18 of the SPC: "This SPC is entered into subject to the CBA between the NHL and the NHLPA and any provisions of this SPC inconsistent with such CBA are superseded by the provisions of the CBA."

Plaintiffs have pleaded their claim against Semin as a state-law claim for breach of contract. Indeed they invoke only this Court's diversity jurisdiction rather than relying on any federal question presented. *See* Complaint ¶ 9. But it has long been established that state-law claims for violation of a provision of a collective bargaining agreement are preempted by federal law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-10 (1985) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)). Such claims of breach of a collective bargaining agreement instead "must be brought under § 301 [of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185] and be resolved by reference to federal law." *Allis-Chalmers*, 471 U.S. at 210.[2] It is, therefore, federal law that governs plaintiff's attempt to remedy defendant Semin's alleged violation of the Standard Player Contract.

> B.  Where The Parties To A Collective Bargaining Agreement Have Provided For Arbitration Of Disputes Arising Under The Agreement, Arbitration Is – As A Matter Of Federal Labor Law – The Exclusive Forum For Resolving All Disputes Within The Scope Of The Arbitration Clause

Collective bargaining agreements, as a rule, provide a grievance and arbitration procedure as the peaceful means by which disputes arising under the agreement are to be resolved, rather than by strikes. *See Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807, 816 (7th Cir. 1985) (noting that "more than 90 percent" of collective bargaining agreements contain grievance and arbitration provisions). Where that is the case, "that remedy becomes by force of [LMRA] section 301 exclusive . . . ." *Id.*

---

[2] Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." In *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957), the Court held that § 301 authorized the courts to "fashion from the policy of our national labor laws" a body of federal law applicable to such suits. *Id.* at 456.

The D.C. Circuit, in an opinion by then-Chief Judge Edwards, has set out the basis and implications of this rule in a passage that bears quoting at length:

> It is a well-settled rule of labor law that parties to a collective bargaining agreement normally must seek to resolve their contract disputes under agreed-upon grievance and arbitration procedures; and where the parties have agreed to final and binding arbitration, disputes within the scope of the arbitration clause may not be pursued in a breach of contract action under section 301 of the LMRA in lieu of arbitration. . . . This requirement reflects the congressional policy that "[f]inal adjustment by a method agreed upon by the parties is . . . the desir[ed] method for settlement of grievance disputes." 29 U.S.C. § 173(d) (1988). That policy "'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.'"

*Communications Workers v. American Tel. & Tel. Co.*, 40 F.3d 426, 434 (D.C. Cir. 1994).

Because of the importance Congress has assigned to such agreed-upon dispute resolution procedures, "[c]ourts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.'" *Id.* (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562-63 (1976); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566, 569 (1960)).

Thus, where a dispute is within the scope of the CBA's arbitration clause – *i.e.*, it involves the "interpretation or application of, or compliance with" any provision of the contract, CBA Art. 17.1 – "the arbitrator, not the district court, should determine the merits" of that dispute. *International Bhd. of Boilermakers, Local 1603 v. Transue & Williams Corp.*, 879 F.2d 1388, 1394 (6th Cir. 1989). Rather than seeking judicial enforcement, as plaintiff does here, "[t]he proper course for [plaintiff] is to submit this dispute to arbitration under the CBA." *Communications Workers*, 40 F.3d at 435 (noting the availability under LMRA § 301 of a suit in the district court to enforce whatever arbitration award might be rendered).

This Court, in sum, lacks the authority to adjudicate the contract dispute plaintiff places before it – which forms the basis for its request for a preliminary injunction – if that dispute is

within the scope of the grievance and arbitration procedure set forth in the CBA. We now demonstrate that it is.

>   C.   Federal Labor Law Establishes A Strong Presumption Of Arbitrability Of Disputes Arising Under A Collective Bargaining Agreement, With All Doubts Resolved In Favor Of Coverage

Before addressing the specific language of the NHL/NHLPA collective bargaining agreement bearing on the arbitrability of the dispute before the Court, we emphasize that the examination of such contract language does not occur in a vacuum. There are in fact well-established principles of federal law bearing on the determination of the arbitrability of disputes arising under collective bargaining agreements.

A core principle is that there exists a "heavy presumption" that any such dispute is arbitrable: "Federal labor policy establishes a heavy presumption in favor of mandatory arbitration of disputes under collective bargaining agreements, unless the agreement expressly provides that arbitration is not the exclusive remedy." *Communications Workers*, 40 F.3d at 435. "[G]iven the existence of an arbitration clause, a presumption of arbitrability arises, *with all doubts resolved in favor of coverage*." *Boilermakers Local 1603*, 879 F.2d at 1394 (emphasis added).

This "strong presumption in favor of arbitrability . . . is strengthened when the arbitration agreement contains broad language." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union*, 989 F.2d 1077, 1080 (9th Cir. 1993); *see also United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585 (1960). And "[t]he party contesting arbitrability bears the burden of demonstrating how the language in the collective bargaining agreement excludes a particular dispute from arbitration." *Phoenix Newspapers*, 989 F.2d at 1080. As the Supreme Court has explained in one of its landmark decisions, "[i]n the absence of any express provision excluding

a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf*, 363 U.S. at 584-85.  Unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," a court must find the dispute to be arbitrable. *Warrior & Gulf*, 363 U.S. at 582-83.  Thus, "the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement." *Id.* at 585.

The Supreme Court has time and again reaffirmed that the principles summarized here are controlling federal law.  *See*, *e.g.*, *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 77-78 (1998).

> D.   The CBA's Broad Arbitration Clause Does Not Exclude From Its Scope Injunctive Relief Sought Under Paragraph 6 of the SPC

1.   The NHL/NHLPA collective bargaining agreement is a prime example of an "arbitration agreement [that] contains broad language." *Phoenix Newspapers*, 989 F.2d at 1080. Rather than providing for the submission only of certain types of disputes to grievance and arbitration, Article 17.1 of the CBA broadly defines a "grievance" as "any dispute involving the interpretation or application of, or compliance with, any provision of this Agreement, including any SPC."  Not only does this definition sweep in any conceivable type of dispute, but it explicitly encompasses disputes over "compliance with" provisions of an "SPC" – such as Semin's Standard Player Contract.  In the next sentence, Article 17.1 – with the carefully cabined exception only of situations for which the CBA creates "another method of dispute resolution . . . set forth elsewhere in this Agreement"[3] – provides flatly for the exclusive resolution of *all* such

---

[3] The collective bargaining agreement establishes a number of dispute-resolution mechanisms for addressing specialized issues.  For example, Article 48 creates a "system

- 8 -

disputes through the contractual grievance and arbitration procedures: "All Grievances will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of dispute resolution is set forth elsewhere in this Agreement."

Unlike many collective bargaining agreements, this CBA does not limit the grievance and arbitration process to grievances brought by employees (or by the union on their behalf). *Cf. Standard Concrete Prods., Inc. v. General Truck Drivers, Local 952*, 353 F.3d 668, 673 (9th Cir. 2003) (employer not required to arbitrate its claim of CBA breach where "the grievance procedure, by its plain text, only requires *employees* to arbitrate their disputes"). To the contrary, Article 17.2 provides that a grievance "may be initiated by the NHL or the NHLPA," and the employer does indeed does invoke the grievance and arbitration process to remedy claimed violations of the CBA. *See* Declaration of Ian Pulver ("Pulver Decl."), ¶ 6.

This broad arbitration clause explicitly encompasses what is at issue here – a "dispute involving . . . compliance with, any provision of . . . any SPC."

2. Plaintiff's attempt to escape the CBA's mandatory arbitration provisions relies on paragraph 6 of the SPC, which provides in its entirety as follows:

> The Player represents and agrees that he has exceptional and unique knowledge, skill and ability as a hockey Player, the loss of which cannot be estimated with certainty and cannot be fairly or adequately compensated by damages. The Player therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, to enjoin him by appropriate injunctive proceedings without first exhausting any other remedy which may be available to the Club, from playing hockey for any other team and/or for any breach of any of the other provisions of this SPC.

---

arbitrator" to resolve disputes relating to certain kinds of financial issues. Article 12 establishes special procedures for salary arbitration proceedings. Paragraph 5 of the SPC creates a medical arbitration system to address issues of injuries and fitness to play. And Exhibit 8 provides hearing procedures for supplementary discipline imposed by the NHL Commissioner. For the reasons discussed below, the reference to "appropriate injunctive proceedings" in paragraph 6 of the SPC does *not* amount to "another method of dispute resolution . . . set forth elsewhere in this Agreement."

Plaintiff contends that this paragraph 6 "is an exception to the arbitration provisions of the NHL/NHLPA Collective Bargaining Agreement and is enforceable in this Court." Complaint ¶ 45.

    a.    Reading paragraph 6 in context, it is abundantly clear that the presence of the words "appropriate injunctive proceedings" will not support the weight plaintiff attempts to place on them. To the contrary, the context of the entire paragraph makes clear that this language speaks to an entirely distinct matter – the *availability of a particular remedy*, not to the *forum* in which that remedy can be sought.

    The context for the reference to the availability of injunctive relief – the recitation of the player's "unique knowledge, skill and ability as a hockey Player," and the impossibility of compensating for the loss of his services by damages – makes apparent that the purpose of this provision is simply to ensure the availability of an injunctive remedy without the necessity of proving the inadequacy of damages. This language of paragraph 6 tracks precisely elements of the showing that is typically required in order to obtain an injunction barring an athlete from playing for another team in violation of his or her contract – namely, that the athlete possesses unique, irreplaceable skills, and that the loss of his or her services cannot be adequately compensated by an award of money damages. *See* 1 Martin J. Greenberg, *Sports Law Practice* § 2.05(2)(a)(ii) (2d ed. 1992); *Philadelphia Ball Club v. Lajoie*, 51 A. 973 (Pa. 1902). Including this language in the standard player contract simply relieves the team of the need to prove these elements in order to obtain an injunction. It says nothing at all about the forum in which an injunction may be sought. Read – as it must be – as part of the entire CBA, including its Article 17, it is clear that what paragraph 6 provides for is the availability of injunctive relief *from the arbitrator*.

Plaintiff has also pointed to the phrase, "without first exhausting any other remedy which may be available to the Club," as evidence of the parties' intent to permit a judicial remedy without "exhausting" the arbitration requirements of the collective bargaining agreement. But again, that language in no way undermines the reading of paragraph 6 as addressing the availability of certain *remedies*, not the forum in which those remedies can be obtained. The quoted words ensure the availability, if appropriate, of interim injunctive relief – from the arbitrator – without the necessity of first completing the full arbitration process to a final determination on the merits, and in particular without first litigating the adequacy of a damages remedy. The extent of an arbitrator's charter to provide any remedy depends upon the authority conferred by the language of the collective bargaining agreement. For that reason alone, without the "exhaustion" language of paragraph 6 an arbitrator might well conclude that he or she lacked authority to order such interim relief, or to do so without a showing that a damages remedy would be inadequate.

Making such injunctive relief (both interim and permanent) available without a need to demonstrate the inadequacy of other remedies clearly is the purpose of paragraph 6 of the SPC. Paragraph 6 nowhere contains any reference whatever to the *forum* in which such relief may be sought. What it does refer to is "appropriate" injunctive proceedings. Given the broad provisions of Article 17, "appropriate" injunctive proceedings necessarily means injunctive proceedings *before the arbitrator*.

  b.  What is more, if the parties had intended to provide for an exception to the arbitration requirement, language was readily available to implement that intention. The collective bargaining agreement and uniform player contract covering professional basketball

players is instructive. It provides for precisely such an exception, in clear and unabiguous language that is absent from the NHL/NHLPA agreement.

Paragraph 9 of the National Basketball Association Uniform Player Contract opens with substantially the same recitation of of the player's unique skill and the inadequacy of damages as is contained in SPC paragraph 6. It continues, however, by providing that in the event the team alleges that the player is playing or attempting to play for another entity, "the Team and its assignees (in addition to any other remedies that may be available to them judicially or by way of arbitration) shall have the right to obtain *from any court or arbitrator* having jurisdiction such equitable relief as may be appropriate," including an injunction from playing for any other team during the term of the player's contract. Pulver Decl., Exh. B, UPC ¶ 9 (emphasis added). And, to ensure that there is no mistaking the parties' intent to establish an exception to the collective bargaining agreement's arbitration requirements, the NBA agreement's arbitration clause mandating the arbitration of all disputes specifically references the exception established by UPC paragraph 9: "Except as provided otherwise by this Agreement *or by paragraph 9 of the Uniform Player Contract*, the Grievance Arbitrator shall have exclusive jurisdiction to determine . . . any and all disputes involving the interpretation or application of, or compliance with, the provisions of this Agreement or the provisions of a Player Contract . . . ." *Id.*, Art. XXXI(1)(a) (emphasis added).

It is clear, in short, that the parties to the NHL/NHLPA CBA could have provided for an exception of the kind plaintiff claims exists, had they intended to do so. The absence of such language provides powerful evidence that this was not their intent.

c.    There is, moreover, no precedent for plaintiff's attempt to use the language of paragraph 6 to avoid arbitration and enjoin a player from violating his contract through judicial

proceedings. Not only is there no previous instance, since the advent of collective bargaining in the NHL, in which the League or a member club has gone to court in an attempt to obtain such an injunction, but we are not aware of any precedent for this course of action during the era of collective bargaining in *any* of the major sports. *See* Pulver Decl. ¶¶ 8-9. And it is no coincidence that plaintiff, in arguing that the exercise of the court's authority to enjoin a party from taking action in breach of an employment agreement "is commonplace in the context of personal services contracts with professional athletes," is able to cite in support of that contention only hockey and football cases from the era before collective bargaining agreements in those sports, as well as a boxing case that likewise involved no collective bargaining agreement. *See* P.I. Mtn. at 9 (citing *Nassau Sports v. Peters*, 352 F. Supp. 867 (E.D.N.Y. 1972); *Houston Oilers, Inc. v. Neely*, 361 F.2d 36 (10th Cir. 1966); *Marchio v. Letterlough*, 237 F. Supp. 2d 580 (E.D. Pa. 2003) (boxing)).

      d.      Finally, plaintiff's view of SPC paragraph 6, which could result in the interpretation and enforcement of the CBA and SPC by the courts of multiple jurisdictions, would do violence to what the parties contracted for. To begin with, the NHL and NHLPA agreed to the resolution of all disputes arising out of the CBA and SPC through arbitration – with the benefits brought to such a mode of informal and inexpensive dispute resolution and contract interpretation by labor arbitrators experienced in and familiar with the history, practices, and contractual agreements in the industries in which they work.[4] Here, the parties went further and provided for the resolution of all disputes growing out of the contract by a *single* arbitrator,

---

[4] As the Supreme Court has explained, "[t]he labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. . . . The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed." *Warrior & Gulf*, 363 U.S. at 582.

appointed for the term of the agreement. *See* CBA Article 17.6.  Use of a single adjudicator provides the parties two distinct benefits.  First, it ensures decisions by an arbitrator intimately familiar with the parties, their customs and practices, and the provisions and history of the contract.  Second, this system is designed to result in a uniform interpretation of the collective bargaining agreement.  The benefit of that single arbitrator would be lost were the clubs free to seek resolution of contractual disputes – necessarily resulting in interpretation of the terms of the CBA – by various courts.

The current impartial arbitrator appointed jointly by the parties to resolve contract disputes under the CBA is Professor James Oldham of the Georgetown University Law Center in Washington, D.C., an experienced and highly respected labor arbitrator.  Pulver Decl. ¶ 10.  Ironically, among the NHL/NHLPA arbitration cases currently pending before Professor Oldham is one that raises precisely the issue plaintiff asks this Court to resolve – whether Alexander Semin is in breach of his contract with the Washington Capitals.  NHLPA raised this issue in a grievance filed in December 2004, following the Capitals' imposition of a suspension and fine on Semin.  Following denial by the NHL, the grievance was processed to arbitration where it remains pending.  Notwithstanding their current assertions as to the urgency of resolution of this matter, the Capitals have never attempted to have the Semin arbitration expedited, as they are free to do under CBA Article 17.17.  Nor have they filed their own grievance, or a counterclaim or motion in the pending proceeding, requesting the injunctive relief they now seek from this Court.  *See* Pulver Decl. ¶ 11.

That, however, would have been their proper recourse, pursuant to the terms of the collective bargaining agreement, to obtain the relief they now seek in this Court.  Not only could plaintiff have sought an expedited arbitral decision on a request for injunctive relief, but if that

relief were granted and not obeyed, plaintiff would *then* have been free to enforce the arbitration award through a suit in this Court under LMRA § 301. *See Communications Workers*, 40 F.3d at 435.

    3.    The foregoing discussion, we submit, demonstrates conclusively that plaintiff's attempt to read paragraph 6 of the SPC as creating an exception to the arbitration provisions of the CBA is simply untenable. But even if one were to concede *arguendo* that plaintiff's reading constitutes a *plausible* interpretation of the CBA – even the *more* plausible interpretation – that would not be sufficient to permit plaintiff to avoid the mandatory arbitration provisions of the CBA. For under federal labor law, as we have explained above, a court may hold a CBA provision to be non-arbitrable only if "it may be said with *positive assurance* that the arbitration clause is *not susceptible of an interpretation* that covers the asserted dispute." *Warrior & Gulf*, 363 U.S. at 582-83 (emphasis added); *see also Boilermakers Local 1603*, 879 F.2d at 1394 ("all doubts" are to be "resolved in favor of coverage" by the CBA's arbitration clause).

    Applying that governing legal standard, plaintiff falls far short of establishing, as it must, that the arbitration clause of the CBA, read together with paragraph 6 of the SPC, is "not susceptible of an interpretation" that covers this dispute. That being the case, this Court is bound by federal law to hold that the dispute before it is arbitrable under the CBA, and therefore to leave resolution of this dispute to the arbitrator appointed by the parties for that purpose.

    This Court, in short, is not the proper forum for resolution of this dispute. Plaintiff therefore cannot prevail on the merits of its contractual claim, which should instead be dismissed, and that alone is sufficient reason to deny the preliminary injunction plaintiff seeks.[5]

---

[5] Even if the Court should reject the argument set forth here, it still should not grant the injunctive relief plaintiff requests. Assuming *arguendo* that there is some role for a court in the "injunctive proceedings" referred to in paragraph 6 of the SPC – other than enforcing an

## II. THE BALANCE OF HARMS WEIGHS AGAINST PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

Even should the Court decide to reach the merits of plaintiff's motion for a preliminary injunction, it should deny the motion because the four-part test for such relief cannot be met. We leave discussion of the likelihood of success on the merits to defendants Semin and Gandler, and address briefly several issues going to the balance of harms – mostly related to provisions of the collective bargaining agreement, on which NHLPA's input may be helpful to the Court.

A. The fact is that plaintiff cannot possibly show an irreparable injury that can be remedied by the relief it seeks from this Court. The Capitals assert that, because this is the last season remaining on Semin's three-year contract, and because less than six months remain until the end of the regular season, they will lose all of the remaining value of the contract if immediate relief is not granted. P.I. Mtn. at 11. But even if the Court grants the requested injunction and Semin returns to the United States and the NHL, the Washington Capitals have no way of ensuring that he will play for them during the remainder of this season. That is because Article 13.23 of the CBA provides that once a player "plays in a league outside North America after the start of the NHL Regular Season, . . . he may thereafter play in the NHL during that Playing Season (including Playoffs) only if he has first either cleared or been obtained via Waivers."

---

arbitration award or ordering a recalcitrant party to submit to arbitration – that role would have to be narrowly limited to entering an injunction in aid of arbitration, solely to preserve the status quo while the contractual dispute proceeds before the arbitrator. *Cf. Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970). What plaintiff now seeks is an order enjoining Semin from playing for any team other than the Capitals during the current season. That order would not preserve the status quo, but rather would upset it. Such an injunction is not, in any respect, necessary in order to ensure the ability of the arbitrator, after having determined the merits of the contractual dispute, to order meaningful relief.

While it is within the power of the parties to the CBA – the NHL and NHLPA – to waive the provisions of Article 13.23, neither the Capitals nor the NHL can unilaterally do so.  The result is that even if an order of this Court would have the effect of bringing about Semin's return to the United States, it would not redress the injury the Capitals are suffering by his absence.  Absent agreement by both the NHL and NHLPA to waive Article 13.23 – which the Capitals have no power to compel – Semin could not play for the Capitals this season without clearing waivers.  Therefore, the Capitals would either be required to forgo Semin's services for the remainder of the season, or run the very high risk of losing their rights to him to another team via waivers.  *See* Pulver Decl. ¶ 12.

There is also a flaw in the premise of the Capitals' argument that, absent immediate relief, they stand to lose all remaing value on Semin's contract.  While this is indeed the third and final year of that contract, controlling arbitral authority from the case of Alexei Yashin holds that a player's decision not to play for his team during the final year of his contract tolls the contract, so that it does not expire until the player has provided an additional season of service to his team.  *NHLPA and NHL (Ottawa Senators) (Grievance of Alexei Yashin)* (June 28, 2000) (Holden, Arb.) (Exhibit C to Pulver Decl.).

Thus, not only are the Capitals losing nothing this season that the Court has the power to grant them, but if the Capitals can establish that Semin breached his contract, and if he remains in Russia for the rest of this season, they would be contractually entitled, under the *Yashin* arbitration award, to his services for the following season instead.  Indeed, given the combination of these two factors, it is not evident how the Capitals are injured by Semin continuing to play hockey abroad for the remainder of the season.

Be that as it may, the relevant fact is that the Capitals made no attempt to resolve Semin's contractual situation prior to the beginning of the current NHL season by seeking an injunction in an expedited arbitration proceeding – or even by seeking injunctive relief in this Court, as they now have done. Once the Capitals allowed the season to begin with Semin playing in the Russian Super League, they lost their ability, under the collective bargaining agreement, to ensure that they would have his services this year even if he turned up at the MCI Center ready to play. That being the case, they cannot now assert that they will suffer irreparable injury if he continues to play abroad for the rest of this year.

B.   Finally, we note in passing that the Capitals' confident assertion that Semin will suffer no injury if he is enjoined from continuing to play hockey for any team other than the Capitals is wildly off the mark. As noted above, we leave it to the other defendants to address the merits of the Capitals' contractual dispute with Semin, including notably the complex issues relating to the status of Semin's military obligations in Russia, as determined by the Russian authorities. Given the obvious delicacy of such a matter, however, this Court should proceed with great caution where it is being asked to enjoin a foreign citizen to act in a way that could well be construed by the military authorities of a foreign state as disobedience by a member of their armed forces to military orders, subjecting that individual to whatever punishment the foreign state might choose to impose.

## CONCLUSION

We note, in concluding, our emphatic agreement with the sentiment recently expressed by NHL Commissioner Gary Bettman in regard to this matter, that "contracts should always be honored." Tarik El-Bashir, *Ovechkin's Goal Lifts Capitals*, Washington Post, Nov. 5, 2005, at E7 (quoting Bettman commenting on the temporary restraining order issued by this Court). The

contract in question provides that disputes arising out of it will be resolved by an impartial arbitrator – not in federal court. *That* provision of the contract should be honored, and the determination of whether Alexander Semin has breached his contract, and if so how that breach is to be remedied, should be left for the arbitrator to decide. Plaintiff's motion for a preliminary injunction should therefore be denied.

        Respectfully submitted,

        _/s/ John M. West_
        GEORGE H. COHEN (D.C. Bar # 022574)
        JOHN M. WEST (D.C. Bar # 424718)
        Bredhoff & Kaiser, P.L.L.C.
        805 Fifteenth Street, N.W.
        Suite 1000
        Washington, DC  20005
        (202) 842-2600

        Counsel for NHLPA

CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2005, the foregoing Memorandum of Points and Authorities of Applicant for Intervention National Hockey League Players' Association in Opposition to Plaintiff's Motion for Preliminary Injunction was filed electronically with the Court, and, in addition, served by electronic mail and by first-class mail, postage prepaid, on:

> Alexander Berkovich
> 230 East 30th Street
> Room 7G
> New York, NY  10016
> aberkovich@nyc.rr.com

      /s/ John M. West