IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LINCOLN HOCKEY LIMITED LIABILITY COMPANY, doing business as the WASHINGTON CAPITALS, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:05cv02094 (HHK) |
| ALEXANDER SEMIN; INTERNATIONAL SPORTS ADVISORS COMPANY, INC.; and MARK GANDLER, | ) ) ) ) | |
| Defendants; | ) ) | |
| NATIONAL HOCKEY LEAGUE PLAYERS' ASSOCIATION, | ) ) ) | |
| Applicant for Intervention. | ) ) | |

## DECLARATION OF IAN PULVER

I, Ian Craig Pulver, declare as follows.

1. I am an adult resident of the province of Ontario, Canada. I am a member of the bar of Ontario. I make this declaration based on my personal knowledge of the facts set forth herein.

2. Since 1992 I have been employed as Associate Counsel for the National Hockey League Players' Association ("NHLPA"). In that capacity, I am closely familiar with the collective bargaining process in the National Hockey League ("NHL"), including the history of collective bargaining, the terms of the current and previous collective bargaining agreements between the NHL and NHLPA, including the Standard Player Contract ("SPC") that is a part of

such agreements, the enforcement of collective bargaining agreements in the NHL, litigation dealing with NHL players and collective bargaining, and other issues touching on the employment of professional hockey players in the NHL. I am also generally familiar with collective bargaining in the three other major professional sports in North America – baseball, basketball, and football.

3. Attached hereto as Exhibit A are certain excerpts from the current collective bargaining agreement between the NHL and NHLPA. These excerpts, as well as others previously submitted as Exhibit A to NHLPA's Motion to Intervene in this litigation, are true and correct copies of portions of the current agreement.

4. The first collective bargaining agreement between the NHL and NHLPA was concluded in May 1976, and was effective retroactively for the period from September 1975 until September 1980. During the period from 1967 until 1976, representatives of the players and owners had engaged in discussions through an owner-player council, which resulted notably in an agreement for the arbitration of salary disputes between NHL players and their clubs.

5. The 1976 collective bargaining agreement ("CBA") provided that any dispute covered by the CBA concerning the interpretation or application of the NHL Constitution or By-Laws, the Standard Players' Contract, or a league rule would be referred exclusively to the President of the National Hockey League for final and binding determination subject to any right of appeal to the Board of Governors. In 1992, after a player strike, the parties agreed to allow an impartial arbitrator to hear certain kinds of disputes under the CBA. Only in 1994, after an owners' lockout, did the parties agree to the broad arbitration clause that remains in effect today, under which (with certain exceptions) all disputes involving the interpretation or application of,

or compliance with, any provision of the CBA, or any player contract or addenda, would be resolved exclusively in accordance with the arbitration procedures set forth in Article 17.

6. Article 17 of the CBA, which provides for grievance and arbitration procedures, permits the initiation of grievances by either the NHL or the NHLPA. While the majority of grievances are initiated by NHLPA on behalf of players, a number of grievances are initiated by the NHL on its own behalf and on behalf of member clubs.

7. I understand that the Washington Capitals in this litigation seek a judicially imposed injunction barring Alexander Semin from playing for any other team, and that the Capitals contend that the language referencing "appropriate injunctive proceedings" in paragraph 6 of the SPC permits a court to grant such relief notwithstanding the broad arbitration clause of Article 17. I am generally familiar with the body of caselaw involving labor and employment relations in the NHL, and I do not know of any other instance, since the first collective bargaining agreement was adopted in the NHL in 1976, in which any member club has attempted to use this language from paragraph 6 to obtain a judicially imposed injunction barring a player from competing for another team in violation of his contract, as the Capitals attempt to do here.

8. Similarly, I do not know of any case involving the sports of baseball, basketball, and football, in the era of collective bargaining in those sports, in which a team has attempted to use the analogous language of those sports' collective bargaining agreements to obtain a judicial injunction such as the Capitals seek here.

9. Attached hereto as Exhibit B is a true and correct copy of excerpts from Article XXXI and the Uniform Player Contract of the current collective bargaining agreement between the National Basketball Association and the National Basketball Players Association.

10. Article 17.6 of the NHL/NHLPA collective bargaining agreement provides for the selection of a single impartial arbitrator to hear and decide all grievances arising under the agreement. Currently, the impartial arbitrator is Professor James Oldham, who is St. Thomas More Professor of Law and Legal History at Georgetown University Law Center in Washington, D.C. In addition to his scholarly work, Professor Oldham is a widely respected labor arbitrator and is currently Vice President of the National Academy of Arbitrators. Professor Oldham serves not only as impartial arbitrator under the NHL/NHLPA agreement, but also as permanent umpire for Alcoa and the United Steelworkers of America, and as a member of several other permanent arbitration panels.

11. On December 20, 2004, I initiated a grievance under Article 17 on behalf of Alexander Semin against the Washington Capitals, alleging that the Capitals had improperly suspended Semin. That grievance, which was denied by the NHL and thereupon processed to arbitration, is currently pending before Arbitrator Oldham. It raises precisely the same issues as are presented in this litigation, namely whether Semin violated his contract by failing to report to the Portland Pirates, whether he was unable to report because of his conscription into Russian military service, and whether he was properly suspended. Semin's grievance has now been pending for nearly a year, and during that time neither the NHL nor the Washington Capitals have filed any counterclaim, request for injunctive relief, or request for expedited consideration of this arbitration. On November 4, 2005 – the same day the temporary restraining order was issued in this litigation – Semin's grievance, along with others pending before arbitrator Oldham, was scheduled for mediation in Washington, D.C., before specially appointed mediator Richard Bloch.

- 5 -

12.     Under Article 13.23 of the NHL/NHLPA collective bargaining agreement, a player like Semin who has played professionally outside North America after the start of the NHL season must clear waivers before being permitted to play for his NHL club during that season.  In view of Semin's exceptional ability, I have no doubt that he would be claimed immediately by another NHL team should the Washington Capitals expose him to waivers.  The provisions of Article 13.23 can be waived, but only by mutual agreement of both contracting parties, NHL and NHLPA.

13.     Attached hereto as Exhibit C is a true and correct copy of an arbitration decision entered by arbitrator Lawrence T. Holden, Jr., on June 28, 2000, in a dispute between NHL player Alexi Yashin and the Ottawa Senators.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Vancouver, Canada, on November 14, 2000.

                                        /s/ Ian Craig Pulver
                                        Ian Craig Pulver