# Collective Bargaining Agreement

## 2005

**ARTICLE 12**
**SALARY ARBITRATION**

**12.1    Eligibility for Player or Club Election of Salary Arbitration.**

(a)    A Player is eligible for salary arbitration if the Player meets the qualifications set forth in the following chart and in Section 12.1(b) below:

| First SPC Signing Age | Minimum Level of Professional Experience Required to be Eligible for Salary Arbitration |
|---|---|
| 18-20 | 4 years professional experience |
| 21 | 3 years professional experience |
| 22-23 | 2 years professional experience |
| 24 and older | 1 year professional experience |

A Player aged 18 or 19 earns a year of professional experience by playing ten (10) or more NHL Games in a given season.  A Player aged 20 or older (or who turns 20 between September 16 and December 31 of the calendar year in which he signs his first SPC) earns a year of professional experience by playing ten (10) or more Professional Games under an SPC in a given season.

(b)    Only Players who qualify as Restricted Free Agents as described in Section 10.2 of this Agreement, who meet the qualifications in Section 12.1(a) above, and who have not signed an Offer Sheet are eligible either to elect salary arbitration or be subject to a Club-elected salary arbitration.

(c)    As used in this Article, "age," including "First SPC Signing Age," means a Player's age on September 15 of the calendar year in which he first signs an SPC regardless of his actual age on the date he signs such SPC.

**12.2    Notice of Player Election of Salary Arbitration.**

A Player (or a Player's Certified Agent, acting on the Player's behalf), electing salary arbitration must do so by making a written request, in accordance with Exhibit 3 hereto, utilizing the form attached hereto as Exhibit 23, by facsimile to Central Registry, the NHLPA and the Player's Club by not later than 5:00 p.m. New York time on July 5 in the League Year in which such Player is eligible for salary arbitration.

**12.3    Eligibility for Club-Elected Salary Arbitration.**  Subject to subsections (c) and (d) below and the eligibility requirements set forth in Article 12.1, a Club will have the right to elect to take a Player to salary arbitration under the following conditions:

     (a)     Club-Elected Salary Arbitration For Players With Paragraph 1 NHL Salaries plus Signing, Roster, and Reporting Bonuses Greater Than $1,500,000 In The Prior League Year.

          (i)     If a Player who is otherwise eligible to receive a Qualifying Offer and become a Group 2 Restricted Free Agent had a Paragraph 1 NHL Salary plus Signing, Roster and Reporting Bonuses in excess of $1,500,000 in the aggregate in the final League Year of his most recent SPC, a Club may elect to file for salary arbitration to determine the Player's Paragraph 1 Salary for the upcoming League Year in lieu of making a Qualifying Offer to such Player.

          (ii)     In any salary arbitration that takes place pursuant to this Section 12.3(a), the Salary Arbitrator may not award the Player a Paragraph 1 Salary that is less than eighty-five (85) percent of the aggregate sum of Player's Paragraph 1 Salary plus Signing, Reporting and Roster Bonuses in the final League Year of his most recent SPC.

     (b)     Club-Elected Salary Arbitration For Players Who Receive Qualifying Offers.

          (i)     If a Group 2 Restricted Free Agent has not accepted his Club's Qualifying Offer, nor filed a request for Player-elected salary arbitration in accordance with Section 12.2 above, the Club may elect to file for salary arbitration to determine that Player's Paragraph 1 Salary for that League Year.

          (ii)     If a Club elects salary arbitration in accordance with this subsection, the Club's offer in salary arbitration must be equal to or higher than the Player's aggregate Paragraph 1 Salary plus Signing, Reporting and Roster Bonuses in the final League Year of the Player's SPC.

     (c)     A Player will be subject to only one Club-elected salary arbitration in his career.  Notwithstanding Section (a) or (b) above, a Player as to whom a Club has elected salary arbitration, regardless of whether a hearing took place in connection with that election, is no longer eligible for Club-elected salary arbitration.  If a Club subsequently elects to take such a Player to salary arbitration, that election will be null and void.

     (d)     Notwithstanding Section (a) or (b) above, a Club may exercise its right to elect salary arbitration not more than twice per League Year.  If a Club elects salary arbitration more than twice per League Year, any subsequent election after its second election will be null and void.

**12.4    *Notice of Club Election.***

(a)    A Club electing salary arbitration pursuant to Section 12.3(a) above must do so by making a written request, in accordance with Exhibit 3 hereto, utilizing the form attached hereto as Exhibit 22, by facsimile to the parties listed in Section (c) below by not later than 5:00 p.m. New York time on the later of June 15 or 48 hours after the conclusion of the Stanley Cup Finals in the League Year prior to the League Year for which the Club seeks to determine a Player's Paragraph 1 Salary by arbitration.

(b)    A Club electing salary arbitration pursuant to Section 12.3(b) above, must do so by making a written request, in accordance with Exhibit 3 hereto, utilizing the form attached hereto as Exhibit 22 by facsimile to the parties listed in Section (c) below, during the period commencing upon the Player's deadline to select salary arbitration and continuing for 24 hours thereafter (*i.e.*, commencing July 5 at 5:00 p.m. New York time and ending July 6 at 5:00 p.m. New York time).

(c)    The Player; the Player's primary Certified Agent, if any; National Hockey League Players' Association; and National Hockey League.

**12.5    *Procedural Issues.***

(a)    An election by a Player or a Club of salary arbitration made in accordance with the provisions herein, shall give to the Salary Arbitrator jurisdiction in the dispute with respect to the other party also.  Subject to Section 12.10, the Salary Arbitrator's decision shall be final and binding on the parties.  The Club and the Player shall sign an SPC promptly thereafter, effective as of the date the Salary Arbitrator's decision is issued, for the League Year(s) for which the request for salary arbitration was made under this Article, setting out the terms of the Salary Arbitrator's decision.  The terms of the award of the Salary Arbitrator shall not be modified in any respect.

(b)    Only the dispute with respect to the terms of one (1) SPC shall be considered in any one hearing.

(c)    The NHLPA and the NHL are responsible for the procedural steps described herein and shall act on behalf of the Player and the Club, respectively.  All communications with the Salary Arbitrator, other than during the hearing, shall be only by and through the NHLPA and the NHL.

**12.6    *Selection of Salary Arbitrators.***  The League and the NHLPA shall jointly appoint eight (8) Salary Arbitrators who are members of the National Academy of Arbitrators.

**12.7    *Scheduling.***

(a)    On December 5th of each League Year, the parties shall in writing, request each Salary Arbitrator to provide seven (7) available dates for the next League Year's salary arbitrations – with the dates distributed evenly during the salary arbitration period.  The dates provided by the Salary Arbitrators shall comprise the salary arbitration

calendar (the "Salary Arbitration Calendar").  No Salary Arbitrator shall thereafter be asked to change or add any date except upon the mutual agreement of the parties.  If a replacement Salary Arbitrator is hired after December 5th, then the parties will follow the same process for such replacement Salary Arbitrator.

(b)    On the first business day following the final date for a Club to request salary arbitration pursuant to Section 12.3(b) above, the League and the NHLPA shall jointly compile a list of all Player and Club requests, listed by Player in alphabetical order (the "Player List").  The Player List shall also set forth for each Player: (i) his primary Certified Agent, if any, as set forth in the Certified Agent List and (ii) his Club.  The Player List may not be changed for the remainder of the process outlined in this Section.

(c)    After the NHL and NHLPA have compiled the Player List, salary arbitrations shall be scheduled as follows:

(i)    The NHL and NHLPA shall flip a coin to determine which party shall begin the process set forth in subsection (ii) below.

(ii)    The party winning the coin-flip set forth in subsection (i) above shall select a Player from the Player List and shall assign such Player to a particular Salary Arbitrator on one of such Salary Arbitrator's available dates, as indicated on the Salary Arbitration Calendar.  The other party will then follow the same process until every Player on the Player List for whom Central Registry has not yet received an executed SPC has been assigned a hearing date and a Salary Arbitrator.  Once so assigned, a Player's hearing date and Salary Arbitrator may not thereafter be changed without the mutual consent of the NHL and the NHLPA.

(iii)    The only restrictions on a party's ability to assign a Player to a particular Salary Arbitrator on one of such Salary Arbitrator's available dates, as indicated on the Salary Arbitration Calendar, shall be as follows:  No Player shall be assigned a hearing date if it would result in:  (x) a Club having more than one (1) salary arbitration on such date; (y) a Certified Agent having two (2) Players for whom such Certified Agent is listed as the Primary Certified Agent on the Certified Agent List, scheduled to have their salary arbitrations on the same date; or (z) a Salary Arbitrator being assigned more than one (1) salary arbitration per day, provided, this restriction in (z) will not apply in the event there are more than fifty-six (56) Players for whom hearing dates must be scheduled, in which case every available date for all Salary Arbitrators must first be utilized before any Salary Arbitrator may be assigned a second salary arbitration on a particular day.

(d)    Except upon agreement of the NHL and NHLPA, every salary arbitration shall commence at 9:00 a.m. New York time.

(e)    The League and the NHLPA shall also schedule the location for the salary arbitration hearings and the League and the NHLPA shall immediately notify the Club and the Player, respectively, of the location, date and time of the their salary arbitration hearing.  The parties shall use their best efforts to schedule all of the salary arbitration hearings within forty-eight (48) hours of the compilation of the Player List.  All salary arbitration hearings shall be completed in accordance with the Critical Date Calendar as set forth in Exhibit 15.

**12.8    Termination of Salary Arbitrator(s).**  The League and the NHLPA shall each have the right to terminate the appointment of a Salary Arbitrator(s) during the period commencing on the date the final salary arbitration award is issued and ending on December 5th of such League Year at 5:00 p.m. New York time.  The party who did not terminate the Salary Arbitrator(s) shall, within ten (10) days of receiving the termination notice, submit a list of three names to the terminating party.  Within ten (10) days of receiving the names, the terminating party shall strike two of the names and the remaining person shall be the new member of the salary arbitration panel.

**12.9    Rules of Procedure.**  The rules of procedure for salary arbitration proceedings shall be as follows:

(a)    **Attendance at Hearings.**

The Player, the Club, the League and the NHLPA are each party to the proceeding.  In addition to representatives of the parties, any other person(s) agreed upon by the League and the NHLPA may also attend.

The Salary Arbitrator may sequester witnesses until they testify, with the exception of the Player and the Club's primary representatives.

(b)    **Written Submission.**

The NHLPA and the League shall be responsible for ensuring compliance with this Agreement.  The parties shall file their respective briefs with the Salary Arbitrator and shall simultaneously exchange briefs with each other at least forty-eight (48) hours prior to the scheduled opening of the hearing.  A party that fails to timely file and exchange a brief waives the right to file any brief, unless excused by the Salary Arbitrator.  Each brief shall be limited to 40 pages, exclusive of indices, tables of contents, and exhibits.  The minimum spacing shall be double, and the font shall be Times New Roman.  In addition, rebuttal exhibits may not constitute an additional brief.

(c)    **Election of Term.**

The party against whom an arbitration election was filed (i.e., the Club in Player-elected salary arbitration and the Player in Club-elected salary arbitration) shall elect in its brief whether the arbitration award shall be for a one or two-year SPC.  Failure to make such an election shall be deemed to constitute an election for a one-year SPC. Notwithstanding the foregoing: (i) the Club or the Player, as the case may be, shall be entitled to elect only a one-year SPC if the Player is within one (1) year of attaining the

age and experience level required for Group 3 Player status; and (ii) if the Player has attained or is within one (1) year of attaining the experience level required for Group 5 Player status and the Club has elected a two-year SPC, the Player may, at the end of the first year of such SPC, elect to void the second year of the SPC if the Player's Paragraph 1 NHL Salary for the first League Year of such SPC is less than the Average League Salary for such League Year and, upon making such election, such Player shall (if he otherwise qualifies at such time) become a Group 5 Player and be entitled to the rights set out in Section 10.1(b).  If the Club elects a one-year award for a Player within one (1) year of attaining the experience level required for Group 5 Player status, then at the end of that year, the Player may if he so elects, and if he qualifies, become a Group 5 Player at that time and be entitled to the rights set out in Section 10.1(b).

     (d)     **Conduct of the Hearings.**

The Player and the NHLPA, jointly, and the Club and the League, jointly, shall each have a maximum of ninety (90) minutes to present its case and may allocate such ninety (90) minutes between its direct case and its rebuttal case in any manner it so chooses in its sole discretion.  If the party presenting second has raised new substantive issues or introduced additional comparable Players for the first time during its rebuttal case, then the party presenting first shall, upon the request of the NHLPA or the League only (whichever is the applicable party), have ten (10) minutes for surrebuttal, which may be used solely to address those new issues or new comparable Players and may not be used for additional closing arguments.

     (e)     **Participation at the Hearings.**

A Player shall be represented at the hearing by the NHLPA unless the NHLPA chooses to delegate its authority in whole or in part, with the Player's consent, to the Player's representative.  Any other party may be represented by counsel, who may participate fully in the hearing on behalf of that party.

     (f)     **Arbitration in the Absence of a Party.**

The hearing may proceed in the absence of any party who, after due notice, fails to appear or to seek and obtain a postponement pursuant to subsection (m) below.  A decision shall not be made, however, solely upon the default of a party.  The Salary Arbitrator shall require the other party to submit such evidence as he may need for making the decision.

     (g)     **Evidence.**

          (i)     Subject to the limitations set forth in subsection (iii) below, the parties may present whatever witnesses, affidavits, documents and other relevant evidence they choose to present at the hearing.  The Salary Arbitrator, on behalf of any party, or on his own behalf, may call witnesses or request documents or other evidence as he deems necessary to resolve the dispute.  The Salary Arbitrator in his discretion shall be the judge of the relevancy and materiality of

the evidence offered and/or the weight, if any, to attach to any evidence and shall not be bound by any formal legal rules of evidence. All evidence shall be presented in the presence of all the parties, unless a party is in default, having failed to appear for the hearing, or has waived his right to be present. Statistical evidence asserted in a party's affirmative case must be included in such party's brief in order to be admissible.

(ii)     The parties may offer evidence of the following:

  (A)     the overall performance, including official statistics prepared by the League (both offensive and defensive), of the Player in the previous season or seasons;

  (B)     the number of games played by the Player, his injuries or illnesses during the preceding seasons;

  (C)     the length of service of the Player in the League and/or with the Club;

  (D)     the overall contribution of the Player to the competitive success or failure of his Club in the preceding season;

  (E)     any special qualities of leadership or public appeal not inconsistent with the fulfillment of his responsibilities as a playing member of his team;

  (F)     the overall performance in the previous season or seasons of any Player(s) who is alleged to be comparable to the party Player whose salary is in dispute; and

  (G)     The compensation of any Player(s) who is alleged to be comparable to the party Player, provided, however, that in applying this or any of the above subparagraphs, the Salary Arbitrator shall not consider a Player(s) to be comparable to the party Player unless a party to the arbitration has contended that the Player(s) is comparable; nor shall the Salary Arbitrator consider the compensation or performance of a Player(s) unless a party to the arbitration has contended that the Player(s) is comparable.

(iii)    The following categories of evidence are inadmissible and shall not be considered by the Salary Arbitrator:

  (A)     Any SPC the term of which began when the Player party to such SPC was not a Group 2 Player;

(B)     Any SPC entered into by an Unrestricted Free Agent, including SPCs signed by Players after the Player's Club has exercised a walk-away right pursuant to Section 12.10;

(C)     The SPC of any Player who is not being offered as a comparable Player to the party Player;

(D)     Qualifying Offers made by the Club pursuant to Section 10.2(b);

(E)     Any prior offers or history of negotiations between the Player and the Club;

(F)     Testimonials, videotapes, newspaper columns, press game reports or similar materials;

(G)     Any reference to actual or potential walk-away rights;

(H)     Any award issued by a Salary Arbitrator as to which a Club exercised its walk-away rights pursuant to Section 12.10;

(I)     The financial condition of the Club or the League;

(J)     References to a Club's Upper or Lower Limit, or to the Players' Share;

(K)     Any salary arbitration award issued in 2005-2006; or

(L)     Any reference to any salary or other compensation information in any salary arbitration opinion that took place prior to the execution of this Agreement.  If any salary arbitration opinion issued prior to the execution of this Agreement is cited as precedent, all references to any Player's Player Paragraph 1 Salary or other compensation information will be redacted.

(iv)    In presenting the compensation of any Player offered as a comparable in a brief, the first reference thereto shall be a complete breakdown by component parts (clearly identified) of all such Player's compensation figures in the same format as the Joint Exhibit.

(v)    The League and the NHLPA shall each create an exhibit, the Comparable Exhibit, setting forth the compensation terms contained in all SPCs of Players eligible to be used as comparables for the purposes of that year's salary arbitrations.  The parties shall exchange such Comparable Exhibits by June 5.  A conference call will be held within three (3) business days of the exchange to

identify differences and/or issues, if any, between the two versions of the Comparable Exhibits.  All issues/differences are to be settled within three (3) business days of conference call.  The parties may then use extracts from the Comparable Exhibit to apprise the Arbitrators of the compensation of those Players alleged by such party to be comparable to the Player who is the subject of the Arbitration.

(vi)     The full Joint Exhibit and Comparable Exhibit shall not be distributed to the Salary Arbitrators.  The Joint Exhibit and the Comparable Exhibit shall promptly be updated to reflect the following:

(A)     the issuance of a salary arbitration decision;

(B)     verified settlement of any salary arbitration proceeding; and

(C)     verified recent signings of any other Player.

(D)     such updates to be provided by each party to the other on a daily basis, business days only, from the date of initial exchange of the Comparable Exhibit through and including the 5th day prior to the beginning of the salary arbitration period.  All updates following such period through and including conclusion of the salary arbitration period shall be made on a daily basis, without limitation to business days.  Daily updates shall be exchanged via fax and email.  Follow up conference calls will be held on a timely basis, as needed, to settle any differences/issues arising from such daily updates.

In the absence of a written agreement, the parties shall, in good faith, take all necessary steps in advance of the start of the hearing to jointly confirm and memorialize the occurrence of any of the events described in paragraphs (A), (B) and (C) above.  The steps shall include, but are not limited to, a conference call by and between representatives of the parties no later than three (3) hours before the hearing begins.

Items (A) through (C) above, although admissible in the context of a salary arbitration hearing, shall not be deemed to constitute a contract or a substitute for an appropriately filed, registered and approved SPC.

The joint submission of the above defined supplemental evidence should not prejudice either party's position as to the relevance, weight or value attributable to any component of the package at issue.

The League and the NHLPA jointly shall provide such Salary Arbitrator with the updated information for any Player alleged to be a comparable Player during such arbitration, provided such settlement or signing is accomplished at least three (3)

hours prior to the commencement of such hearing or such salary arbitration decision issues before the close of such hearing. Any signings or settlements accomplished after commencement of a hearing shall be inadmissible for all purposes for such hearing.

(vii)    When dealing with a Group 2 Player whose current SPC began before he reached the age necessary to be a Group 3 Unrestricted Free Agent and who would be a Group 3 Unrestricted Free Agent at the end of his current SPC, the following rules shall apply:

(A)    His current SPC is on the Comparable Exhibit for its entire term.

(B)    If the Player signs a new SPC, during the term of his current SPC:

(1)    the new SPC will not be included on the Comparable Exhibit if the new SPC begins after the current SPC ends.

(2)    the new SPC will be included on the Comparable Exhibit if the new SPC revises the current SPC and adds additional term.

(C)    If a Player has previously signed an SPC while a Group 3 Unrestricted Free Agent, any subsequent SPC signed by him will not be included on the Comparable Exhibit.

(h)    **Statistics.**

The League shall obtain and provide to the NHLPA any statistics relative to any aspect of Player performance: (i) kept or maintained by the League; or (ii) retained by any Club. The NHLPA shall provide to the League any statistics relative to any aspect of Player performance kept or maintained by the NHLPA. The Commissioner shall use his full authority to ensure each Club's cooperation in the full and complete implementation of this provision. Such statistics shall be so provided within four (4) weeks after the conclusion of the Regular Season for Regular Season statistics and within two (2) weeks after the conclusion of the Playoffs for Playoff statistics. Such statistics shall be provided in electronic format if so maintained that way, otherwise they shall be provided in hard copy. The parties further agree that the January 10, 2003 grievance award regarding RTSS statistics shall remain in full force and effect for the term of this Agreement and shall be sent to the NHLPA electronically.

(i)    **Testimony.**

All witnesses and persons who testify orally at the hearing shall be made available for cross-examination.

(j)    **Transcripts.**

Transcripts will be taken in salary arbitration hearings, with costs of the court reporter to be shared equally. Whichever party requests a transcript, either expedited or not, said party will pay the cost. If both parties wish to obtain transcripts, then they shall bear the costs equally.

(k)    **Order of Proceedings.**

Unless otherwise determined by the Salary Arbitrator or mutually agreed to by all parties, the order of proceedings shall be as follows:

    (i)    Player-Elected Salary Arbitration.

        (A)    affirmative case of the Player and the NHLPA;

        (B)    affirmative case of the Club and the League;

        (C)    rebuttal and closing argument of the Player and the NHLPA;

        (D)    rebuttal and closing argument of the Club and the League;

        (E)    surrebuttal by the Player and/or the NHLPA, where permitted in accordance with subsection 12.9(d) hereof.

    (ii)    Club-Elected Salary Arbitration.

        (A)    affirmative case of the Club and the League;

        (B)    affirmative case of the Player and the NHLPA;

        (C)    rebuttal and closing argument of the Club and the League;

        (D)    rebuttal and closing argument of the Player and the NHLPA;

        (E)    surrebuttal by the Club and the League, where permitted in accordance with subsection 12.9(d) hereof.

(l)    **Reopening of Hearings.**

At any time before a decision is issued, a hearing may be reopened by the Salary Arbitrator on his own motion or on motion of any party for good cause shown.

(m)    **Continuance, Adjournments or Postponements.**

There shall be no continuance or adjournment of a hearing, but the commencement of a hearing may be postponed by the Salary Arbitrator upon the

application of the NHLPA or the League only, based on substantial cause. Any request for the postponement of a scheduled hearing shall be made to the Salary Arbitrator in writing, with copies by fax to all other parties so that the parties may, if they desire, respond immediately to the Salary Arbitrator.

    (n)    **Salary Arbitration Decision.**

      (i)    Each salary arbitration decision must be issued by fax and e-mail to each of the parties within forty-eight (48) hours of the close of the hearing.

      (ii)    The decision of the Salary Arbitrator shall establish:

          (A)    the term of the SPC, based upon the Player's or Club's election of a one or two year SPC, as set forth in its brief and as consistent with this Article;

          (B)    the Paragraph 1 NHL Salary to be paid to the Player by the Club for the season(s) in respect to which the arbitration is conducted;

          (C)    the inclusion or otherwise of a Minor League clause (or clauses) and the amount of Paragraph 1 Minor League Salary to be paid under each of the season(s) in respect to which the arbitration is requested;

          (D)    a brief statement of the reasons for the decision, including identification of any comparable(s) relied on.

    (o)    **Expenses.**

    Each party shall be responsible for its own expense of participation in the arbitration. The cost of the arbitration proceedings, including the Salary Arbitrator's fees (whose fees for each day such Arbitrator performs salary arbitration services for the parties shall, in no event, exceed the Arbitrator's daily rate (e.g., an Arbitrator who both hears a case on the same day he is reading briefs for another case shall only be paid his daily rate for such day, not two (2) times his daily rate)) and expenses, shall be shared equally among the parties.

    (p)    **Communications with the Salary Arbitrator.**

    Only the NHLPA and/or the League may communicate with the Salary Arbitrator. Copies of all written communications sent to the Salary Arbitrator in connection with an arbitration proceeding shall immediately be sent to the other parties in the case. There shall be no ex parte oral communications with the Salary Arbitrator in connection with an arbitration proceeding unless previously agreed to by the NHLPA and the League.

(q)    **Publicity.**

The parties shall not publicize the substantive aspects of any arbitration proceeding until the decision has been issued.

### 12.10  *Walk-Away Rights for Player-Elected Salary Arbitration.*

(a)    If a Club has elected to arbitrate a one-year SPC, and the award issued is for $1,042,173 or more per annum, then the Club may, within forty-eight (48) hours after the award of the Salary Arbitrator is issued (or, if a Club has any other Player still eligible for salary arbitration at that time and for whom a decision has not been rendered by a Salary Arbitrator at that time, and the Club still has a walk-away right available to it in such League Year pursuant to paragraph (c) below, forty-eight (48) hours after the award of the Salary Arbitrator for such other Player is issued or that Player's arbitration case is settled), notify the Player or his Certified Agent, if any, the NHLPA and the NHL in writing, in accordance with Exhibit 3 hereof, that it does not intend to tender to the Player an SPC based on the award as determined by the Salary Arbitrator.  Upon receipt of that notice, the Player shall automatically be deemed to be an Unrestricted Free Agent.

(b)    If a Club has elected to arbitrate a two-year SPC and the award issued is for $1,042,173 or more per annum, then the Club may, within forty-eight (48) hours after the award of the Salary Arbitrator is issued (or, if a Club has any other Player still eligible for salary arbitration at that time and for whom a decision has not been rendered by a Salary Arbitrator at that time, and the Club still has a walk-away right available to it in such League Year pursuant to paragraph (c) below, forty-eight (48) hours after the award of the Salary Arbitrator for such other Player is issued or that arbitration case is settled), notify the Player or his Certified Agent, if any, the NHLPA and the NHL in writing, in accordance with Exhibit 3 hereof, that it does not intend to tender to the Player a two-year SPC based on the award as determined by the Salary Arbitrator.  Upon receipt of that notice, the Player and the Club shall enter into a one-year SPC providing for the compensation set forth in the award and the Player will automatically be deemed to be an Unrestricted Free Agent at the conclusion of that one-year SPC, subject to the provisions of paragraph (c) below.

(c)    Notwithstanding the provisions of paragraphs (a) and (b) above, a Club may exercise the walk-away rights referred to therein not more than one (1) time in a League Year in which the Club has only one (1) salary arbitration award, one (1) time in a League Year in which the Club has two (2) salary arbitration awards, two (2) times in any League Year in which the Club has three (3) salary arbitration awards, two (2) times in any League Year in which the Club has four (4) salary arbitration awards, three (3) times in any League Year in which the Club has five (5) salary arbitration awards and so on.  If a Club exercises its walk-away right with respect to a two-year award, the walk-away right shall be deemed to be exercised in the first year of the two-year SPC.

(d)    The dollar amount of $1,042,173 set forth in each of paragraphs (a) and (b) above, shall be increased on an annual basis at the same percentage rate of increase as the Average League Salary, with the commencement of the 2007/08 League Year being

the first year such increase shall take effect. By way of example, if the Average League Salary on June 30, 2007 has increased by ten (10) percent from the Average League Salary on June 30, 2006, then the figure of $1,042,173 stated in paragraphs (a) and (b) above, shall be increased by ten (10) percent on June 30, 2007, and the ability of a Club to walk-away from an arbitration award rendered after June 30, 2007, shall be adjusted accordingly. For each League Year thereafter, a similar adjustment shall be made.

(e)    No Club shall be entitled to walk away from any award in a Club-elected salary arbitration.

## ARTICLE 48
### SYSTEM ARBITRATION

**48.1    System Grievance.**

(a)    A "System Grievance" is any dispute involving the interpretation or application of or compliance with the provisions of Articles 49 (Player Compensation Cost Redistribution System), 50 (Team Payroll Range System) and those provisions of Article 26 (No Circumvention), Article 9 (Entry Level Compensation), Article 10 (Free Agency) and/or any other Article in which the grievance resolution could affect the interpretation or application of the provisions of Article 49 or 50.

**48.2    Initiation.**

(a)    A System Grievance may be initiated by the NHL or the NHLPA only.

(b)    A System Grievance arising out of the provisions of Article 26 (No Circumvention) shall be initiated and processed in accordance with and shall be subject to the provisions of Section 26.13.

(c)    A System Grievance arising out of the Initial HRR Report may be initiated within three (3) days of the receipt by the Parties of the Initial HRR Report being grieved, but in no event longer than fifteen (15) days following receipt of such Report.  A System Grievance arising out of the Interim or Final HRR Report must be initiated within fifteen (15) days of the receipt by the parties of the Report being grieved.

(d)    Except as provided in paragraphs (b) and (c) of this Section 48.2, System Grievances shall be filed within sixty (60) days from the date of the occurrence or non-occurrence of the event upon which the System Grievance is based or within sixty (60) days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the System Grievance, whichever is later.

(e)    Any System Grievance shall be discussed by the Grievance Committee provided for in Section 17.4 prior to the scheduling of the matter for hearing by the System Arbitrator.  Notwithstanding the foregoing, the Grievance Committee may, but shall not be obligated to, discuss Initial, Interim and Final HRR Report System Grievances prior to the hearing.

**48.3    Filing.**  Subject to the provisions of Section 48.2 above:

(a)    A party shall initiate a System Grievance by filing a written notice by facsimile with the System Arbitrator and the other party in accordance with Exhibit 3. The notice shall set forth the specifics of the alleged action or inaction giving rise to the System Grievance, as well as an explanation of the alleged violation and reference to the specific provisions of this Agreement that allegedly have been violated and a statement of the remedy sought.

(b)    The party served with a System Grievance will answer in writing by facsimile within ten (10) days of receipt of the System Grievance in accordance with Exhibit 3, except in the event of a System Grievance filed under Section 48.2(c) above, in which case the responding party shall answer within three (3) days of receipt of the System Grievance, but in no event later than one (1) day prior to the hearing.  The answer shall be submitted to the grieving party and the System Arbitrator.

### 48.4    *Arbitration.*

(a)    A System Grievance not resolved by the parties and not arising under Section 48.8 or Section 48.4(b) shall be submitted to the System Arbitrator for scheduling within four (4) days of the discussion by the Grievance Committee and shall be scheduled for hearing expeditiously.

(b)    Any System Grievance with respect to the Initial HRR Report shall be heard by the System Arbitrator within five (5) days of the filing of said System Grievance, with his decision issued within forty-eight (48) hours after the close of the hearing with any opinion to follow within seven (7) days thereafter.

(c)    Any System Grievance with respect to the Interim or Final HRR Report shall be heard and decided in accordance with the procedure described in Section 48.8.

### 48.5    *System Arbitrator.*

(a)    There shall be one System Arbitrator, appointed jointly by the parties, who shall serve for the duration of this Agreement; provided, however, that on February 1, 2007 and on each successive February 1, either party may discharge the System Arbitrator by serving written notice upon him and upon the other party by that date.  The parties shall thereupon agree upon a successor System Arbitrator within the following sixty (60) days.  Should the parties fail timely to agree upon said successor, each shall immediately designate the Dean of either a school of law or business and said two Deans shall, within sixty (60) days, jointly appoint a successor who satisfies the requirements of subparagraph (b) below.

(b)    The System Arbitrator to be appointed hereunder shall be an attorney with significant experience with matters requiring financial sophistication and business/accounting expertise and as an arbitrator or judge or other decider of contested proceedings.

(c)    The System Arbitrator shall make findings of fact and award appropriate relief including, without limitation, damages and specific performance.  The System Arbitrator shall render an award as soon as practicable, and shall set forth the basis for such award in a written opinion that either accompanies the award or is issued within a reasonable time thereafter.  In no event shall either the award or the written decision be issued more than thirty (30) days following later of the date upon which the record of a System Arbitration proceeding is closed, the transcript received or, where applicable, the date designated by the System Arbitrator for the submission of post-hearing briefs.

(d)     The System Arbitrator shall have the authority to compel the attendance of witnesses and the production of documents in connection with any matter within the jurisdiction of the System Arbitrator.

(e)     Awards of the System Arbitrator shall upon their issuance constitute full, final and complete disposition of the dispute, and shall be binding upon the parties to this Agreement and upon any Player(s) or Club(s) involved.

(f)     The System Arbitrator shall not have jurisdiction or authority to add to, detract from, or alter in any way the provisions of this Agreement or any SPC.

**48.6    *Costs Relating to System Arbitration.*** The compensation of the System Arbitrator and the costs and expenses incurred in connection with any proceeding brought before the System Arbitrator shall be shared equally by the parties to this Agreement; provided, however, that each participant in such proceeding shall bear its own attorneys' fees and litigation costs.

**48.7    *Procedure for System Arbitration.*** All matters before the System Arbitrator shall be heard and determined expeditiously.  All orders and notices issued and directed by the System Arbitrator shall be served on the parties and their respective counsel and any counsel appearing for individual Players or individual Clubs.

**48.8    *Special Procedure for Disputes with Respect to HRR Reports.***

(a)     Notwithstanding any of the other provisions of this Agreement, at the request of either the NHL or the NHLPA, and irrespective of which party may initiate the proceeding, the procedures set forth in Section 48.4(b) with respect to a System Grievance involving the Initial HRR Report and, in this Section 48.8 with respect to a System Grievance involving the Initial, Interim or Final HRR Report, shall apply to the resolution of any disputes with respect to a HRR Report.  If in connection with such disputes, there is any conflict between the procedures set forth in these Sections 48.4(b) and 48.8, and those set forth elsewhere in this Agreement, the procedures set forth in Sections 48.4(b) and 48.8 shall control.

(b)     A party may initiate a System Grievance arising out of the Initial, Interim or Final HRR Report with respect to any dispute or claim concerning: (i) the amount(s) of HRR, Player Salaries, Benefits and Bonuses as to which the Independent Accountants have completed their review and which is the subject of a good faith dispute between the parties; (ii) the amount(s) of HRR, Player Salaries, Benefits and Bonuses as to which the Independent Accountants have not completed their review and with respect to which the parties have a good faith disagreement; (iii) all other issues with respect to which the parties have a good faith disagreement, (including but not limited to disputes over the amounts and exclusion or inclusion of any particular revenues or expenses or sources of revenues in the Initial, Interim or Final HRR Reports), of which the parties were aware or reasonably should have been aware, at the time the proceeding was initiated, based upon the contents of the Initial, Interim or Final HRR Report, or other documents or writings

provided to the parties by the Independent Accountants in connection with their HRR audit.

(c)    A party's failure to initiate a proceeding before the System Arbitrator within the time period set forth in Section 48.2(c) with respect to the disputes or claims enumerated in that subsection shall forever bar that party from asserting or seeking relief of any kind for any such dispute or claim; provided, however, that the provisions of subsection (b) above and this subsection (c) shall not bar a party from initiating a proceeding before the System Arbitrator:

(i)    With respect to a dispute or claim concerning a HRR Report as to which such party was not aware or reasonably should not have been aware, based upon the materials referred to in subsection (b) above, during the sixty (60) day period following the delivery of such HRR Report; or

(ii)    With respect to any dispute or claim relating to a subsequent League Year, including but not limited to any dispute concerning the includability or non-includability in HRR of a category or type of revenue or the allowance or disallowance of a category or type of expense, with regard to whether, based upon the materials referred to in subsection (b) above (other than an Initial HRR Report, Interim HRR Report or Final HRR Report), the party was or reasonably should have been aware of such dispute or claim during the sixty (60) day period following the delivery of such HRR Report.

(d)    Subject to subsection (c)(ii) above, no determination made by the System Arbitrator in a proceeding commenced pursuant to this Section 48.8 shall be retroactive to League Years for which a Final HRR Report has been issued and accepted by the NHL and the NHLPA.

(e)    Any dispute concerning the amounts (as opposed to the inclusion or exclusion) of any revenues or expenses included in an Initial, Interim or Final HRR Report (hereinafter referred to as "Disputed Adjustments") shall, whenever such Disputed Adjustments for all Clubs are adverse to the party asserting the dispute in an aggregate amount of less than $5 million for any League Year covered by this Agreement, be resolved by the Independent Accountants; and the determination of the Independent Accountants shall constitute full, final and complete disposition of the dispute and shall be binding upon the parties to this Agreement.  Notwithstanding the foregoing, any Disputed Adjustments that involve the interpretation, validity or application of this Agreement shall be resolved by the System Arbitrator.

(f)    All other disputes involving a HRR Report (including but not limited to disputes over the amounts and includability of any revenues or expenses in such Reports) shall be resolved by the System Arbitrator.

## EXHIBIT 8
### PROCEDURES RELATING TO COMMISSIONER DISCIPLINE

This will advise all Players and other League personnel of the procedures that will be followed with regard to supplementary discipline. To ensure your team's awareness of these procedures, each General Manager and Head Coach (no later than the start of the Regular Season) must confirm in writing that they are in receipt of this memorandum and that a copy has been given to each Player, with each Player providing a written acknowledgment of receipt.

It is our intention to impose discipline in a swift, effective, and consistent manner with respect to conduct proscribed by League Playing Rules, including the use of excessive and unnecessary force and careless acts resulting in injury. In doing so, however, we do not intend to alter the basic fabric of our game.

When a penalty is imposed which calls for automatic suspension (for example, pursuant to Rule 52, the Player will be immediately suspended from further competition pending League review, which will follow the procedures set forth below. When a suspension is not automatic, a preliminary review will be made by the League as soon as reasonably possible following the conclusion of the game in which the incident took place.

In reviewing an incident for purposes of determining whether supplementary discipline is necessary, the following procedures will be followed:

1. **Discipline Following Preliminary Reviews**

Immediately following the conclusion of a game involving an incident that may require supplementary discipline, both the referee and the supervisor (if a supervisor is in attendance) will complete reports, which will be sent simultaneously via facsimile to the League offices in Toronto and New York. In addition, the referee or supervisor shall make telephone contact immediately following the game with one of the League employees designated for this purpose.

After reviewing the referee and supervisor report and game tape, the League may impose a fine for inappropriate conduct which falls short of warranting a suspension. Such a fine will not exceed Two Thousand Five Hundred Dollars ($2,500). The Commissioner or his designee must provide notice of the fine and an explanation to the fined Player by telephone within seventy-two (72) hours of the game in which the incident took place. The NHLPA is not required to participate in this call, but must receive a written explanation of the fine and copies of referee or supervisor reports within twenty-four (24) hours of the telephone call to the Player. A recipient of such a fine will not be treated as a "repeat" offender for disciplinary suspension purposes. However, such a disciplinary fine will carry consequences for the balance of that season. Any further discipline imposed in that season will take into account the offense for which the Player has been fined.

2.     **Informal Hearings (0-5 Games)**

If the preliminary review indicates a possible suspension of less than six (6) games (including zero), the League (hearings will ordinarily be conducted by the Director of Hockey Operations) may proceed with supplementary discipline pursuant to a telephonic hearing, <u>provided</u>:

      (a)     the discipline relates solely to on-ice conduct and does not implicate the additional procedures set forth in Article 18 of the CBA;

      (b)     notice of potential discipline is provided to the NHLPA and a hearing is scheduled as soon as reasonably practicable after the incident;

      (c)     the League will use best efforts to schedule the hearing on a date and time acceptable to the NHLPA, but will not be obligated to delay such scheduling unreasonably in the event the NHLPA cannot make itself available for a telephonic hearing;

      (d)     the League's review is limited to a review of videotape, officials' reports and an interview with officials;

      (e)     all written reports and videotape have been provided to the NHLPA prior to the hearing;

      (f)     once a decision on supplementary discipline has been made, the Club and the Player shall receive written notification of any discipline imposed, with a copy provided to the NHLPA; and

      (g)     a Player may seek review of a disciplinary determination by the Commissioner, who will endeavor to rule promptly on any such appeal.  The Commissioner shall determine, in his sole discretion, whether any type of hearing is required related to such review and, to the extent he confirms the determination without a hearing, he shall provide the reasons therefor.

Discipline in such cases will be imposed up to a maximum suspension of five (5) games.

3.     **Formal Hearings (6 or More Games)**

If the preliminary review indicates that a suspension of six (6) or more games may be appropriate and/or further investigation is required, a more formal, in-person proceeding (hearings will ordinarily be conducted by the Director of Hockey Operations) will be conducted as follows:

      (a)     League personnel designated for such duties will be permitted to conduct interviews with such other persons as are deemed necessary, including the other officials who worked the game in question, other Players, coaches, and any other League personnel who attended the game;

(b)    the Player shall remain suspended while the investigation and formal proceeding is being conducted;

(c)    the Player shall be provided the right to appear at an in-person disciplinary hearing and may, with the assistance of counsel of his choosing, present evidence in support of his position;

(d)    representatives of the Club and the NHLPA may also attend and participate in the hearing;

(e)    once a decision on supplementary discipline has been made, the Club and the Player shall receive written notification of any discipline imposed, with a copy provided to the NHLPA; and

(f)    a Player may seek review of a disciplinary determination by the Commissioner, who will endeavor to rule promptly on any such appeal. In cases following a formal, in-person hearing, the Commissioner will apply a "de novo" standard of review.

### 4.    **Timing of Suspensions**

Whenever possible, suspensions will take effect beginning with the game immediately following the game in which the incident giving rise to the suspension occurred. As a general matter, a Player who is suspended shall serve a specific number of games.

### 5.    **Effect of Suspension on Paragraph 1 Salary**

The League will calculate the amount of money the Player must forfeit due to the suspension. This will be calculated on the following basis:

(a)    for first offenders (first incident requiring supplementary discipline in the form of a game suspension), Player to forfeit one (1) day's Paragraph 1 NHL Salary and Bonuses, but not including Performance Bonuses, for each Regular Season Game lost (1/total number of days in the season measured from the date of the League's first Regular Season Game to the last, irrespective of the Player's team's schedule);

(b)    for repeat offenders (second or more incidents requiring game suspension), Player to forfeit one NHL Game's Paragraph 1 NHL Salary and Bonuses, but not including Performance Bonuses, for each Regular Season Game lost (1/number of Regular Season Games for each Regular Season Game suspended);

(c)    Player Salary and Bonuses lost due to a suspension will be calculated based on a Player's Averaged Amount;

(d)    status as a "first" or "repeat" offender shall be re-determined every eighteen (18) months. For example, where a Player is suspended for the first time, he is a repeat offender if he is suspended again within eighteen (18) months of the first incident.

If he is not suspended a second time within this eighteen (18) month period, he will no longer be treated as a repeat offender for disciplinary purposes; and

(e)    the monies collected by the League as a result of supplementary discipline shall be transferred to the NHL Players' Emergency Assistance Fund.

Within ten (10) days of the Club's final Regular Season Game, the Club involved shall furnish the League with proof that any sums which were to be deducted from the Player's Paragraph 1 NHL Salary and Bonuses due to a suspension were, in fact, deducted. The Club shall be responsible for paying an amount equal to the withheld Paragraph 1 NHL Salary and Bonuses to the League Office within ten (10) days of the amount being withheld. No such sums shall be returned to the Player in any manner or form.

## 6.    <u>Factors In Determining Supplementary Discipline</u>

In deciding on supplementary discipline, the following factors will be taken into account:

(a)    The type of conduct involved: conduct outside of NHL rules; excessive force in contact otherwise permitted by NHL rules; and careless or accidental conduct. Players are responsible for the consequences of their actions.

(b)    Injury to the opposing Player(s) involved in the incident.

(c)    The status of the offender, and specifically whether he is a "first" or "repeat" offender. <u>Players who repeatedly violate NHL rules will be more severely punished for each new violation</u>.

(d)    The situation of the game in which the incident occurred: late in the game, lopsided score, prior events in the game.

(e)    Such other factors as may be appropriate in the circumstances.

The linchpin of the disciplinary system is Rule 33A:

> **Rule 33A. Supplementary Discipline**
>
> In addition to the automatic fines and suspensions imposed under these Rules, the Commissioner may, at his discretion, investigate any incident that occurs in connection with any Pre-season, exhibition, League or Playoff game and may assess additional fines and/or suspensions for any offense committed during the course of a game or any aftermath thereof by a player, Trainer, Manager, Coach or club executive, whether or not such offense has been penalized by the Referee.
>
> *(NOTE): If an investigation is requested by a Club or by the League on its own initiative, it must be initiated within*

*twenty-four (24) hours following the completion of the game in which the incident occurred.*

7.    **Public Comment**

Public criticism of supplementary discipline is subject to the provisions of By-Law 17.

8.    **Production of Evidence to NHLPA**

All video clips, reports and other evidentiary materials will be provided in electronic form to the NHLPA.

9.    **Criminal Investigation**

A Player subject to League disciplinary proceedings may seek a reasonable delay in such proceedings in order to retain and seek the advice of counsel in the event his conduct is also subject to criminal investigation by any governmental authority, or in the event of an ongoing civil proceeding where the Player has been named as a defendant.  A Player in these circumstances will remain suspended pending the League's review of the matter.

10.    **Educational Videos**

The League shall on a periodic basis during the Regular Season (<u>e.g.</u>, at least monthly for the first three (3) months of the season with the number of tapes provided thereafter being determined after consultation by the parties) send to each Club, either electronically or in VHS format, video of on-ice incidents that have warranted the imposition of supplementary discipline during that League Year.  Each Club shall play the video for its Players (either before or after practice) within a reasonable time after receipt from the League.  The League shall provide copies of all educational videos to the NHLPA when distributed to the Clubs, and the Club (or the League) shall make available all supplementary discipline videos produced throughout the year to any Player who requests same.