IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINCOLN HOCKEY LIMITED LIABILITY
COMPANY, doing business as the
WASHINGTON CAPITALS,

                Plaintiff,                Case No.: 1:05 CV 02094 (HHK)

                v.

ALEXANDER SEMIN, INTERNATIONAL
SPORTS ADVISORS COMPANY, INC. and
MARK GANDLER,

                Defendants.

## DECLARATION OF DEFENDANT MARK GANDLER

I, Mark Gandler, hereby declare:

1.    I am a citizen of the United States of America and reside in New Jersey. In 1976, at the age of 20 I emigrated to this country from the Moldavian Republic of the former Soviet Union. Prior to that, I studied mathematics at the Saratov State University for two years. In 1977, I began my studies at New York University as a transfer student and received a bachelor's degree in Economics from NYU in 1979. In 1981, I received a master's degree in Economics from Columbia University. Following that, I worked in various marketing and sales positions for Joseph E. Seagram & Sons, a beverage importer. From 1988 through 1991, I attended Columbia University Law School, from which I graduated in 1991. In the second academic year I was designated a Harlan Fiske Stone scholar for distinction in scholarship. In the summer of 1991, I passed the New York Bar exam, but never applied for admission to the Bar, and never practiced law.

2.  While in law school, I started representing hockey players in the National Hockey League ("NHL"). Since 1996, I have been a National Hockey League Players' Association ("NHLPA") certified agent representing professional hockey players in the NHL (1996 was the first year when the certification of agents was required). My sports agency firm is called International Sports Advisors Co., Inc. ("ISA"), and it is based in New Jersey. Any statements I make in this Declaration, I make on behalf of ISA as well. Being a native Russian speaker, I concentrated my efforts in the beginning of my agent's career on developing a client base composed of young talented players from Russia. I have scouted since for the best young prospects in the world and worked to sign them as clients before they are drafted by a team in the NHL. I only receive compensation from these prospects after they sign a contract with a team in the NHL. I have never received any compensation for players playing in any one of the European professional leagues, including Russia.

3.  As part of my scouting and client development, I have frequent communications with coaches and management who are employed by teams in the Russian professional hockey leagues. My contacts with Petr Vorobiev, currently the head coach of Lada Togliatti hockey club ("Lada") of the Russian Super League, are no different than the communications I have with any other team officials throughout the Russian professional hockey leagues.

4.  On or about September 10, 2005, I was telephoned by Valery Semin, the father of Defendant Alexander Semin ("Semin"). Valery Semin told me that his son was unhappy with his current agent IMG and asked me if I would be interested in representing his son in the NHL. Soon thereafter on September 14, 2005, Semin and I executed a "Standard Player-Agent Contract" pursuant to and in accordance with the NHLPA Regulations Governing Agent Certification. (Attached hereto as Ex. A.) Our agreement is no different from any other

2

agreement I have with my other clients: ISA will not collect any fees or compensation from Semin unless Semin plays for an NHL team.

5.      Prior to September 14, 2005, my previous contact with Semin consisted of saying hello after games I saw in person in 2002 in Czech Republic and complimenting him on his play. Before I contracted with Semin, IMG had represented him when he signed a three-year contract with Lincoln Liability Holdings Company doing business as the Washington Capitals ("Lincoln") prior to the 2003-04 hockey season. Semin played in 52 games for the Washington Capitals (the "Capitals") that season. Prior to the scheduled 2004-05 NHL season and while Semin was residing in Russia, Mr. Semin, through his agents at IMG, told the Capitals that he had been conscripted into the Russian military and that he could not leave Russia and report to the team. (Ex. B attached hereto). IMG also informed the Capitals that Semin would be able to perform his military service by playing hockey for Lada. The 2004-05 NHL hockey season was ultimately cancelled when the NHL owners locked out its players after the collective bargaining agreement between the league and the NHLPA expired.

6.      Upon information and belief, it is my understanding that Semin's previous agents at IMG negotiated Semin's player's contract with Lada for the 2004-2005 hockey season. Upon information and belief, it is also my understanding that IMG was involved with Semin's conscription into the Russian military in October and November of 2004. Similarly, it is also my understanding that IMG negotiated the terms of his service obligation with then-General Manager of Lada Leonid Vaysfeld, so that Semin could play hockey for Lada. Further, upon information and belief, it is my understanding that Semin's previous agents at IMG also negotiated Semin's player's contract with Lada for the current 2005-2006 hockey season.

3

7. After I became Semin's agent on September 14, 2005, I received military conscription and correspondence documents stating that Semin was serving in the military of the Central Sports Club of Russian Air Force and that Semin's discharge date was November 10, 2006. (Ex. C attached hereto.) Included in the documents was Semin's Military Certificate with a stamp indicating the date, when Semin took the military oath. I had no basis or ability to question the authenticity or force of those documents. I could not advise Semin that ignoring those documents and the order of conscription would not violate the laws of his country. At the same time, I never advised him to stay in Russia.

8. After I began my representation of Semin I had several communications with Donald Fishman, the in-house legal counsel for the Capitals. I explained to Mr. Fishman that it was my preference that Semin return to play for the Capitals. I also told him that Semin believed that he was obligated under the laws of the Russian Federation to remain in Russia. Mr. Fishman told me that Dimitri Goryachkin, Semin's former agent at IMG, had a "deal" with the Russian authorities to discharge Semin from any remaining military and contractual obligations in Russia. The NHLPA, the Capitals, and I worked together to find out more about this "deal." The NHLPA was "advised that there was nothing in writing between Goryachkin and Lada or anyone else." (Ex. D, attached hereto.)

9. Semin began playing for Lada again this season on or about September 19. As I stated above, I did not negotiate his contract with Lada for this season nor have I received any compensation for it, nor will I. I did not advise or encourage Semin to play for Lada. The Capitals submitted hearsay press clippings to this court stating that Semin's contract would be sold by Lada to Khimik, another team in the Super League. I have not received any compensation for any contract Semin may sign with Khimik or for the transfer of the Lada

4

contract to Khimik, nor will I. I have not received any money or compensation from Lada, Khimik, Semin or any organization or person in the world with respect to my representation of Semin. My only incentive is for Semin to return to the NHL. It is my hope that Semin is able to return to honor his contract with the Capitals.

10. In my communications with the Capitals since September 14, 2005, I have made it absolutely clear that I am not assisting Semin in playing hockey in Russia. I have also clearly stated to the Capitals that I am only compensated if Semin plays in the NHL. I insisted on several occasions to Don Fishman that he should send a demand letter to Lada to ask Lada to stop playing Semin and that he write another letter to Semin stating that if Semin plays for Lada after the beginning of the current NHL season, Semin's return to the Capitals would be in serious jeopardy because of the waiver rule.

11. I represent 17 players under NHL contracts and numerous young players from Russia, Czech Republic, Slovakia, Finland, Canada, Switzerland and the Republics of the former Soviet Union. Among my NHL clients, there are several star players, such as Alexei Yashin of the New York Islanders, Patrik Elias of the New Jersey Devils, Tomas Vocoun of the Nashville Predators and Olli Jokinen of the Florida Panthers, who are the best players on their respective teams. I believe that the Capitals have sued me as a pressure tactic to force Semin to perform his contract. I also believe that the NHL and the Capitals are attacking Semin through me because I am an aggressive sports agent who has successfully represented several other clients in the NHL and this is the NHL's payback. Moreover, I believe this suit is an attempt to discredit me in the eyes of my clients and my competition.

12. I have expressed to the Capitals that Semin prefers to return to the United States and play for the Capitals. I have also conveyed to Semin that I think it would be in the best

interests of Semin's career to return to Washington as well, but I told him as well that I could not predict whether he would be prosecuted by the military tribunal for deserting from his military obligation.

I hereby declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated: November 14, 2005

Mark Gandler