IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

LINCOLN HOCKEY LIMITED LIABILITY
COMPANY, doing business as the
WASHINGTON CAPITALS,

        Plaintiff,

-against-

ALEXANDER SEMIN, et al.,

        Defendants.

---

Case No: 1:05 CV 02094 (HHK)

**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES
IN REPLY TO THE OPPOSITION OF INTERVENOR
NATIONAL HOCKEY LEAGUE PLAYERS' ASSOCIATION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND IN
<u>OPPOSITION TO THE NHLPA'S MOTION TO DISMISS</u>**

Bradley I. Ruskin (admitted *pro hac vice*)
Scott A. Eggers (admitted *pro hac vice*)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Telephone: (212) 969-3000

-and-

Robert M. Bernstein
(D.C. Bar No. 490166)
PROSKAUER ROSE LLP
1233 20th Street, N.W., Suite 800
Washington, DC 20036-2396
Telephone: (202) 416-6800

*Attorneys for Plaintiff Lincoln Hockey
Limited Liability Company, doing
business as the Washington Capitals*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.     THE NHL/NHLPA COLLECTIVE BARGAINING AGREEMENT EXEMPTS THIS DISPUTE FROM THE REQUIREMENT TO ARBITRATE ................................. 3

II.    THE BALANCE OF HARMS FAVORS ISSUANCE OF AN INJUNCTION ................ 13

III.   THE NHLPA'S MOTION TO DISMISS SHOULD BE DENIED .................................. 14

CONCLUSION ...................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**PAGE(s)**

## **CASES**

*Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.*,
    230 F.3d 569 (2d Cir. 2000)..................................................................................................12

*AT&T Techs., Inc. v. Communications Workers of Am.*,
    475 U.S. 643 (1986).................................................................................................................3, 12

*Chester v. Washington Metro. Area Transit Auth.*,
    335 F. Supp. 2d 57 (D.D.C. 2004)............................................................................................6

*Choice Hotels Int'l, Inc. v. Grose*,
    2005 U.S. Dist. LEXIS 18080 (D. Md. Aug. 19, 2005) .................................................. 9-10

*Communications Workers of Am. v. American Tel. & Tel. Co.*,
    40 F.3d 426 (D.C. Cir. 1994)..................................................................................................5-6

*Compania Chilena de Navegacion Interoceanica, S.A. v. Norton, Lilly & Co.*,
    652 F. Supp. 1512 (S.D.N.Y. 1987)........................................................................................8-9

*General Dynamics Corp., v. Indus. Union of Marine & Shipbuilding Workers*,
    469 F.2d 848 (1st Cir. 1972)....................................................................................................8

*Int'l Bhd. of Teamsters, Local 519, v. United Parcel Serv., Inc.*,
    335 F.3d 497 (6th Cir. 2003) ...................................................................................................3-4

*Int'l Union, UAW v. Yard-Man, Inc.*,
    716 F.2d 1476 (6th Cir. 1983) ................................................................................................4

*Kass v. William Norwitz Co.*,
    509 F. Supp. 618 (D.D.C. 1980)..............................................................................................14

*Lowell Sch. Comm. v. United Teachers of Lowell*,
    2001 Mass. Super. LEXIS 10 (Mass. Super. Ct. Jan. 2, 2001)............................................9

*Midtown Realty Co. v. Bevona*,
    No. 97 Civ. 9371, 1999 U.S. Dist. LEXIS 8383 (S.D.N.Y. June 3, 1999).........................8

*Sperry Int'l Trade, Inc. v. Gov't of Israel*,
    532 F. Supp. 901 (S.D.N.Y. 1982), *aff'd*, 689 F.2d 301 (2d Cir. 1982)..............................9

*United Staff Union v. AFSCME*,
  No. 99-3386, 2002 U.S. Dist. LEXIS 2631 (D.D.C. Feb. 12, 2002) .................3

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) ..................................................................3

*Vaca v. Sipes*,
  386 U.S. 171 (1967) ..................................................................6

**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004)............................................................7

Elkouri & Elkouri, *How Arbitration Works,* Ch. 7 (6th ed. 2003) ....................9

**PRELIMINARY STATEMENT**

Plaintiff Lincoln Hockey Limited Liability Company, doing business as the Washington Capitals (the "Washington Capitals"), submits this Statement of Points and Authorities in further support of its motion for a preliminary injunction, in reply to the Memorandum Of Points And Authorities submitted by Intervenor National Hockey League Players' Association (the "NHLPA"), dated November 14, 2005 (the "NHLPA Mem."), and in opposition to the NHLPA's Motion to Dismiss Count One of the Washington Capitals' Complaint.

Mr. Semin's agent, Defendants Mark Gandler and International Sports Advisors (collectively, "Gandler"), are not parties to the collective bargaining agreement ("CBA") between the National Hockey League (the "NHL") and the NHLPA, nor are they parties to Mr. Semin's Standard Player Contract (or "SPC") with the Washington Capitals. Gandler concedes that he is not governed by Mr. Semin's SPC. (Gandler Opposition, dated November 14, 2005, at 12.) The NHLPA's motion therefore does not address the Washington Capitals' ability to obtain injunctive relief against Gandler.

**SUMMARY OF ARGUMENT**

On November 3, 2005, this Court allowed the NHLPA to intervene for the limited purpose of presenting its arguments against the Washington Capitals' motion for a temporary restraining order and other relief. The Court granted the temporary restraining order, evidently concluding that the Court has jurisdiction to grant injunctive relief against Defendants' conduct. By order dated November 16, 2005, the Court granted the NHLPA's unopposed motion to intervene. The NHLPA has now submitted a lengthier written version of the same arguments that it presented both orally and in writing on November 3. There is nothing new offered in the NHLPA's motion to dismiss that would support a different conclusion.

The Washington Capitals do not contest that there is a presumption favoring arbitration of disputes arising out of a collective bargaining agreement where the parties have agreed to provide an arbitral forum. But that presumption lacks any force here. The CBA contains a provision that clearly authorizes an NHL member club to bring a court action seeking an injunction to prevent an NHL hockey player from playing hockey for another club. Notwithstanding the NHLPA's tortured attempt to impose a different meaning on the applicable SPC provision, that language clearly allows an NHL member club to seek injunctive relief from this Court without first exhausting its remedies under the CBA's grievance-arbitration process. *See* Point I.

The NHLPA also argues that the balance of harms tips against the Washington Capitals because this Court lacks the ability to order Mr. Semin to play for the Washington Capitals this season due to the asserted requirement that Mr. Semin clear "waivers" under the CBA. Anyway, the NHLPA argues, "there's always next year." If an injunction is not granted, the Washington Capitals will lose Mr. Semin's services for the remainder of this season. As the NHLPA and Mr. Semin agreed in the SPC, that loss cannot be remedied by monetary damages. The fact that this Court cannot order Mr. Semin to show up and play – it is unlikely that any U.S. court could -- does not make the injury to the Washington Capitals any less real. *See* Point II.

Finally, the CBA in this case unambiguously provides that a proceeding in which an NHL member club seeks an injunction against one of its players playing hockey for another team is not subject to the arbitration requirement. Therefore, the NHLPA's motion to dismiss Count One of the Washington Capitals' complaint should be denied. *See* Point III.

**ARGUMENT**

I. **THE NHL/NHLPA COLLECTIVE BARGAINING AGREEMENT EXEMPTS THIS DISPUTE FROM THE REQUIREMENT TO ARBITRATE**

The Washington Capitals do not take issue with the general principle (to which the NHLPA devotes the bulk of its brief) that federal law favors the arbitration of disputes under collective bargaining agreements in cases where the parties have agreed to arbitrate their disputes. It is equally settled, however, that the parties to a collective bargaining agreement may agree that a particular dispute need not be arbitrated. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *see also AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-49 (1986).

The issue before the Court, therefore, does not turn on broad policies of federal labor law. The issue is simply one of contract interpretation: does the CBA between the NHL and the NHLPA contain a provision excluding from the scope of its mandatory arbitration clause a proceeding in which a member club of the NHL seeks a grant of injunctive relief to prevent one of its players from playing hockey for another club? The Washington Capitals maintain that such a provision is found in paragraph 6 of the SPC, which both parties agree is a part of and incorporated into the terms of the CBA. *Cf.* NHLPA Mem. at 2.

Collective bargaining agreements are subject to the same rules of interpretation as any other contract, so long as those rules are consistent with federal labor policies. *See United Staff Union v. AFSCME*, No. 99-3386, 2002 U.S. Dist. LEXIS 2631, at *10 (D.D.C. Feb. 12, 2002). *See also Int'l Bhd. of Teamsters, Local 519, v. United Parcel Serv., Inc.*, 335 F.3d 497, 506 (6th

3

Cir. 2003) ("Federal law governs the enforcement and interpretation of collective bargaining agreements…but traditional rules of contract interpretation apply insofar as they are consistent with federal labor policies."); *Int'l Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983) ("[T]raditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies.").

In interpreting a collective bargaining agreement, therefore, as with any other contract, a court should first examine the language of the agreement for "clear manifestations of intent." *Yard-Man*, 716 F.2d at 1479. Each provision of a collective bargaining must be interpreted as part of the integrated whole and consistent with the relative positions and purposes of the parties. *Id.* As in all contracts, the collective bargaining agreement must be construed to avoid rendering any of the terms inoperative and to avoid illusory promises. *Id.* at 1480. Where ambiguities exist, guidance may be sought by examining other words and phrases in the agreement. *Id.*

After application of the traditional principles of contract interpretation, the result may then be examined in light of federal labor policy. But that is not a result-oriented examination. The Sixth Circuit has explained this step as follows:

> Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy. *This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretation rendered not denigrate or contradict basic principles of federal labor law.*

*Yard-Man*, 716 F.2d at 1480 (emphasis added). Applying these principles here leads to the conclusion that paragraph 6 of the SPC contains an exception to the arbitration provisions of the CBA.

Article 17 of the CBA grants jurisdiction to the "Impartial Arbitrator" to decide disputes arising under the agreement, "except wherever another method of dispute resolution is set forth elsewhere in this Agreement." CBA ¶ 17.1.[1] Exhibit 1 to the CBA is the standard form of player's contract, or "SPC." CBA ¶11.1. Paragraph 6 of the SPC contains one of several exceptions to the exclusive jurisdiction of the "Impartial Arbitrator." Paragraph 6 of the SPC provides, in relevant part:

> The Player represents and agrees that he has exceptional and unique knowledge, skill and ability as a hockey Player, the loss of which cannot be estimated with certainty and cannot be fairly or adequately compensated by damages. The Player therefore agrees that the Club shall have the right, in addition to any other rights which the Club may possess, ***to enjoin him by appropriate injunctive proceedings without first exhausting any other remedy which may be available to the Club***, from playing hockey for any other team and/or for any breach of any of the other provisions of this SPC.

SPC ¶6 (emphasis added).

This provision plainly means that an NHL team is not required to exhaust the contractual grievance-arbitration process before seeking an injunction in federal court to prevent one of its players from playing for another hockey team. There is simply no reasonable reading of Paragraph 6 other than as an exception to the exclusive jurisdiction of the Impartial Arbitrator to decide disputes under the CBA.

Paragraph 6 must be read in its context. In the typical situation, a claim under the CBA would be referred to the Impartial Arbitrator. The arbitrator would render an award, and that award could be confirmed in an action brought in federal court. *See, e.g., Communications*

---

[1] The relevant sections of the CBA were attached as Exhibit A to the NHLPA's Motion to Intervene, dated November 3, 2005, and Exhibit A to the Declaration of Ian Pulver, dated November 14, submitted with the NHLPA Memorandum In Opposition.

5

*Workers of Am. v. American Tel. & Tel. Co.*, 40 F.3d 426, 435 (D.C. Cir. 1994). Paragraph 6 of the SPC provides that for certain types of disputes, the first step in that process -- the arbitration -- may be dispensed with and the club may commence an appropriate injunctive proceeding "without first exhausting any other remedy which may be available to the Club."

In selecting the words "without first exhausting any other remedy," the parties to the CBA used a phrase that is frequently used to refer to the obligation to pursue grievances under a collective bargaining agreement before seeking relief in federal court. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 186 (1967) ("we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the *failure to exhaust contractual remedies*, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance"); *Chester v. Washington Metro. Area Transit Auth.*, 335 F. Supp. 2d 57, 63 (D.D.C. 2004) (refusing to consider plaintiff's claim that his employer violated the applicable CBA by failing to select him for a new position; "the Court cannot consider this claim because plaintiff did not *exhaust his remedies* under, and as required by, the CBA") (emphasis added).

Perhaps the most familiar usage of the term "exhaustion of remedies" is in the context of administrative law. For example, Black's Law Dictionary defines "exhaustion of remedies" as follows:

> **exhaustion of remedies**. The doctrine that, if an administrative remedy is provided by statute, a claimant must seek relief first from the administrative body before judicial relief is available. The doctrine's purpose is to maintain comity between the courts and administrative agencies and to ensure that courts will not be burdened by cases in which judicial relief is unnecessary. -- Also termed exhaustion of administrative remedies.

6

Black's Law Dictionary (8th ed. 2004). Even in the context of "exhaustion of administrative remedies," however, the phrase refers to the requirement that a party first pursue its rights in another forum. We are familiar with no usage of that phrase that would support the construction urged by the NHLPA here – that the parties used the phrase "exhaustion of remedies" to refer to the need to prove the inadequacy of a damage remedy before injunctive relief may be obtained. Nor does the NHLPA cite any such usage. The NHLPA's construction of paragraph 6 distorts the well-established meaning of the term "exhaustion of remedies" -- to complete proceedings in one forum before proceeding to another.

The context of the CBA as a whole also lends force to the Washington Capitals' construction of paragraph 6 of the SPC. Paragraph 6 provides that there is no need to exhaust other remedies available to the Club before seeking an injunction. The *only* remedy otherwise available to the Club under the CBA is arbitration under Article 17. The phrase "without first exhausting any other remedy which may be available to the Club" must therefore mean that a member club is not required to go to arbitration before pursuing "appropriate injunctive proceedings" in another forum, *i.e.*, in court.

The NHLPA's construction of paragraph 6 of the SPC is also inconsistent with the structure of the CBA as a whole, for several reasons. First, Article 17 of the CBA explicitly provides for expedited arbitration. CBA ¶17.17. There is no reason to believe that the parties intended paragraph 6 of the SPC to create some other, additional expedited (yet non-final) procedure. Indeed, if the parties had intended to prescribe a specific procedure for interim injunction hearings before the Impartial Arbitrator, they undoubtedly would have placed it in Article 17, which sets forth all the other procedures to be followed by the Impartial Arbitrator. It

would have made no sense to place all but one of the arbitration procedures in the Article of the CBA that deals with the procedures for grievance-arbitration.

Second, there is *no* procedure laid out anywhere, either in the body of the CBA itself or in the SPC, for the process that the NHLPA suggests was intended, *i.e.*, an award of interim injunctive relief by the arbitrator to be followed by a full arbitration hearing. Where the parties created specialized arbitration procedures, they created specific procedures for the arbitrators to follow, for example in disputes involving the CBA's economic system (the System Arbitrator, under Article 48), on-ice misconduct (the Commissioner of the NHL, under Article 8), player salaries (Salary Arbitrators, under Article 12), and medical determinations of injury-causation and fitness-to-play (Designated Physician, under SPC Paragraph 5). But there is no procedure for interim injunctive relief to be followed by a full arbitration hearing. In fact, there was no need to lay out any such procedures for issuance of Paragraph 6 injunctions, because those injunctions would be issued by a court, where applicable standards and procedures for obtaining injunctions are well-established.

Third, Paragraph 6 of the SPC cannot be explained by a supposed need to grant the arbitrator the power to award interim injunctive relief such as cease-and-desist orders or other affirmative remedies, whether those decisions are final remedies or not. Both federal courts and arbitrators themselves have long recognized that arbitrators have the inherent authority to award such relief without any specific contractual grant. *See, e.g., General Dynamics Corp., v. Indus. Union of Marine & Shipbuilding Workers*, 469 F.2d 848 (1st Cir. 1972) (enforcing arbitrator's injunctive order); *Midtown Realty Co. v. Bevona*, No. 97 Civ. 9371, 1999 U.S. Dist. LEXIS 8383 (S.D.N.Y. June 3, 1999) (concluding that arbitrator had authority to render injunctive or cease-and-desist award); *Compania Chilena de Navegacion Interoceanica, S.A. v. Norton, Lilly*

8

& Co., 652 F. Supp. 1512, 1516 (S.D.N.Y. 1987) (confirming award requiring posting of bond as security against possible subsequent award, and recognizing arbitrators' "broad discretion in fashioning remedies"), citing *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F. Supp. 901, 905 (S.D.N.Y. 1982) ("An arbitration panel may grant equitable relief that a Court could not"), *aff'd*, 689 F.2d 301 (2d Cir. 1982); *see also Lowell Sch. Comm. v. United Teachers of Lowell*, 2001 Mass. Super. LEXIS 10 (Mass. Super. Ct. Jan. 2, 2001) (affirming arbitrator's determination ordering school board to cease and desist from refusing to hear grievances); Elkouri & Elkouri, *How Arbitration Works,* Ch. 7 (6th ed. 2003) (collecting judicial and arbitration decisions upholding arbitrators' power to issue injunctive-type relief).

If the parties to the CBA had intended arbitration to be the exclusive forum for proceedings in which an NHL member club is seeking to enjoin a player, the drafting solution was quite simple. They would have said nothing in the SPC about the subject at all. No specific grant of authority was needed to empower the arbitrator to enjoin a player from playing for another club. Accordingly, the only sensible reading of Paragraph 6 is that it was intended to allow clubs to proceed in court rather than seek relief from the Impartial Arbitrator.

The exclusionary language of SPC Paragraph 6 is comparable to that in *Choice Hotels Int'l, Inc. v. Grose*, 2005 U.S. Dist. LEXIS 18080 (D. Md. Aug. 19, 2005), an action to confirm an arbitration award. In *Choice Hotels*, the court found that an arbitration agreement "expressly exclude[d] the award of injunctive relief . . . from the enumeration of arbitrable disputes" where the agreement stated that "[e]xcept for . . . actions seeking to enjoin you from using the Marks in violation of this Agreement, any controversy or claim . . . will be sent to final and binding arbitration . . . ." *Id.* at *3-4. Although the court concluded that the parties agreed to the entry of interim injunctive relief during the particular proceeding at issue in the motion to confirm, the

9

court found that "injunctive relief was expressly excluded from the scope of the agreement to arbitrate," and that such interim relief would have been barred but for that *ad hoc* agreement. *Id.* at *6.[2] There is, similarly, no reason to conclude here that the exclusion from the arbitrator's exclusive jurisdiction of injunctions to prevent a player from playing for other clubs was intended to provide for interim arbitral relief rather than to vest the courts with jurisdiction to issue injunctions in such cases.

The NHLPA notes that Paragraph 6 recites that the impossibility of compensating the Club for the loss of the player's services "tracks precisely elements of the showing that is typically required in order to obtain an injunction barring an athlete from playing for another team in violation of his or her contract . . .." (NHLPA Mem. at 10.) But that is a showing required only by the *courts*. Arbitrators are not bound to make any particular findings as prerequisites to issuance of injunctive relief. Had the parties intended to say that the Impartial Arbitrator may grant injunctions where a player is playing for another team, they would have needed to say no more than that. Only a concern that a court would not find the requisite elements to support an injunction can explain the recitations concerning the player's uniqueness and the inadequacy of a monetary remedy.

Although the meaning of paragraph 6 is clear, the NHLPA refers to the collective bargaining agreement covering basketball players in the National Basketball Association to argue that the parties could have drafted an even clearer exception to the CBA's arbitration requirement. (NHLPA Mem. at 12.) The issue, of course, is not whether the National Hockey

---

[2] The *Choice Hotels* court initially dismissed the plaintiff's application to confirm the arbitration award because of the exclusion of injunctions from the arbitration agreement. On a motion for reconsideration, the court reversed its decision because newly-provided evidence indicated that the parties agreed to allow the arbitrator in the dispute at issue to enter interim injunctive relief.

10

League has the best exclusion provision in all of professional sports, but only whether paragraph 6 clearly excludes certain injunction proceedings from the arbitrator's jurisdiction. As demonstrated above, it unquestionably does so.

The NHLPA engages in a bit of sophistry by arguing that no team in any sports league covered by a collective bargaining agreement has ever sought an injunction in court to prevent a player from playing for another league. (*See* NHLPA Mem. at 12-13.) The simple fact is that most professional athletes have spent the majority of their lives working toward the goal of obtaining a professional sports contract. It is the exceptional case, indeed, in which an athlete would frustrate that lifelong goal by walking away from a multi-million dollar contract. That may be why the NHLPA cites no examples in which such a case was submitted to an arbitrator either. In any event, the fact is that such a circumstance is at least highly unusual and the lack of any prior occasions for a federal court to consider an injunction in such highly unusual circumstances does not support the NHLPA's argument at all. Indeed, under the NHLPA's own interpretation of the NBA collective bargaining agreement, the right to bring such a lawsuit would be irrefutable if such an odd circumstance ever arose in that sport.

Finally, there is no merit to the NHLPA's professed concern that allowing the Court to issue an injunction in this case would undermine the system the parties negotiated to ensure uniform and efficient contractual interpretations. (NHLPA Mem. at 13-15.) The fact is that the parties negotiated a CBA that excludes from the scope of its mandatory arbitration clause an action seeking to enjoin an NHL player from playing for another club. Enforcing that provision is not contrary to the CBA – such actions are expressly contemplated by the CBA. Moreover, granting an injunction against such conduct would not require the Court to interpret the

provisions of the CBA. It is a simple enough matter to determine whether Mr. Semin is or is not playing for a club other than the Washington Capitals.

The NHLPA also cites a long-pending grievance that the NHLPA initiated involving Mr. Semin's suspension by the Washington Capitals for failing to report, pursuant to the terms of his contract, to play for the Capitals' minor league affiliate during the 2004-05 NHL lockout. (NHLPA Mem. at 14-15.) Whether or not the Washington Capitals breached the CBA by suspending Mr. Semin when he failed to report in 2004, expediting that grievance would not produce the relief that the Washington Capitals seek in this action. And while it may have been possible under the CBA for the Washington Capitals to tack on to that year-old grievance proceeding a counterclaim for an injunction, the CBA gives the Washington Capitals the far more efficacious right to seek that relief from this Court. That is what the parties bargained for in the CBA.

Enforcement of such a bargained-for exception to an arbitration provision does not violate any federal labor policy. *See AT&T Techs., Inc.*, 475 U.S. at 648-49 (federal labor law permits parties to exclude certain disputes from mandatory arbitration). Although the NHLPA asserts in a footnote (NHLPA Mem. at 15-16, n. 5) that this Court's authority is limited under the Norris-LaGuardia Act to injunctions in aid of arbitration, a federal court's power to grant injunctive relief in cases arising out of collective bargaining agreements is far broader than the NHLPA suggests. As the Second Circuit has stated, "[w]here a grievance is not subject to arbitration or any other final and binding dispute resolution procedure, litigation is presumptively available under § 301, and courts may issue injunctions consistently with the provisions of the [Norris-LaGuardia Act] . . . ." *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.*, 230 F.3d 569, 581 (2d Cir. 2000) (affirming district court injunction prohibiting employer transfer of

12

work during CBA term). As in *United Technologies*, the dispute here is not required to be arbitrated, and preventing a player from playing for another club in no way runs afoul of the Norris-LaGuardia Act.

## II.    THE BALANCE OF HARMS FAVORS ISSUANCE OF AN INJUNCTION

The NHLPA argues briefly that the Washington Capitals will suffer no harm if this Court denies the injunction because this Court lacks the power to compel Mr. Semin to play for the Washington Capitals. (NHLPA Mem. at 16-18.) It is unlikely that any U.S. court has the power to grant specific enforcement of a personal services contract. But that does not mean that Mr. Semin is free to disregard the contract, secure in the knowledge that he cannot be ordered to perform it. Paragraph 6 of Mr. Semin's SPC effectively concedes that the Capitals suffer irreparable harm from the loss of his services. That provision states that Mr. Semin "represents and agrees that he has exceptional and unique knowledge, skill and ability as a hockey Player, the loss of which cannot be estimated with certainty and cannot be fairly or adequately compensated by damages."

If Mr. Semin plays for a Russian club this year he will not, of course, simultaneously be available to play for the Capitals. That alters the Capitals' ability to compete and injures its relationship with its fans to the extent that the Capitals' on-ice product is compromised. And if the NHLPA intends to take the position that Mr. Semin must first clear waivers under paragraph 13.23 of the CBA before he may play for the Washington Capitals – a paragraph that the Washington Capitals contend was never intended to apply to the unusual circumstances present here – then there may simply be another step needed to secure Mr. Semin's services. But it ill-behooves the NHLPA to assert that because they may have the ability to throw another roadblock in the Washington Capitals' way, the Court should deny any relief.

The NHLPA also contends that the Washington Capitals have the right to Mr. Semin's services next year if he does not play for them this year, so the Washington Capitals are no worse off if the Court denies the injunction. (NHLPA Mem. at 17.) Under the Semin Contract, the Washington Capitals have the right to Mr. Semin's services *now*. As the NHLPA and Mr. Semin agreed in the SPC, the denial of those services constitutes irreparable harm. And, unlike the situation with Mr. Yashin, whose arbitration case the NHLPA cites (NHLPA Mem. at 17), Mr. Semin is not simply sitting out and refusing to play. Mr. Semin is playing for another club. For example, if Mr. Semin is injured, the Washington Capitals may never be able to obtain the services for which they contracted. Even without a disabling injury, Mr. Semin will have consumed a year of the inevitably short career of a professional athlete, which can never be recovered. No monetary remedy has the power to undo an injury or to turn back time.

### III.  THE NHLPA'S MOTION TO DISMISS SHOULD BE DENIED

The NHLPA has also filed a Motion to Dismiss Count One of the Washington Capitals' Complaint in this action, for the reasons stated in the NHLPA Memorandum. The NHLPA's Motion to Dismiss should be denied.

As discussed above, the CBA and the SPC unambiguously grant the Washington Capitals the ability to seek injunctive relief to prevent a player who is subject to an SPC from playing for another hockey team. Construction of unambiguous contractual provisions is a matter of law to be determined by the Court. *Kass v. William Norwitz Co.,* 509 F. Supp. 618, 623 (D.D.C. 1980). Therefore, the Court should deny the NHLPA's Motion to Dismiss and enter a judgment dismissing the NHLPA from this case as the Court will have issued a final determination on the issue of law that it granted the NHLPA the right to intervene and address.

## CONCLUSION

For the reasons stated above and those set forth in its previous submissions, the Washington Capitals' motion for a preliminary injunction should be granted, the NHLPA's motion to dismiss should be denied and a judgment should be entered dismissing the NHLPA from this case.

Dated: November 23, 2005

                                            Respectfully submitted,

                                            PROSKAUER ROSE LLP

                                            By: s/ Scott A. Eggers
                                            Bradley I. Ruskin (admitted *pro hac vice*)
                                            Scott A. Eggers (admitted *pro hac vice*)
                                            PROSKAUER ROSE LLP
                                            1585 Broadway
                                            New York, New York 10036
                                            Telephone: (212) 969-3000

                                                -and-

                                            By: s/
                                            Robert M. Bernstein
                                            (D.C. Bar No. 490166)
                                            PROSKAUER ROSE LLP
                                            1233 20th Street, N.W., Suite 800
                                            Washington, DC 20036-2396
                                            (202) 416-6800

                                            *Attorneys for Plaintiff Lincoln Hockey Limited Liability Company, doing business as the Washington Capitals*

15