IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINCOLN HOCKEY LIMITED LIABILITY
COMPANY, doing business as the
WASHINGTON CAPITALS,

                                        Plaintiff,                    Case No:  1:05 CV 02094

            -against-

ALEXANDER SEMIN, INTERNATIONAL
SPORTS ADVISORS COMPANY, INC. and
MARK GANDLER,

                                        Defendants.

## DECLARATION OF ANNA BELIAKOVA

I, ANNA BELIAKOVA, hereby declare:

1.        I submit this declaration on behalf of Lincoln Hockey, LLC, doing business as the Washington Capitals, in addition to my declaration of November 1, 2005.

2.        For the purposes of this declaration copies of the following documents have been reviewed:

> a.  Summons issued by the Military Commissariat of Zheleznodorozhny district of the city of Samara, requiring Mr. Semin to report to the Military Commissariat on October 15, 2004 (hereinafter "the Summons").

> b.  Agreement, dated January 7, 2005 (Exhibit C to the Declaration of Alexander Berkovich) (hereinafter – "the Agreement").

c. Information on Private Alexander Valerievich Semin (Exhibit A to the Declaration of Alexander Berkovich).

d. Reference, issued by the Central Sports Club of Air Forces on September 15, 2005 (Exhibit B to the Declaration of Alexander Berkovich).

e. Mr. Semin's military passport (Exhibit D to the Declaration of Alexander Berkovich).

In addition, some documents with respective exhibits submitted by the parties to this dispute were examined as well. Such documents are cited in this declaration below. I am able to draw the following conclusions from these documents.

3.      First, the forms of summons to be issued by military authorities in course of conscription are approved by the mandatory provisions of the Instruction Regarding Preparation and Implementation of Events Related to Conscription of Non-Reserve Citizens of the Russian Federation[1] (hereinafter – "the Instruction"). The Instruction provides for two forms of summons:

a. Summons in the form no 22, which is served: (i) to the citizens who are to be conscripted to military service and have to report to military authorities for the accomplishment of conscription procedures, or (ii) to the citizens who were granted the conscription deferral and have to report upon expiry of such deferral, or (iii) to the citizens who were found partially able-bodied for military service and were enrolled into reserve corps or found unfit for

---

[1] The Instruction is approved by the Decree of the Ministry of Defense of the Russian Federation, dated September 6, 1999, no 400.

military service; (in such a case the summons is served only for the purpose of issue of military passport indicating that the individual is partially able-bodied or unfit for military service).

b.  Summons in form no 24, which is served to individuals who have already been conscripted, i.e. in cases when the conscription procedures were fulfilled and the respective decision of the draft board on the conscription to military service was adopted.

Copies of the relevant excerpts of the Instruction together with the an English translation are annexed as Exhibit A.

4.      In the upper right corner of the Summons, allegedly served to Mr. Semin, there is an inscription "Форма № 22 к п.п. 35, 41 Инструкции" ("Form no. 22 to paragraphs 35, 41 of the Instruction"). In this regard it is worth pointing out that serving of the summons in form no. 22 does not necessarily lead to the conscription of individual and it does not prevent an individual from leaving the territory of the Russian Federation.

5.      Furthermore, the contents of the Summons do not correspond to the form no. 22. In particular, the Summons contains a phrase "На основании Федерального Закона "О воинской обязанности и военной службе" Вы призваны на военную службу" ("On the basis on the Federal Law On Military Duty and Military Service you have been conscripted to military service"). The summons in the form no. 22 is required to contain a phrase "В соответствии с Федеральным Законом "О воинской обязанности и военной службе Вы подлежите призыву на военную службу и обязаны [...] явиться в военный комиссариат [...] для проведения мероприятий, связанных с призывом на военную службу" ("In accordance with

3

the Federal Law On Military Duty and Military Service you are subject to conscription to military service and are obliged [...] to report to military commissariat [...] for accomplishment of actions, concerning conscription to military service"). The difference between two versions of summons (official form no. 22 and one presented for my review) is substantial. According to the official form, an individual is obliged to report to the military commissariat and at the moment of serving of the summons it is still a question if he will be conscripted or not. In the Summons allegedly served to Mr. Semin a phrase meaning that Mr. Semin had already been conscripted, was used.

      6.       The Summons does not correspond to the form no. 24 either.

      7.       Second, according to article 25 (as amended on February 22, 2004) of the Federal Law On Military Duty and Military Service, dated March 28, 1998, no 53-FZ (hereinafter – "The Federal Law On Military Duty") conscription to military service of citizens, who are not reservists, is carried out twice a year: from April 1 until June 30 and from October 1 until December 31. Even though several exceptions to the above mentioned rule are provided by the Federal Law on Military Duty, it is not allowed by law to conduct conscription procedures and make decisions on conscription in September towards conscripts – non reservists. Therefore, under no circumstances could any document stating that Mr. Semin "... have[s] been conscripted to military service" be validly issued and served to Mr. Semin in September 2004. Copy of the relevant excerpt of this Statute is annexed together with an English translation as an Exhibit B.

      8.       The above mentioned facts render the Summons invalid under Russian law, and as a consequence the Summons can not be used for confirmation of Mr. Semin's conscription to military service in the Russian Federation in September 2004. Moreover, in no

circumstances could Mr. Semin be validly conscripted to the Russian military in September 2004. No other document confirming Mr. Semin's obligations towards Russian military in September 2004, was presented for my review.

9.      Based on my examination of the documents presented for my review, on the information contained in the Complaint of Lincoln Hockey Limited Liability Company regarding the reasons of Mr. Semin's failure to report to the Portland Pirates in September 2004 (in particular, par. 20 of the Complaint) and on Mr. Semin's Statement of Points and Authorities (page 4), where it was stated, in particular, that "The Capitals do not dispute that on or about September 25, 2004, Semin was served by the Russian Military Conscription Department with an official notice mandating that he fulfill a military obligation to the Russian Federation" my conclusion is that there were not and there could not be any valid circumstances related to Mr. Semin's alleged military duty, which could prevent Mr. Semin from leaving the territory of the Russian Federation in September 2004.

10.      In order to establish conclusively the authenticity or falseness of the Summons, an original and not a copy would have to be examined. But even if the Summons were authentic, i.e. issued by the Russian military authority, that fact would not impact on my conclusions as of paragraphs 4 – 9 of this declaration.

11.      Third, among the documents supposedly confirming Mr. Semin's military duty and his right to perform military service by playing hockey in the Hockey Club LADA there is an Agreement, dated January 7, 2005, attached as Exhibit C to the Declaration of Alexander Berkovich. The subject of such Agreement is "Settlement of the legal relations between Hockey Club LADA Togliatti and TsSK VVS Samara with respect to transfer of the hockey players

executed pursuant to the PHL Regulations on player's transfers". The Agreement further states "Hockey Club TsSK VVS Samara transfers regular term soldier of the Military Forces of the Russian Federation Alexander Valerievich Semin, born in 1984 and gives permission to his participation in the Championship of Russia as well as other national and international tournaments with the hockey team LADA Togliatti till the end of the 2005 – 2006 hockey season"[2].

12.    The text of the Agreement does not contain any reference to the legal form of the Hockey Club TsSK VVS. At the same time the seal on the Agreement contains an inscription "Самарская городская общественная организация Хоккейный спортклуб ЦСК ВВС", i.e. "Samara city societal organization hockey sports club TsSK VVS"[3]. According to the Excerpt from the Unified State Register of Legal Entities no. 13-27/1544, issued by the Department of the Federal Tax Service of Samara Region, on November 21, 2005 (Excerpt together with an English translation is annexed as Exhibit C), Samara city societal organization hockey sports club TsSK VVS (hereinafter – "the Hockey Club TsSK VVS") was established in 1999, its President, having the right to represent the organization without power of attorney, is Mr. Nichepurenko (lines 33-36 of the Excerpt). The Hockey Club TsSK VVS taxpayer's identification number is 6312013020, the address is: Molodogvardeyskaya street, 222, Samara, 443100. In fact, the Agreement is signed by Mr. Nichepurenko, the President of the Hockey Club TsSK VVS, and the seal attached is that of the Hockey Club TsSK VVS.

---

[2] Wording of the certified translation of the Agreement, presented by Alexander Berkovich has been used in this Declaration.

[3] Translation of such inscription was not included in the certified translation of the Agreement presented in Exhibit C to the declaration of Alexander Berkovich.

13.    Although the Agreement was signed by the Hockey Club TsSK VVS, in the body of the Agreement there is information that does not apply to the Hockey Club TsSK VVS[4]. The Russian version of such information is as follows: "ЦСК ВВС, г. Самара, 443071 Волжский проспект, 10, Р/С 40503810000000000050, ИНН 6315942101/631501001, в ПУЦБ РФ "Речное" г. Самара, БИК 043680002, ОКПО 080253363, ОКОНХ 97920". The English translation should be the following "TsSK VVS, Samara, 443071, Volzhsky prospect, 10, account 40503810000000000050, INN [Taxpayer's Identification Number] 6315942101/631501001 in PUTsB RF "Rechnoye" Samara, BIC 043680002, OKPO 080253363, OKONH 97920".

14.    According to the Excerpt from the Unified State Register of Legal Entities no. 2695, issued by the Inspectorate of the Federal Tax Service of Leninsky district of Samara, on November 18, 2005 (the Excerpt together with an English translation is annexed as Exhibit D), the Central Sports Club of Air Forces (official abbreviated name – TsSK VVS, hereinafter – "the TsSK VVS") is an institution established by the Ministry of Defense of the Russian Federation. Its taxpayer's identification number is 6315942101, its address is Volzhsky prospect, 10, Samara, 443071. (This information corresponds to that indicated in the body of the Agreement). The chief of the TsSK VVS is Mr. Shlyakhtin.

15.    There are two legal entities incorporated in the city of Samara, which have similar names. One of them - Hockey Club TsSK VVS is a societal organization, another one – Central Sports Club of Air Forces (TsSK VVS) is an institution established by the Ministry of Defense. These entities are not the same.

---

[4] Such information was not included in the certified translation of the Agreement, presented by Alexander Berkovich, which contains a general reference to "Address and account information".

16.    In spite of the fact that TsSK VVS is an abbreviation for "Central Sports Club of Air Forces," it is not unusual for a societal organization or legal entity established in some other form to use such abbreviations in their name, since no restrictions are provided by current Russian legislation in this regard. For example, it is worth pointing out that in Mr. Zherdev's case, the Russian party stated that Mr. Zherdev performed military service by playing hockey for the "CSKA Hockey Club." "CSKA" is an abbreviation for "Central Sports Club of the Army". Despite its use of the abbreviation "CSKA," the CSKA Hockey Club is not a military organization. It is a private, commercial hockey team in the Russian Super League. CSKA Hockey Club is a limited liability company, established in accordance with Russian legislation by two legal entities: Maribel Associates Limited, incorporated in the United Kingdom of Great Britain and Northern Ireland, and a private corporation Krasnye Zvezdy, incorporated in the Russian Federation. The relevant Excerpt from the Unified Register of Legal Entities with an English translation is attached as Exhibit E.

17.    Considering that the Agreement is signed by the President of the Hockey Club TsSK VVS, Mr. Nichepurenko, and bears a seal of the said organization, there is no doubt that the Agreement was concluded with the Hockey Club LADA by the Hockey Club TsSK VVS, and not by the Central Sports Club of the Russian Air Forces as it was indicated by Alexander Berkovich (see Declaration of Alexander Berkovich - paragraph 5). The Agreement was concluded between two societal organizations.

18.    The status of societal organizations is determined by the Federal Law On Societal Associations, dated May 19, 1995, no 82-FZ (hereinafter – "the Societal Associations Law"). According to article 8 of the Societal Associations Law, a societal organization is created on the basis of common activity for advocating of common interests and achieving the goals set

forth by the statutes of the citizens associated in the organization. Societal organization is one of the forms of societal association. Article 5 of the above mentioned law defines a societal association as a voluntary, self-governing, non-profit organization, created on the initiative of citizens, associated on the basis of their common interests for achieving the goals specified in the statutes of their societal association. (Copies of the relevant excerpts of this Statute, as amended through this date, together with an English translation are annexed as Exhibit F).

19.     Article 1.1 of the Statute of the Hockey Club TsSK VVS states that "Samara city societal organization hockey sports club TsSK VVS, subsequently referred to as "Club" – voluntary association of citizens with the commonality of interests aimed to promote the intellectual and other non-material needs of the Club members and to protect the rights and liberties of the same. (Copy of the Statute together with an English translation of relevant excerpts is annexed as Exhibit G). Since the Hockey Club TsSK VVS is a "voluntary association of citizens" no legal entity can validly be its member. Moreover, the Societal Associations Law determines that the founders and the members of the societal association can be individuals and other societal associations. As a consequence, neither the Ministry of Defense of the Russian Federation, nor TsSK VVS, nor any other state authority or state institution can be a member of the Hockey Club TsSK VVS. The Hockey Club TsSK VVS can not be considered a military organization; moreover, under Russian law there can not be any formal interdependence between the Hockey Club TsSK VVS and the TsSK VVS.

20.     Russian law makes no provision for a citizen to perform military service by playing hockey for a hockey team, established in the form of societal organization. Furthermore, Russian law makes no provision for a societal organization to "transfer regular term soldier of Military Forces of the Russian Federation [...] and give permission to his participation in

9

Championship of Russia as well as other national and international tournaments with the hockey team [...]".

21.        Based on the above, my conclusion is that the Agreement stipulated between two societal organizations does not demonstrate Mr. Semin's military status in Russia and is not an official act of the Russian Federation authorizing Alexander Semin to perform his military service by playing for Hockey Club LADA.

22.        Fourth, another document allegedly confirming Mr. Semin's military status is "Information on Private Alexander Semin" (a copy is attached as Exhibit A to the Berkovich Declaration; hereinafter – "Information"). According to Mr. Semin's Statement of Points And Authorities, the Information was issued by the "Central Sports Club of Air Forces" (see Mr. Semin's Statement on page 4). As in the case of the Agreement the Information is signed by Mr. Nichepurenko, the President of the Hockey Club TsSK VVS. The seal on the Information contains the inscription "Самарская городская общественная организация Хоккейный Спортклуб ЦСК ВВС", i.e. "Samara city societal organization hockey sports club TsSK VVS". Therefore, the Information was issued not by "Central Sports Club of Air Forces", but by Samara city societal organization hockey sports club TsSK VVS.

23.        Since the Information on Private Alexander Valerievich Semin is issued by a societal organization and not by military authority, my conclusion is that that document can not be considered as an official one demonstrating military status of Mr. Semin.

24.        Fifth, Mr. Semin's military passport states that at least from November 9, 2004, Mr. Semin performed military service in the TsSK VVS. Mr. Semin has instead been

playing hockey for Lada Togliatti and, according to recent press reports, for the team Khimik in the Russian Super League. These two facts are in contradiction one with another.

25.     According to article 10 of the Federal Law On the Status of Armed Forces Members, dated May 27, 1998, no. 76-FZ (as amended on January 1, 2005) "The right for labor shall be materialized by the members of armed forces by performing their military service" (copy of relevant excerpt of this Statute together with an English translation is annexed as Exhibit H). According to article 25 of the Federal Law On Physical Culture and Sport, dated April 29, 1999, no. 80-FZ "the contract on sports activity is concluded in accordance with the labour legislation of the Russian Federation and represents an agreement in a written form between a sportsman, professional sportsman [...] and the head of sports organization, including professional sports club and teams [...]". (copy of the relevant excerpt together with an English translation is annexed as Exhibit I). As a result, Mr. Semin can not legally have a contract to play professional hockey for LADA Togliatti or any other team in the Russian Super League, concluded in accordance with art. 25 of the Federal Law On Physical Culture and Sport, since the execution of such contract would be in violation of art. 10 of the Federal Law on the Status of Armed Forces Members.

26.     Russian law does not permit a conscript to perform military service by playing hockey for a hockey team, established in the form of societal organization. Therefore, the fact that Mr. Semin played hockey for the Hockey Club LADA (or for another private hockey team), and the documents confirming Mr. Semin's military service, i.e. military passport and Reference, issued by the Central Sports Club of Air Forces, are in conflict with each other.

27.     In this regard it is important to take into consideration that in ordinary circumstances military service is performed in a military unit. There are several legitimate reasons for a serviceman to be out of a military unit (where he formally performs military service) for a long period of time, in particular, attachment to another entity, listed in article 44 of the Federal Law On Military Duty (see my previous declaration, par. 7), and in some other cases, for instance in case of illness. Both Mr. Semin's military passport and Reference, issued by the Central Sports Club of Air Forces, state that Mr. Semin performs military service in the TsSK VVS. No document confirming Mr. Semins attachment to one of the entities listed in article 44 of the Federal Law On Military Duty, or other grounds permitting Mr. Semin to be out of the place of his alleged military service has been presented for my review. No document, confirming Mr. Semin's right to perform military service by playing hockey for the Hockey Club LADA or any other hockey team, including Hockey Club TsSK VVS, issued by military authorities, has been presented for my review.

28.     I have been presented with information indicating that (i) starting at least from September 2004 Mr. Semin played hockey with the Hockey Club LADA and subsequently with another Russian hockey team, (ii) in the period of alleged military service Mr. Semin at least once left the territory of the Russian Federation for participation in an international tournament.

29.     If Mr. Semin was formally conscripted to military service and has been performing military service, no document presented for my review presents any legitimate basis for Mr. Semin to be absent from the alleged place of military service, i.e. from the TsSK VVS, while he played hockey for Hockey Club LADA.

30.    In this regard it is worth pointing out that in ordinary circumstances the absence of the serviceman at the place of performance of military service without legitimate grounds would be considered by military authorities as an unauthorized abandonment of the place of military service and would be subject to investigation by competent authorities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:    Moscow, Russian Federation
             November 29, 2005

_____
            Anna Beliakova