UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LINCOLN HOCKEY LIMITED LIABILITY COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**ALEXANDER SEMIN, et al.,**<br><br>Defendants. | Civil Action 05-02094 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of Lincoln Hockey Limited Liability Company ("the Capitals") for a preliminary injunction [#5]. Upon consideration of the motion, the oppositions thereto, the papers filed in support of and in opposition to the motion, including the exhibits appended to the motion and oppositions, the record of this case, and the argument of counsel at a hearing, the court concludes that the motion should be denied.

**I.  BACKGROUND**

Alexander Semin, a twenty-one year-old professional hockey player and citizen of the Russian Federation, was drafted by the Capitals in the first round of the NHL Entry Draft in 2002 and signed to a three-year contract the following year. This contact (the "Semin Contract") provides that Semin must report to the Capitals' training camp at a time and place fixed by the Capitals and "play hockey only for the [Capitals] unless his contract is released, assigned, exchanged or loaned by the [Capitals]." Semin Contract ¶ 2(a), (c). Additionally, under the Semin Contract, Semin "represents and agrees that he has exceptional and unique

knowledge, skill and ability as a hockey player, the loss of which cannot be estimated with certainty and cannot be fairly or adequately compensated by damages. [Semin] therefore agrees that [the Capitals] shall have the right . . . to enjoin him by appropriate injunctive proceedings without first exhausting any other remedy which may be available to the [Capitals] from playing hockey for any other team." *Id.* ¶ 6.

Semin performed the first season of his contract without incident. However, the second season of his contract, the 2004–2005 season, was delayed and eventually cancelled due to the expiration of the collective bargaining agreement between the NHL and the National Hockey League Players Association ("NHLPA"). At the beginning of that season, the Capitals assigned Semin to its minor league affiliate, the Portland Pirates, as it had the authority to do under the Semin Contract. Semin never played with the Pirates that year; instead, he traveled to Russia and played hockey for a private, commercial hockey club named Lada Togliatti. In September 2004, the Capitals suspended Semin due to his failure to report to training camp in Portland and imposed a fine of $1,000 per day for each day that Semin failed to report.

Semin's agent at the time, a firm called IMG, informed the Capitals that, while he was preparing to leave Russia to report to Portland, Semin was served with a conscription notice that required that he report for duty in the Russian military. Semin's agent also told the Capitals that Semin had managed to negotiate an "arrangement" with the local military officials under which Semin could perform his military service by playing hockey for Lada Togliatti. The Capitals allege that this arrangement "was and is a sham." Pl.'s Prelim. Inj. Mot. at 4.

After the NHL lockout ended in July 2005, the Capitals contacted Semin's agent at IMG and requested that Semin report to the Capitals' training camp on September 11, 2005. IMG indicated that they had worked out a "deal" with the Russian military and that Semin would be allowed to end his two-year military service early and return to the United States to play hockey for the Capitals. At that time, Semin stopped playing hockey with Lada Togliatti, missing at least four regular season games. However, on September 14, 2005, Semin fired his agents at IMG and hired defendants Mark Gandler and International Sports Advisors Company, Inc. ("ISA") (collectively "Gandler"). Soon thereafter, Gandler informed the Capitals that Semin's military obligation prevented him from leaving Russia. Semin resumed playing hockey for Lada Togliatti.

On October 26, 2005, the Capitals commenced this action against Semin seeking injunctive relief. The Capitals also named Gandler and ISA as defendants, alleging that they tortiously interfered with the Semin Contract and aided and abetted a breach of Semin's fiduciary duty to the Capitals. On November 1, 2005, the Capitals filed a motion for a temporary restraining order and a preliminary injunction. The NHLPA promptly moved to intervene, a motion the court ultimately granted on November 16, 2005.

On November 4, 2005, after a hearing on the temporary restraining order,[1] the court issued an order that, *inter alia*, granted the Capitals' motion for a temporary restraining order, expedited discovery prior to a hearing on the motion for a preliminary injunction, and

---

[1] Counsel for the Capitals, Gandler, ISA, and the NHLPA participated in the hearing. Semin had not yet been served with process and did not participate.

permitted, pursuant to Fed. R. Civ. P. 4(f)(3), service of process on Semin by Semin's agents, Gandler and ISA. After expedited discovery and briefing by all parties, the court held a hearing on the Capitals' motion for a preliminary injunction on December 1, 2005.

## II.  ANALYSIS

**A.  Legal Standard for Preliminary Injunctive Relief**

This court may issue a preliminary injunction only when the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also Bancoult v. McNamara*, 227 F. Supp. 2d 144, 150 (D.D.C. 2000). "It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits." *Bancoult*, 227 F. Supp. 2d at 150 (citing *Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam)). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

Because preliminary injunctions are extraordinary forms of judicial relief, district courts should grant them sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has stated that "it frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear*

*showing*, carries the burden of persuasion." *Id.* (quotation omitted) (emphasis in original). Therefore, although the court has the discretion to issue or deny a preliminary injunction, *Ambach v. Bell*, 686 F.2d 974, 979 (D.C. Cir. 1982), it is not a form of relief granted lightly.

Furthermore, a party who seeks a mandatory injunction to change (rather than preserve) the status quo "must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 n.2 (D.D.C. 2001) (quotation omitted).

**B.  Preliminary Injunction Against Semin**

The court cannot say that the Capitals are likely to prevail on the merits against Semin. The court reaches this conclusion primarily for two reasons. First, the NHLPA argues that the arbitration provision in the collective bargaining agreement between the NHL and the NHLPA requires that the Capitals dispute with Semin be resolved by an arbitrator.[2] NHLPA Opp'n at 3–15. The Capitals respond by arguing that paragraph 6 of the Semin Contract "clearly allows an NHL member club to seek injunctive relief from this Court without first exhausting its remedies under the CBA's grievance-arbitration process." Pl.'s Reply to NHLPA's Opp'n at 2. The court does not give short shrift to the Capitals' argument that the language of paragraph 6 removes any bar that the terms of the collective bargaining agreement might otherwise present to this court's adjudication of this dispute. Yet, the court cannot find at this juncture, as it is required to, that the Semin contract is not "susceptible of an interpretation" requiring arbitration. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574,

---

[2] Semin has adopted this argument in his opposition. *See* Semin Opp'n at 11–12.

585 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). Giving due weight to the presumption in favor of arbitration recognized by the Supreme Court, *see, e.g., AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986), arbitration may well be the appropriate forum for this action. As such, the Capitals' likelihood of success on the merits is significantly reduced.

Second, Semin asserts that he has been validly conscripted into the Russian military. Semin Opp'n at 2. That fact, according to Semin, gives rise to an impossibility defense, *id.* at 12–15, as well as a defense based on the act of state doctrine. *Id.* at 9–10; *see Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964) (the act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory."). The Capitals respond by introducing evidence, including a declaration by an asserted expert in Russian conscription law, that raises significant doubts as to the authenticity of some of the documentation submitted by Semin to show that he has been conscripted. Pl.'s Reply to Semin Opp'n at 19–24; Anna Beliakova Decl. ¶¶ 11–24. While this evidence is quite damning in many respects; it fails to suggest that two of the documents submitted by Semin—the "Reference," which purports to be a certification by the Russian Ministry of Defense that Semin "does his military service" at the Air Force Central Sports Club, Semin Opp'n, Exh. B, and Semin's Military Card, *id.*, Exh. D—are not official and authentic. These documents, assuming their validity, increase the

likelihood that Semin will prevail on his impossibility defense and add weight to Semin's argument that the act of state doctrine supports dismissal of the claim against him.

**C. Preliminary Injunction against Gandler and ISA**

Additionally, on this record, the court cannot say that the Capitals are likely to succeed on the merits as against Gandler either. In reaching this conclusion, the court observes that Gandler was not hired as Semin's agent until recently, well after the Semin Contract was allegedly breached; that Gandler has denied any involvement in the alleged breach; and that Gandler has stated that he had no incentive, financial or otherwise, to interfere with the contract.

### III. CONCLUSION

For the above-stated reasons, it is this 5th day of December 2005, hereby

**ORDERED** that plaintiff's motion for a preliminary injunction is **DENIED**; and it is further

**ORDERED** that the temporary restraining order entered on November 4, 2005 is **DISSOLVED**.

                                              Henry H. Kennedy, Jr.
                                              United States District Judge